| | |
|---|---|
| MICHAEL F. RAM (SBN 104805) | ERIN M. BOSMAN, CA SBN 204987 |
| mram@forthepeople.com | EBosman@mofo.com |
| MARIE N. APPEL (SBN 187483) | MORRISON & FOERSTER LLP |
| mappel@forthepeople.com | 12531 High Bluff Drive, Suite 100 |
| MORGAN & MORGAN | San Diego, California  92130-2040 |
| COMPLEX LITIGATION GROUP | Telephone: (858) 720-5100 |
| 711 Van Ness Avenue, Suite 500 | Facsimile: (858) 720-5125 |
| San Francisco, California  94102 | |
| Telephone: (415) 358-6913 | PENELOPE A. PREOVOLOS (CA SBN 87607) |
| Facsimile: (415) 358-6293 | PPreovolos@mofo.com |
| | ALEXIS A. AMEZCUA (CA SBN 247507) |
| RA O. AMEN (*pro hac vice*) | AAmezcua@mofo.com |
| Ramen@forthepeople.com | MORRISON & FOERSTER LLP |
| MORGAN & MORGAN | 425 Market Street |
| COMPLEX LITIGATION GROUP | San Francisco, California  94105-2482 |
| 201 N. Franklin Street, 7th Floor | Telephone: (415) 268-7000 |
| Tampa, Florida  33602 | Facsimile: (415) 268-7522 |
| Telephone: (813) 223-5505 | |
| Facsimile: (813) 223-5402 | Attorneys for Defendant |
| | APPLE INC. |
| STEVEN L. NICHOLAS (*pro hac vice*) | |
| sln@cunninghambounds.com | |
| LUCY E. TUFTS (*pro hac vice*) | |
| let@cunninghambounds.com | |
| CUNNINGHAM BOUNDS, LLC | |
| 1601 Dauphin Street | |
| Mobile, Alabama  36604 | |
| Telephone: (251) 471-6191 | |
| Facsimile: (251) 479-1031 | |

[Additional Counsel on Signature Page]

Attorneys for Plaintiffs and Putative Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CHRIS SMITH, CHERYL SMITH, KAREN SMITHSON, JASON ROUSH, COREY POMROY, FRANK ORTEGA, ALBERTO CORNEA, MICHELLE ROGERS, JOSHUA BAYS, DEBORAH CLASS and AMBER JONES, individually and on behalf of all other similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Case No. 4:21-cv-09527 HSG <br><br> **ESI STIPULATION AND ORDER** |

Plaintiffs Chris Smith, Cheryl Smith, Karen Smithson, Jason Roush, Corey Pomroy, Frank Ortega, Alberto Cornea, Michelle Rogers, Joshua Bays, Deborah Class, and Amber Jones ("Plaintiffs"), and Apple Inc. (Defendant), hereby agree that the following procedures shall govern discovery of Electronically-Stored Information ("ESI") in this case:

1. **General Principles.** This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

2. The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

3. The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

4. Nothing in this Protocol shall be interpreted to require disclosure of information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Except as expressly provided herein, the parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of any particular documents or ESI.

5. The costs of production of ESI shall be borne by the producing party, unless by express agreement or Court order. If the cost of production is unduly burdensome and/or not proportional to the needs of the case, the parties will meet and confer regarding the costs and seek the Court's guidance, as necessary.

6. This order may be modified in the Court's discretion or by agreement of the parties. If the parties cannot resolve their disagreements regarding these modifications, the parties shall

seek a resolution pursuant to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules governing discovery disputes.

7. This Protocol may only apply to the parties in this matter and, by agreement or Court order, to any third parties.

8. **Custodian names and search terms to be exchanged.** The parties shall meet and confer to reach agreement on a reasonable list of custodians for purposes of collection, review and production of electronically stored information. In connection with the meet and confer process, each party shall provide a proposed list of individual custodians who are knowledgeable about and were involved with the core issues or subjects in this case (e.g., the asserted patents, the development, design and operation of the accused products, and sales, marketing and other damages-related information for the accused products). The parties then shall meet and confer to reach agreement on document custodians and also shall meet and confer to reach agreement on search terms to be used for electronic searches of the files from those custodians. ESI, including, but not limited to electronic files and email, shall be collected for each individual custodian from the personal computers, network resources, and other electronic devices that those individuals use for work purposes. Notwithstanding prior agreement on the search terms to be used for electronic searches, should a search produce an unreasonably large number of non-responsive or irrelevant results, the parties shall (at the producing party's request) meet and confer to discuss application of further negative search restrictions (e.g., if a single search was for "card" and ninety percent of the resulting documents came from the irrelevant term "credit card," a negative limitation to ignore documents only returned as a result of "credit card" may be applied to remove these documents). The party receiving production shall not unreasonably oppose such further restrictions designed to filter immaterial search results. The parties shall make good faith efforts to identify appropriate email custodians and produce email on the agreed upon schedule, but reserve the right to seek email from additional email custodians identified through discovery.

9. **Format for production of documents – documents existing in electronic format.** Except as otherwise provided for in this Stipulation, all documents existing in electronic

format shall be produced in multiple page, searchable PDF format at a resolution of at least 300 dpi in accordance with the following:

  A. PDF files shall be produced along with IPRO image load files that indicate the beginning and ending of each document.

  B. For documents which already exist in PDF format prior to production (i.e., which the producing party receives from a client or third party in PDF format), the producing party may provide them in that same PDF format, whether searchable or non-searchable. For documents converted to PDF format prior to production, the producing party shall make reasonable efforts to convert to searchable PDF.

  C. **Metadata.** Load files should include, where applicable, the information listed in the Table of Metadata Fields, attached as Exhibit A. However, the parties are not obligated to include metadata for any document that does not contain such metadata in the original, if it is not possible to automate the creation of metadata when the document is collected. The parties reserve their rights to object to any request for the creation of metadata for documents that do not contain metadata in the original.

  D. **Production media and encryption of productions.** Unless otherwise agreed, the parties shall provide document productions in the following manner: The producing party shall provide the production data on external hard drives or SFTP, as appropriate. The producing party shall encrypt the production data using WinRAR encryption, and the producing party shall forward the password to decrypt the production data separately from the external drive or SFTP to which the production data is saved.

  E. **Deduplication**. A producing party may de-duplicate electronic documents and is not obligated to extract or produce entirely duplicate ESI. Removal of duplicate documents shall only be done on exact duplicate documents based on MD5 hash values across custodians. However, family relationships will be maintained and only exact family groups will be de-duplicated. No email attachment will be de-duplicated against a loose file. Responsive hard copy documents shall not be eliminated as duplicates of responsive ESI. Global de-duplication across the entire collection will be employed. This eliminates duplicates to retain

only one copy of each document per case. For example, if an identical document resides with three custodians, only the first custodian's copy will be included in the review set, so long as a metadata field will list each custodian, separated by a semicolon, who was a source of that document.

F.  **Footer**. Each document page shall contain a footer with a sequentially ascending production number. Each production number should have a pad of eight digits and an alpha prefix. Each page must be a unique number. If the production number materially alters the document to make it unusable or unreadable to the receiving party, the receiving party reserves the right to ask the producing party to re-produce the document with the production number in a readily identifiable portion of the document that does not materially alter the document.

10.  **Format for production of documents – hardcopy or paper documents.** All documents that are hardcopy or paper files shall be scanned and produced in the same manner as documents existing in electronic format, above.

11.  **Source code.** This Stipulation does not govern the format for production of source code. If necessary, the parties will separately negotiate and submit a protective order governing the production of source code.

12.  **Parent and child emails.** The parties shall produce email attachments sequentially after the parent email.

13.  **Native files.** For documents whose native format is audio or video, the original native files should be produced in addition to a single page TIF or PDF placeholder for each document. The placeholder should be endorsed with "Native Format Document," and endorsed with the Bates number assigned to that document. The produced native file should be named with the Bates number assigned to that document. Any confidentiality or other designations stamped on the placeholder for such a document shall apply to the entire native file and its contents. The parties will meet and confer to discuss requests for production of other types of files in native, on a case-by-case basis, and including to discuss requests for production of other types of files in native on a category basis. The parties specifically agreed to meet-and-confer regarding the production of spreadsheets after Apple's initial productions are made and the parties understand

further what types of spreadsheets are at issue.  This will allow the parties to discuss the spreadsheet production armed with more information and potentially reach agreements that can streamline the process, such as agreeing to produce certain categories of spreadsheets in native while leaving others in PDF.

14. **Databases.**  Certain types of databases are dynamic in nature and will often contain information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Thus, a party may opt to produce relevant and responsive information from databases in an alternate form, such as a report or data table.  These reports or data tables will be produced in a static format.  The parties shall identify the name of the noncustodial data source for the information produced from any such database in the appropriate metadata field.

15. **Requests for hi-resolution or color documents.**  Native ESI, photographs, and video shall be produced in color if stored in color.  All other documents can be produced in black and white or color, provided, however, that the native versions be preserved and produced upon the request of any Party.  Except as already specified herein, the parties agree to make a good faith effort to comply with reasonable and specific requests for the production of higher resolution or color images.  Nothing in this Stipulation shall preclude a producing party from objecting to such requests as unreasonable in number, timing or scope, provided that a producing party shall not object if the document as originally produced is illegible or difficult to read.  The producing party shall have the option of responding by producing a native-file version of the document.  If a dispute arises with regard to requests for higher resolution or color images, the parties will meet and confer in good faith to try to resolve it.

16. **Foreign language documents.**  All documents shall be produced in their original language.  Where a requested document exists in a foreign language and the producing party also has an English-language version of that document that it prepared for non-litigation purposes prior to filing of the lawsuit, the producing party shall produce both the original document and all English-language versions.  In addition, if the producing party has a certified translation of a foreign-language document that is being produced, (whether or not the translation is prepared for purposes of litigation) the producing party shall produce both the original document and the

ESI STIP AND ORDER
CASE NO. 4:21-CV-09527 HSG                                                                                                          - 6 -

certified translation.  Nothing in this agreement shall require a producing party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery.

17. **Technology Assisted Review.**  Nothing in this Stipulation prevents the parties from agreeing to use Technology Assisted Review ("TAR") insofar as it improves the efficacy of discovery.  The parties shall meet and confer in good faith regarding any use of TAR.

18. **Privilege & Privacy.**  Pursuant to Federal Rule of Evidence 502(d) and (e), the production of a privileged or work product protected document is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding.  For example, the mere production of a privileged or work product protected document in this case as part of a production is not itself a waiver.  Nothing in this Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity.  The parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI.  Moreover, nothing in this Order shall be interpreted to require disclosure of information subject to privacy protections as set forth in law or regulation, including information that may need to be produced from outside of the United States and/or may be subject to foreign laws.

19. The Parties agree that they will produce privilege logs and will exchange information regarding claims of privilege and/or work product protection in an efficient manner. For documents and ESI that have been withheld as privileged, the withholding or redacting Party shall provide a privilege log of such documents and ESI, providing the following objective metadata to the extent it is reasonably available: date, author(s), custodian(s), recipient(s), file type, and email subject line (to the extent the subject does not reveal protected content).  In addition, the withholding Party shall also provide for each document on their privilege log an identifier for the privilege being asserted (e.g., "ACP" for attorney client privilege, "WP" for work product, or other descriptions as necessary based on the specific privilege being claimed) and a unique document number/identifier, which need not be formatted as, or consecutive with, Bates numbers of produced documents (e.g., "Def_Priv_00001").  The Producing Party may include only a single privilege log entry for multiple email messages in the same email string to the extent such messages are contained

in one individual email file and subject to the same claim of privilege. If a third party is added to an email chain who would impact the privilege, that email shall not be considered part of the "one individual email file" of the chain and shall be logged separately.

20. Communications need not be placed on a privilege log if they are: (1) subject to the attorney-client privilege and/or work product doctrine (e.g., in light of the subject of the document and because no waiver occurred); (2) exchanged between a party and its in-house counsel, or outside counsel; (3) dated on or after the date of commencement of this lawsuit; or (4) any documents that have been produced in redacted form.

21. Parties shall provide privilege logs describing the documents withheld from a production no later than forty-five (45) days after the party's transmission to the receiving party of that production.

22. The parties reserve the right to request additional information regarding individual documents on the privilege log, including, but not limited to, the right to request that the document (if withheld) be produced with redactions. The rules for discovery disputes shall apply to the extent that any party does not provide additional information upon request.

23. **Document preservation.** The parties have discussed and understand their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. The parties shall promptly meet and confer during the pendency of this litigation if any issues arise regarding the burden, cost, or accessibility of preserving, searching, reviewing, or producing ESI.

AGREED UPON METADATA FIELDS

Exhibit A

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| 1. PRODBEGDOC | The Document ID number associated with the first page of an email or document |
| 2. PRODENDDOC | The Document ID number associated with the last page of an email or document |
| 3. PRODBEGATTACH | The Document ID number associated with the page of a parent email or document |
| 4. PRODENDATTACH | The Document ID number associated with the last page of the last attachment to a parent email or document |
| 5. CUSTODIAN | The custodian of an email or document |
| 6. HASH VALUE | A unique, identifying number of a file calculated by a hash algorithm, e.g. MD5. |
| 7. FROM | Email Sender |
| 8. TO | The display name of the recipient(s) of an email or document (e.g., fax recipients) |
| 9. CC | Email Recipient(s) that were Copied |
| 10. BCC | Email Recipient(s) that were Blind Copied |
| 11. SUBJECT | Subject line of emails |
| 12. TITLE | The title of a document |
| 13. OTHERCUSTODIAN | Individual(s) whose email or document de-duplicated out |
| 14. DATESENT | The date the email was sent; for email attachments, the date the parent email was sent |
| 15. TIMESENT | Email sent time |
| 16. DATERECEIVED | Email received date |
| 17. TIMERECEIVED | Email received time |
| 18. DATESAVED | Save date |
| 19. TIMESAVED | Save time |
| 20. FILEEXT | File extension of document |
| 21. AUTHOR | For emails, the display name of the author or sender of an email; for custodial documents, the name of the author as identified by the metadata of the document |
| 22. DATECREATED | Date document was created on non-emails |
| 23. TIMECREATED | Time document was created on non-emails |
| 24. DATEMODIFIED | Last date document was modified on non-emails |
| 25. TIMEMODIFIED | Last time document was modified on non-emails |
| 26. FILESIZE | Size of Native file |
| 27. PGCOUNT | Number of pages in document |
| 28. OCRPATH | Path to extracted text of native file or OCR |
| 29. NATIVELINK | Path to email or native file document (if applicable) |

| | | |
|---|---|---|
| Dated: September 27, 2022 | | MORRISON & FOERSTER LLP |
| | By: | */s/ Alexis A. Amezcua* |
| | | Alexis A. Amezcua |
| | | Attorneys for Defendant<br>APPLE INC. |
| Dated: September 27, 2022 | | CUNNINGHAM BOUNDS, LLC |
| | By: | */s/ Lucy E. Tufts* |
| | | Lucy E. Tufts |

STEVEN L. NICHOLAS (*pro hac vice*)
sln@cunninghambounds.com
LUCY E. TUFTS (*pro hac vice*)
let@cunninghambounds.com
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street
Mobile, Alabama 36604
Telephone: (251) 471-6191
Facsimile: (251) 479-1031

MICHAEL F. RAM (SBN 104805)
mram@forthepeople.com
MARIE N. APPEL (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, California 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6293

RA O. AMEN (*pro hac vice*)
Ramen@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

BENJAMIN H. KILBORN, JR. (*pro hac vice*)
benk@kilbornlaw.com
KILBORN LAW, LLC
P.O. Box 2164
Fairhope, Alabama  36533
Telephone: (251) 929-4623

Attorneys for Plaintiffs
Chris Smith, Cheryl Smith, Karen Smithson, Jason Roush, Corey Pomroy, Frank Ortega, Alberto Cornea, Michelle Rogers, Joshua Bays, Deborah Class, and Amber Jones

# **ORDER**

PURSUANT TO STIPULATION, IT IS SO ORDERED.

Dated: 10/12/2022

Hon. Haywood S. Gilliam, Jr.
United States District Judge