CUNNINGHAM BOUNDS, LLC
Steven L. Nicholas (admitted *Pro Hac Vice*)
sln@cunninghambounds.com
Lucy E. Tufts (admitted *Pro Hac Vice*)
let@cunninghambounds.com
1601 Dauphin Street
Mobile, AL 36604
Telephone: (251) 471-6191
Facsimile: (251) 479-1031

KILBORN LAW, LLC
Benjamin H. Kilborn, Jr. (admitted *Pro Hac Vice*)
benk@kilbornlaw.com
P.O. Box 2164
Fairhope, AL 36533
Telephone: (251) 929-4623

MORGAN & MORGAN
COMPLEX LITIGATION GROUP
Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6293

Ra O. Amen (admitted *Pro Hac Vice*)
Ramen@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

*Counsel for Plaintiffs and the Proposed Class*

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Chris Smith, Cheryl Smith, Karen Smithson, Jason Roush, Frank Ortega, Alberto Cornea, Michelle Rogers, Deborah Class, Amber Jones, Krystal Edwards, Marcus Edwards, Alexis Keiser, Loorn Saelee, Rebecca McKeown, Thomas Pear, Tannaisha Smallwood, and William Lavelle, individually and on behalf of all other similarly situated individuals,<br><br>      Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>      Defendant. | Case No.: 4:21-cv-09527-HSG<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Chris Smith, Cheryl Smith, Karen Smithson, Jason Roush, Frank Ortega, Alberto Cornea, Michelle Rogers, Deborah Class, Amber Jones, Krystal Edwards, Marcus Edwards, Alexis Keiser, Loorn Saelee, Rebecca McKeown, Thomas Pear, Tannaisha Smallwood, and William Lavelle,

individually and on behalf of all others similarly situated, allege as follows against Defendant Apple, Inc.:

**INTRODUCTION**

1.      This action is brought on behalf of individuals who purchased First Generation ("Series 0"), Series 1 through Series 6, and Series SE Apple Watches (collectively, the "Apple Watch" or "Watch").   Apple has consistently marketed its Watch as a safe wearable device designed to help consumers live safer and healthier lifestyles.

2.      However, the Apple Watch contains an undisclosed and unreasonably dangerous safety hazard.  The Watch is a small wearable device intended to rest on a user's wrist with no thermal or other solution to prevent and/or mitigate the danger of a detached, shattered, or cracked Watch screen resulting from the insufficient space allocated within the device for the rectangular shaped, electromagnetically charged lithium cobalt oxide battery (the "Defect").  Despite knowing that the battery inside the Watch can suddenly swell, Apple allocated insufficient room inside the Watch for it to freely expand without affecting the Watch screen face and/or failed to incorporate a protective guard to keep it from making contact with the Watch screen face, and/or otherwise failed to prevent detachment, shattering, or cracking of the Watch screen face as described above.  The swelling creates considerable upward pressure on the Watch face, causing detachment, shattering, and/or cracking of the screen through no fault of the wearer, exposing its razor-sharp edges and leading to operational failure of the Watch and/or personal injuries resulting from unintended bodily contact with the detached, shattered, or cracked screen.

3.      The Defect is not the normal degradation of the lithium-ion battery, but instead the placement of that battery in the above-described configuration where the battery's expansion can cause screen damage or detachment, operationally destroy the product, and harm or potentially harm the user.

4.      The detached, shattered, or cracked screens are a material and unreasonably dangerous safety hazard.  The screens are made either of Ion-X glass (aluminum models) or sapphire crystal glass (stainless steel and titanium models) and each has a razor-sharp edge on all four sides.  Even after a failure, the exposed screen remains secured to the back of the Watch (and therefore within close proximity to a consumer's body) by means of the tiny flexible wire depicted below.




5.      When a consumer's body contacts the sharp edge of the detached, shattered, or cracked screen, there is substantial and material risk of serious injury, including lacerations, cuts, abrasions, and other injuries.

6.      The defective Watches injured Plaintiff Chris Smith and other Class members.  The injury to Chris Smith caused by the detached screen of a Series 3 Apple Watch is depicted below:



7.      Apple Watch First Generation, Series 1 through Series 6, and Series SE all contain the same Defect, regardless of the model or case size.

8.      The Defect affects the core or central functionality of the Watch and often manifests during

the stated express and implied warranty periods, and/or during the periods covered by Apple's limited Screen Replacement Program (described below).  The Defect can also manifest after the warranty and/or Screen Replacement Program periods.

9.     Since 2015, Apple has sold tens of millions of Watches with the Defect throughout the United States and knew that the Watches contain the Defect and were unmerchantable and/or not fit for their intended purpose. Nonetheless, Apple failed to disclose the Defect to Plaintiffs and Class members prior to, at, and since the time of purchase.

10.    The Defect poses a material and unreasonable safety hazard to consumers, as it has caused many purchasers to suffer lacerations, cuts, abrasions, and/or other injuries in connection with the screens cracking, shattering and/or detaching from the body of the Watches.  Notwithstanding the material and unreasonable safety hazard caused by the Defect with the Watches, Apple did not disclose the Defect to consumers.

11.    Further, Apple's conduct, when confronted with the Defect, indicates that its internal policy has been to deny the existence of the Defect, claim the Defect was the result of "accidental damage" or "misuse" caused by consumers, and then refuse to honor its Limited Warranty on those grounds. Consumers who are refused coverage under the Limited Warranty are faced with the choice of incurring the significant expense of repairing or replacing their defective Watches.

12.    Apple knew that purchasers of the Watches would reasonably expect the screens to function in a predictable and expected manner, and not crack, shatter, or detach from the body of the Watch during normal use.  Plaintiffs and Class members have precisely that expectation. Apple was also aware that purchasers of the Watches would reasonably expect that the Watches would not pose an unreasonable safety hazard, just as Plaintiffs and Class members expected. Further, Apple knew that purchasers of the Watches would reasonably expect that potential defects, including the Defect, would be covered under its Limited Warranty if they manifested themselves during the warranty period, just as Plaintiffs and other consumers expected.

13.    Plaintiffs and other Class members were unaware of the Defect at the time of purchase. Had Plaintiffs and other Class members known about the Defect at the time of purchase, Plaintiffs and Class members would not have purchased a Watch, would have paid substantially less, or would have

returned their Watch during their respective buyer's remorse periods.[1]

14.     Plaintiffs and other Class members would purchase a Watch in the future if the devices were reasonably safe, functioned as advertised, and if the Court ordered Apple to comply with all pertinent advertising and warranty laws.

15.     As a result of the Defect in the Watches and the monetary costs associated with overpayment, repair, replacement, and lost use of the Watches, Plaintiffs and Class members have suffered injury in fact, incurred ascertainable loss and damages, and have otherwise been harmed by Apple's conduct.

16.     Plaintiffs bring this class action on behalf of themselves and all other similarly situated persons who purchased a First Generation, Series 1 through Series 6, or Series SE Apple Watch for the purpose of obtaining damages, or, if not available, then injunctive and/or other equitable relief.  More specifically, this action is brought to remedy violations of law in connection with Apple's misconduct, including: its fraudulent omission of material facts concerning the Defect during the distribution, marketing, sale and advertisement of the Watches; and violations of certain consumer protection statutes.

17.     Plaintiffs and the Class allege violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"); the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"); fraudulent omissions; violations of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791 *et seq.*; and violations of state law as described in more detail below.

18.     Pursuant to the Court's February 17, 2023 Order (Doc. 80), Plaintiffs have not repled the causes of action that were dismissed with prejudice and without leave to amend.  However, Plaintiffs do not waive their right to appeal the dismissal of these causes of action.  *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal."); *see*

---

[1] Apple permits consumers to return the Watch 14 days after the date of purchase. https://www.apple.com/shop/help/returns_refund.  Best Buy permits consumers to return the Watch 14 days after the date of purchase. https://www.bestbuy.com/site/help-topics/return-exchange-policy/pcmcat260800050014.c?id=pcmcat260800050014. AT&T permits consumers to return the Watch 14 days after the date of purchase. https://www.att.com/wireless/return-policy/ (click on "Consumer Returns – Devices and Accessories").

*also Cirino v. Ocwen Loan Servicing LLC*, 815 F. App'x 204, 205 (9th Cir. 2020) (same).

19.     For clarity, neither the original Complaint, the First Amended Complaint, nor this Second Amended Complaint allege causes of action for any affirmative misrepresentation except to the extent that Apple's affirmative statements created a duty to disclose facts (including, but not limited to, the existence of the Defect and resulting unreasonable safety hazard) that would have materially qualified these partial representations.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 as well as pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), as the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because many putative class members are citizens of a different state than Defendant.

21.     Venue is proper in this District pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b)(2) because Defendant conducts its affairs in this District, is headquartered in this District, and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

22.     This Court has personal jurisdiction over Defendant because its principal place of business is in California. Additionally, Defendant is subject to specific personal jurisdiction in this State because a substantial part of the events and conduct giving rise to Plaintiffs' and the Class claims occurred in this State.

## PARTIES

23.     Plaintiff Chris Smith is an Alabama citizen domiciled in Alabama.  On or about December 25, 2017, he received a new Series 3 GPS Aluminum 42mm Apple Watch (Serial No. FH7VQBEYJ5X4) purchased by his mother, Cheryl Smith, from Best Buy in Daphne, Alabama for $359.00 plus tax.

24.     Plaintiff Cheryl Smith is an Alabama citizen domiciled in Alabama.  On or about December 15, 2017, she purchased a new Series 3 GPS Aluminum 42mm Apple Watch (Serial No. FH7VQBEYJ5X4) from Best Buy in Daphne, Alabama for $359.00 plus tax and gifted it to her son, Chris Smith, on December 25, 2017.

25.     Plaintiff Karen Smithson is a California citizen domiciled in California.  On or about

December 18, 2016, she purchased a new Series 2 Stainless Steel 38mm Apple Watch (Serial No. FHLTP06ZHDXL) from the Apple Store in San Francisco, California for $1,026.71 with tax.

26.   Plaintiff Jason Roush is an Ohio citizen domiciled in Ohio.  On or about November 12, 2017, he purchased a new Series 2 Nike Aluminum 42mm Apple Watch (Serial No. FHLTK0HRHF1N) from Best Buy in Akron, Ohio for approximately $350.00 plus tax.

27.   Plaintiff Frank Ortega is a California citizen domiciled in California.  On or about March 23, 2021, he purchased a new Series SE Aluminum 44mm (GPS) Apple Watch (Serial No. H4HF7AE0Q07Y) from an Apple Store in Northridge, California for approximately $309.00 plus tax.

28.   Plaintiff Alberto Cornea is a New York citizen domiciled in New York.  On or about July 22, 2018, Mr. Cornea purchased a new Series 3 Stainless Steel 42mm (GPS + Cellular) Apple Watch (Serial No. FH7WL0PHJ6GH) from an Apple Store in New York for approximately $399.00 plus tax. On or about March 2020, following a sudden screen separation, Mr. Cornea sent his original watch to Apple and it was replaced with a Series 3 Stainless Steel 42mm (GPS + Cellular) Apple Watch (Serial No. GQ2ZV06MJ6GH) with the same Defect.

29.   Plaintiff Michelle Rogers is a Florida citizen domiciled in Florida.  On or about November 24, 2015, she purchased a First Generation Sport Aluminum 38mm Apple Watch (Serial No. FH7QLV5AGR79) from a Best Buy in Ohio for approximately $349.00 plus tax.

30.   Plaintiff Deborah Class is a Georgia citizen domiciled in Georgia.  On or about February 3, 2016, she purchased a new First Generation Sport Aluminum 38mm Apple Watch (Serial No. FHLR11R4GR79) from the Best Buy in Columbus, Georgia for approximately $349.00 plus tax.

31.   Plaintiff Amber Jones is a Texas citizen domiciled in Texas.  On or about December 26, 2017, she purchased a new Series 1 Aluminum 38mm Apple Watch (Serial No. G99VMBXXHF12) from the Apple Store in Southlake, Texas for approximately $249.00 plus tax.

32.   Plaintiff Krystal Edwards is a California citizen domiciled in California.  In December 2015, her husband, Marcus Edwards, a member of her household, purchased a new First Generation Stainless Steel 42mm Apple Watch (Serial No. FHLQLFUCG9J8) from the Apple Store in Emeryville, California for approximately $399.00 plus tax.

33.   Plaintiff Marcus Edwards is a California citizen domiciled in California.  In December

2015, he purchased a new First Generation Stainless Steel 42mm Apple Watch (Serial No. FHLQLFUCG9J8) from the Apple Store in Emeryville, California for approximately $399.00 plus tax and gifted it to his wife, Krystal Edwards.

34.     Plaintiff Alexis Keiser is a California citizen domiciled in California.  In early February 2016, she received a new First Generation Sport Aluminum 42mm Apple Watch (Serial No. FHLQP33XGR7M) purchased by household member Loorn Saelee from the Best Buy in Redding, California for approximately $399.00 plus tax.

35.     Plaintiff Loorn Saelee is a California citizen domiciled in California.  On or about January 28, 2016, he purchased a new First Generation Sport Aluminum 42mm Apple Watch (Serial No. FHLQP33XGR7M) from the Best Buy in Redding, California for approximately $399.00 plus tax and gifted it to his household member, Alexis Keiser.

36.     Plaintiff Rebecca McKeown is a California citizen domiciled in California.   In approximately May 2019, she purchased a Series 3 Apple Watch (Serial No. unknown) from the Best Buy in Laguna Hills, California for approximately $359.00 plus tax.

37.     Plaintiff Thomas Pear is a Florida citizen domiciled in Florida.  In September 2021, he purchased an SE Aluminum 44mm Apple Watch (Serial No. G99G8MP0Q12C) from a Verizon Store in Cape Coral, Florida for approximately $359.00 plus tax.

38.     Plaintiff Tannaisha Smallwood is a Texas citizen domiciled in Texas.  In February 2017, she purchased a new Series 1 Aluminum 38mm Apple Watch (Serial No. FHLT4E5GHF12) from Apple's website for approximately $249.00 plus tax.

39.     Plaintiff William Lavelle is an Arizona citizen domiciled in Arizona.  In July 2017, he purchased a new Series 2 Aluminum 38mm Apple Watch (Serial No. FHLTMOPDHJLL) from Apple's website for approximately $369.00 plus tax.

40.     Defendant Apple is a California corporation with a principal place of business at One Apple Park Way, Cupertino, California 95014.  Apple regularly conducts business throughout California and in this judicial district. Apple started selling Apple Watches in April 2015 when it introduced its "First Generation" Apple Watch ("Series 0"). Since September 2016, Defendant has released additional

"Generations" of the Apple Watch: the Second Generation Watches (Series 1 and Series 2)[2]; the Third Generation Watch (Series 3); the Fourth Generation Watch (Series 4); the Fifth Generation Watch (Series 5); and the Sixth Generation Watch (Series 6 and SE).  The different series of Watches come in various models, including in many instances Aluminum, Stainless, Nike, Hermes, and Edition.

41.    Upon information and belief, Apple makes all its decisions about advertising, promotional literature, product packaging, its online purchase portal, User Guides, and on-screen device instructions in California and prepares and disseminates all these materials from California.  Apple designed the Watches in California.  Apple's pre-release testing of the Watches, described in more detail below, occurs in California.  Apple's engineering, product development, website, marketing, and sales departments are all based in California and all relevant decisions associated with the Watch made by these departments are made in California.  Apple's partial representations about the health and safety features of the Watch (which failed to disclose the Defect and resulting unreasonable safety hazard) were disseminated from California.  Apple made the decision not to disclose the Defect in California.  In addition, a substantial number of Class members are located in California.

## COMMON FACTUAL ALLEGATIONS

### Watches Manufactured, Advertised, and Sold by Apple

42.    Since as early as 2015, Apple has designed, manufactured, distributed, marketed, warranted, and sold—directly via the internet, its App store, or physical Apple Store locations – or indirectly through authorized stores and other retail outlets—millions of defective Watches in California and nationwide.

43.    Apple contracted with retailers so that the retailers could sell Watches to consumers. Apple intended that consumers would be the end users of Watches and that consumers would be the beneficiaries of its contracts with retailers to sell Watches to consumers.

44.    Apple first began selling its Watches in April 2015 when it introduced the First Generation Apple Watch.  The First Generation Apple Watch used aluminum or stainless steel cases with sapphire crystal screens, but consumers were able to choose between a 38mm case and a 42mm case.  Initially,

---

[2] The Series 1 and 2 were both in the same Generation.

prices for the First Generation varied between $349 and $549 – depending on the size chosen – but dropped following the release of new versions of the Watch.

45.     Starting in September 2016, Apple discontinued the manufacture of the First Generation Apple Watch and began to produce and sell both Second Generation (Series 1 and Series 2) Watches.

46.     The Series 1 Watches only used aluminum cases with "Ion-X glass" screens, but consumers were able to choose between a 38mm case and a 42mm case. Initially, prices for Series 1 watches varied between $269 and $299—depending on the size chosen—but dropped following the release of new versions of the Watch.

47.     Purchasers of the Series 2 Watch could choose various models, with either a 38mm or 42mm case. Depending on the model, Series 2 Watches had aluminum, ceramic, or stainless-steel cases, and either Ion-X glass or sapphire crystal screens. Again, depending on the model selected, prices for the Series 2 watches ranged from $269 to $1,249.

48.     In September 2017, Apple discontinued the manufacture of the Series 2 Watch, and in September 2018, Apple announced that it would no longer sell the Series 1 Watch.

49.     In September 2017, Apple released the Third Generation (Series 3) Watch. Initially, there were several models of the Series 3. Depending on the model, Series 3 Watches would have aluminum, ceramic, or stainless-steel cases, and either Ion-X glass or sapphire crystal screens. Consumers can select between a 38mm or 42mm case. Depending on the model, prices for the Series 3 varied between $329 and $1,399.  In September 2022, Apple announced that it would discontinue the manufacture and sale of Series 3 watches.

50.     In September 2018, Apple released the Series 4 Watch. Initially, there were several models of the Series 4.  Depending on the model, Series 4 Watches would have aluminum, ceramic, or stainless-steel cases, and either Ion-X glass or sapphire crystal screens.  Consumers can select between a 40mm or 44mm case. There are several models of the Series 4 Watch, and, depending on the model, its price varies from $399 to $1,499.

51.     In September 2019, Apple discontinued the manufacture of the Series 4 Watch.

52.     In September 2019, Apple released the Series 5 Watch. Initially, there were several models of the Series 5.  Depending on the model, Series 5 Watches would have aluminum, ceramic, or stainless-

steel cases, and either Ion-X glass or sapphire crystal screens.  Consumers can select between a 40mm or 44mm case. There are several models of the Series 5 Watch, and, depending on the model, its price varies from $399 to $1,499.

53.     In September 2020, Apple discontinued the manufacture of the Series 5 Watch.

54.     In September 2020, Apple released the Series 6 Watch. Initially, there were several models of the Series 6.  Depending on the model, Series 6 Watches would have aluminum, ceramic, or silver stainless-steel cases, and either Ion-X glass or sapphire crystal screens.  Consumers can select between a 40mm or 44mm case. There are several models of the Series 6 Watch, and, depending on the model, its price varies from $399 to $1,499.

55.     In October 2021, Apple discontinued the manufacture of the Series 6 Watch.

56.     Also in September 2020, Apple released the Series SE (1st generation) Watch, a lower cost version of its Series 6 Watch.  Depending on the model, Series SE Watches would have aluminum cases with Ion-X screens.  Consumers can select between a 40mm or 44mm case.  There are also several models of the Series SE Watch, and, depending on the model, its price varies from $279 to $309.  In September 2022, Apple announced that it would discontinue the manufacture and sale of the Series SE (1st generation) Watch.

### Apple's Omissions About The Watches

57.     From their inception, the Watches have been advertised as "smart watches," with functions well beyond simply telling the time. Consumers can, among other things, download files, receive and send text messages, track their location, and receive phone calls.[3]

58.     More importantly, Apple has consistently marketed the Watches as activity-oriented devices that consumers can take anywhere and safely use for any practical purpose. Advertisements for the Series 1 Watch that appeared on Apple's website invited consumers to: "Track your activity. Measure your workouts. Monitor your health."[4] Consumers were encouraged to pick from a variety of workouts

---

[3] https://www.apple.com/watch/
[4] As the Series 1 and Series 2 watches are no longer sold by Apple, the advertisements have been removed from Apple's website.

and Apple promised that the Watch would accurately measure movement.  Apple advertises that Apple Watch Series 6, Apple Watch SE, and Apple Watch Series 3 have a water resistance rating of 50 meters under ISO standard 22810:2010.[5]   The Watches also included fitness and health capabilities. Likewise, the Series 3 is advertised as the "Ultimate Sports Watch" that can track indoor and outdoor activities.[6]

59.   Advertising campaigns for the Watches have shown, and continue to show, Apple Watch wearers participating in a variety of athletic activities from running, hiking, and climbing, to dancing, swimming, and surfing.[7]

60.   Apple has also consistently marketed the Watch as "healthy" and "safe."

a)  First Generation

"Apple Watch is…a groundbreaking health and fitness companion."[8]

b)  Series 1

"Apple Watch is the ultimate companion for a healthy life" with "breakthrough new fitness and health features…"[9]

c)  Series 2

Apple Watch has "changed people's lives" and is "packed with features to help…customers live a healthy life."[10]  It is the "perfect running partner on your wrist."[11]

d)  Series 3

Apple Watch is "an amazing health and fitness companion" and is the "ultimate device for a healthy life."[12]

---

[5] https://www.apple.com/apple-watch-se/?afid=p238%7Cs1Phk1EPY-dc_mtid_20925qtb42335_pcrid_534965872726_pgrid_114810878159_&cid=wwa-us-kwgo-watch-slid---Brand-AppleWatchSE-Evergreen-

[6] https://www.apple.com/apple-watch-series-3/

[7] https://www.youtube.com/watch?v=1b6W3ltMRN0; https://www.youtube.com/watch?v=kXySS9j4Rxg; https://www.apple.com/watch/films/; https://www.youtube.com/watch?v=0cBJBj_tbHM; https://www.youtube.com/watch?v=AELaas6CV8I; https://www.youtube.com/watch?v=TCMnrssX1NE.

[8] https://www.apple.com/newsroom/2015/03/09Apple-Watch-Available-in-Nine-Countries-on-April-24/

[9] https://www.apple.com/newsroom/2016/06/apple-previews-watchos-3/

[10] https://www.apple.com/newsroom/2016/09/apple-introduces-apple-watch-series-2/

[11] https://www.apple.com/newsroom/2016/09/apple-nike-launch-apple-watch-nike/

[12] https://www.apple.com/newsroom/2017/09/apple-watch-series-3-features-built-in-cellular-and-more/

e)  Series 4

Apple Watch "becomes an intelligent guardian for your health."[13]  Apple promotes the Watch as a "fitness and workout companion."  *Id.*

f)  Series 5

Apple Watch makes users "empowered to take charge of their health and fitness…"[14]

g)  Series 6

"On your wrist.  Anytime.  Anywhere."[15]  Apple markets the Watch to be worn while customers sleep.[16]  "…Apple Watch offers a remarkable set of features that can help them keep in touch with loved ones, be more active and stay safe."[17]  "[W]atchOS 7 also offers optimized features for older adults, adding to the powerful set of health and safety tools currently available…" *Id.* Apple encourages customers to buy Watches for their children[18] and encourages healthcare providers to promote use of Watches by their patients.[19]

h)  Series SE

"Powerful features to keep you healthy and safe."[20]

61.    The overriding theme of Apple's long-term advertising campaign of the Apple Watch has been its indispensability to the consumer's health.  Based on these and other advertisements and the high purchase price for Apple Watches, consumers expect that they will be able to use the Watches without experiencing an unreasonable safety hazard.  Consumers who purchase Apple Watches also reasonably expect well-made, durable devices that can consistently perform multiple functions and withstand a

---

[13] https://www.apple.com/newsroom/2018/09/redesigned-apple-watch-series-4-revolutionizes-communication-fitness-and-health/
[14] https://www.apple.com/newsroom/2019/09/apple-unveils-apple-watch-series-5/
[15] https://www.apple.com/apple-watch-series-6/
[16] https://www.apple.com/apple-watch-series-6/
[17] https://www.apple.com/newsroom/2020/09/apple-extends-the-apple-watch-experience-to-the-entire-family/
[18] https://www.apple.com/apple-watch-series-6/
[19] https://www.apple.com/healthcare/
[20] https://www.apple.com/apple-watch-se/?afid=p238%7Cs1Phk1EPY-dc_mtid_20925qtb42335_pcrid_534965872726_pgrid_114810878159_&cid=wwa-us-kwgo-watch-slid---Brand-AppleWatchSE-Evergreen-

variety of conditions without issue.

62.     Apple places information about the Watch on, among other things: (1) its website; (2) in its advertisements and promotional materials; (3) on its packaging; (4) in its online purchase portal; (5) in the User Guide; and (6) and on a user's device when pairing the Watch with an iPhone.  Each Plaintiff reviewed materials where the Defect should have been disclosed, as described in more detail below.  In all these places, Apple uniformly failed to disclose that the Watches contained the Defect that would cause them to fail and render them an unreasonable safety hazard resulting in injury to the wearer.  This makes the Watches unmerchantable and unfit for the uses Apple advertised, e.g., activity oriented, fitness, athletic use, health, and safety.

63.     Apple markets the Apple Watch worldwide.  In the United States, Apple Watch product promotion and distribution occurs nationwide through Apple Stores, the online App store, Apple's website, and authorized retailers.  Apple also markets the Apple Watch nationwide through television commercials, promotional videos, print advertisements, and digital advertisements.  Apple also markets the Apple Watch through annual keynote speeches and conventions, product displays, and product packaging.

64.     Each Plaintiff ordinarily prefers Apple products to similar products manufactured by Apple's competitors.  Apple continues to advertise the Watch's health, fitness, and safety features.  But, because of their experiences with the Watches, Plaintiffs do not trust Apple's representations about its Watches.  As a result, although Plaintiffs would like to buy the Apple Watch again, they will not do so unless Apple takes sufficient steps to effectively cure the Defect and ensure the accuracy of its representations about the Watch.

**Apple's Knowledge of the Defect**

65.     Apple knew that the Watches were defective at or before the time it began selling them to the public.

66.     ███████████████████████████████████████████
████████████████████████████████████████████████
███████████████
██████████████████████████████████████████████

67.     In U.S. Patent Publication No. US 2017/0033567 (dated February 2, 2017 but filed July 27, 2015), Apple acknowledges: "[T]he higher the capacity of the battery the longer the electronic device can be used at a time, making the electronic device more useful.  This may particularly be the case for highly portable devices such as tablet computers, smart phones, or <u>wearable electronic devices where acceptable battery size and weight may be limited</u>, thus also possibly limiting battery capacity." (emphasis added).  By recognizing these parameters, Apple evidences its knowledge that there are limitations on the ratio of device size to battery size.  The reason there is such a ratio is because insufficient room for an expanding lithium-ion battery will lead to the destruction of the device and, particularly for wearables, exposure of the user to personal injury.

68.     Apple's U.S. Patent No. 9,912,186 (issued March 6, 2018, but application pending since 2011) describes its contents in the Abstract: "The disclosed embodiments provide a system that manages use of a battery corresponding to a high-voltage lithium-polymer battery in a portable electronic device.  During operation, the system monitors a cycle number of the battery during use of the battery with the portable electronic device, wherein the cycle number corresponds to a number of charge-discharge cycles of the battery. If the cycle number exceeds one or more cycle number thresholds, the system modifies a charging technique for the battery to manage swelling in the battery and use of the battery with the portable electronic device."  More specifically, the patent acknowledges: "Continued use of a lithium-polymer battery over time may also produce swelling in the battery's cells. . . <u>a user of a device may not be aware of the battery's swelling</u> and/or degradation <u>until the swelling results in physical damage to the device</u>." (emphasis added).  The 2011 patent application submitted by Apple contained the same language.

69.     For more than 10 years, Apple has gathered substantial data on its batteries' performance

that was not available to consumers. Apple acknowledges that battery testing was conducted by Apple in August 2018 for its Series 3 Watches and August 2020 for its Series 6 and Series SE Watches.[21]  Upon information and belief, Apple did extensive battery testing on other Apple Watches before 2015 and leading up to the release of each Series Watch, as described below.

70.     The batteries in Apple's iPhone and the Apple Watch are lithium cobalt oxide batteries.

71.     Lithium cobalt oxide batteries have a relatively short life span, low thermal stability, and limited load capabilities.

72.     Lithium cobalt oxide batteries have a known cycle life of 500-1000 cycles, related to depth of discharge, load and temperature.

73.     Apple has been using lithium cobalt oxide batteries in its products since at least 2007. Apple admits that "Apple Lithium-ion batteries" are "inside every iPhone, iPad, iPod, Apple Watch, MacBook, and AirPods."[22]  Thus, with extensive product experience related to these batteries, Apple is knowledgeable about the batteries' life span, low thermal stability, limited load capacity, known life cycle, propensity to swell and under what foreseeable conditions, and the damage it may cause to the device that holds it.

74.     Lithium cobalt oxide batteries are well known in the industry and by Apple to swell under any number of common and foreseeable conditions, including, but not limited to: overcharging, liquid ingress, poor cell quality with low anode to cathode stoichiometric ratios, particulate contamination, mechanical damage induced during cell assembly, excessive temperatures, or deep discharge.  Such conditions may disrupt the energy-producing chemical reaction that occurs in a lithium cobalt oxide battery, which creates a gaseous byproduct.  This gaseous by-product causes the battery to swell.  Apple's knowledge of this process is evidenced by, among other things, the Battery Management System that is built into the Apple Watch, which was created to help control the charging process and prevent that gas build-up.

75.     According to an Apple Product Information Sheet, the testing that Apple conducted on the

---

[21] https://www.apple.com/watch/battery/
[22] https://www.apple.com/batteries/

batteries that it uses and/or used in every series and model of the Apple Watch includes, but is not limited to: altitude simulation, thermal, vibration, shock, external short circuit, impact/crush, overcharge, and forced discharge tests.[23]   Thermal, overcharge, and forced discharge tests would all commonly result in battery swelling, which, as described below, would have exerted upward pressure on the screen face and caused partial or total screen detachment during such tests based on the battery, the amount of gaseous by-product, and the inadequate depth of the casing of the Apple Watch in which that battery is placed. This, in turn, would have alerted Apple to the fact that when a Watch screen detaches its razor-sharp edges expose consumers to injury and create an unreasonable safety hazard.

76.     The batteries used in every model and every series of the Apple Watch have nearly identical weights and watt/hour ratings (the amount of energy the battery will expend over one hour), with the weight varying less than 0.001/kilogram and the watt/hour rating within a range of 0.5 watt/hours across all models.   The depth of the watches across models varies by less than 1 millimeter:[24]



The red-line above represents 1 mm.

| Series and Model | Battery Weight (kg) | Watt/hour Rating (Wh) | Case Depth (mm) |
|---|---|---|---|
| First Generation – A1553 | 0.005 kg | 0.93 Wh | 10.5mm |
| First Generation – A1554 | 0.004 kg | 0.93 Wh | 10.5mm |
| Series 1 – A1802 | 0.005 kg | 0.84 Wh | 10.5mm |
| Series 1 – A1803 | 0.006 kg | 1.00 Wh | 10.5mm |
| Series 2 – A1757 | 0.005 kg | 1.03 Wh | 11.4mm |

---

[23] https://websetnet.net/wp-content/uploads/2021/09/apis_bpisreportupdated20210916.pdf
[24] A few ceramic watch cases made in 2016 and 2017 may have achieved a depth of 11.8mm, making this range 1.3mm.

| | | | |
|---|---|---|---|
| Series 2 – A1758 | 0.006 kg | 1.27 Wh | 11.4mm |
| Series 2 – A1816 | 0.005 kg | 1.03 Wh | 11.4mm |
| Series 2 – A1817 | 0.006 kg | 1.27 Wh | 11.4mm |
| Series 2 – A1858 | 0.004 kg | 1.00 Wh | 11.4mm |
| Series 2 – A1859 | 0.006 kg | 1.31 Wh | 11.4mm |
| Series 3 – A1860 | 0.005 kg | 1.07 Wh | 11.4mm |
| Series 3 – A1861 | 0.006 kg | 1.34 Wh | 11.4mm |
| Series 3 – A1889 | 0.005 kg | 1.07 Wh | 11.4mm |
| Series 3 – A1890 | 0.005 kg | 1.07 Wh | 11.4mm |
| Series 3 – A1891 | 0.006 kg | 1.34 Wh | 11.4mm |
| Series 3 – A1892 | 0.006 kg | 1.34 Wh | 11.4mm |
| Series 4 – A1977 | 0.004 kg | 0.858 Wh | 10.7mm |
| Series 4 – A1978 | 0.005 kg | 1.113 Wh | 10.7mm |
| Series 4 – A2007 | 0.004 kg | 0.858 Wh | 10.7mm |
| Series 4 – A2008 | 0.005 kg | 1.113 Wh | 10.7mm |
| Series 4 – A1975 | 0.004 kg | 0.858 Wh | 10.7mm |
| Series 4 – A1976 | 0.005 kg | 1.113 Wh | 10.7mm |
| Series 5 - A2156 | 0.005 kg | 0.944 Wh | 10.74mm |
| Series 5 – A2157 | 0.005 kg | 1.129 Wh | 10.74mm |
| Series 5 – A2092 | 0.005 kg | 0.944 Wh | 10.74mm |
| Series 5 – A2093 | 0.005 kg | 1.129 Wh | 10.74mm |
| Series 5 – A2094 | 0.005 kg | 0.944 Wh | 10.74mm |
| Series 5 – A2095 | 0.005 kg | 1.129 Wh | 10.74mm |
| Series 6 – A2291 | 0.00479 kg | 1.024 Wh | 10.7mm |
| Series 6 – A2292 | 0.00479 kg | 1.17 Wh | 10.7mm |
| Series 6 – A2293 | 0.00479 kg | 1.024 Wh | 10.7mm |
| Series 6 – A2294 | 0.00479 kg | 1.17 Wh | 10.7mm |

| Series 6 – A2375 | 0.00479 kg | 1.024 Wh | 10.7mm |
| Series 6 – A2376 | 0.00479 kg | 1.17 Wh | 10.7mm |
| Series SE – A2351 | 0.005 kg | 0.944 Wh | 10.7mm |
| Series SE – A2352 | 0.005 kg | 0.994 Wh | 10.7mm |
| Series SE – A2353 | 0.005 kg | 0.944 Wh | 10.7mm |
| Series SE – A2355 | 0.005 kg | 0.944 Wh | 10.7mm |
| Series SE – A2356 | 0.005 kg | 1.129 Wh | 10.7mm |

77.     Based on Apple's extensive experience with lithium-ion cobalt oxide batteries, the placement of the batteries in the Apple Watch, the size of the battery, the depth of the watch cases as listed above, and the admitted thermal and other battery testing it has performed on the batteries in every Series Watch, Apple had knowledge of the Defect before 2015.

78.     Additionally, Apple employs a team of Reliability Engineers to ensure its products live up to its standards and those of its customers.  These Reliability Engineers are responsible for leading and executing reliability tests on Apple technologies such as stress tests, the development of new test procedures to quantify the reliability of a design, and failure analysis resulting from these tests.  According to Apple's job description[25], Reliability Engineers in the Wearables department (which includes Apple Watch) have all the following responsibilities:

- "Developing new reliability tests procedures and specifications";
- "Preparing concise and detailed test plans and analyzing test reports";
- "Statistically analyzing data to provide design risk assessments";
- "Presenting tests, results, and risk assessments";
- "Researching new technologies to understand unique failure mechanisms"; and
- "Guiding design and interacting with diverse groups to improve product reliability."

The "key qualifications" for Apple's Reliability Engineers include:

- "Experience    performing    reliability    testing    including    Mechanical    Stress    Tests,

---

[25] https://jobs.apple.com/en-us/details/200337523/reliability-engineer-wearables?team=HRDWR

1    Shock/Drop/Vibration Testing, Environmental Testing Statistical experience such as Weibull,

2    JMP, or familiarity with accelerated test models Familiar with Failure Analysis techniques

3    (Optical Microscopy, X-ray/CT, Scanning Electron Microscopy/Energy Dispersive Spectroscopy,

4    etc.)";

5    • "Ability to use failure analysis methodology to derive a root cause of failure"; and

6    • "Understanding of Design of Experiments Imaginative approach to Failure Modes and Effects

7       Analysis Confident with navigating ambiguity and creating new ways of doing things."

8        79.    The extensive pre-release testing described above that Reliability Engineers in the

9    Wearables department must be qualified to perform occurs in advance of the release of every series Apple

10   Watch and would have alerted Apple to the Defect and the unreasonable safety hazard that it created.  One

11   or more of these tests would have resulted in upward pressure on the screen face and partial or total screen

12   detachment after the battery swelled during such tests based on the battery, the amount of gaseous by-

13   product, and the inadequate depth of the casing of the Apple Watch in which that battery is placed.  This,

14   in turn, would have alerted Apple to the fact that when a Watch screen detaches its razor-sharp edges

15   expose consumers to injury and create an unreasonable safety hazard.   Additionally, based on Apple's

16   extensive experience with lithium-ion cobalt oxide batteries, the placement of the batteries in the Apple

17   Watch, the size of the battery, the depth of the watch cases as listed above, and the admitted thermal and

18   other pre-release testing it has performed on the batteries in every Series Watch, Apple had knowledge of

19   the Defect before 2015.

20       80.    Despite this knowledge, the Apple Watch contains an undisclosed and unreasonably

21   dangerous safety hazard: a small wearable device intended to rest on a user's wrist with no thermal or

22   other solution to prevent and/or mitigate the danger of a detached, shattered, or cracked Watch screen

23   resulting from the insufficient space allocated within the device for the rectangular shaped,

24   electromagnetically charged lithium cobalt oxide battery.

25       81.    Consumers complained to Apple about damage caused by the Defect almost immediately

26   after Apple released the First Generation Watch (Series 0).

27       82.    Shortly after the release of the First Generation watches in April 2015, consumers who

28   purchased the First Generation Watch complained that the screens on their Watches had cracked,

shattered, or completely detached from the body of their Watches. In all instances, consumers made clear that these occurrences were not the result of damage or misuse on their part, explaining instead that the Defect manifested itself suddenly and unexpectedly.

83.    The Apple Watch "Support Communities" forum is a support forum for current Apple Watch owners to seek advice regarding issues they are experiencing with their respective Apple Watches. Many postings require an Apple account, credentials, and sign-in to be viewed.[26]

84.    Apple monitors the Apple Watch "Support Communities" forum.  Apple acknowledges that "Apple may respond to questions but does not formally provide technical support on the Site."[27] Additionally, Apple explains: "If you provide any ideas, suggestions, or recommendations on this site regarding Apple's products, technologies or services ("Feedback"), Apple may use such Feedback and incorporate it in Apple products, technologies, and services without paying royalties and without any other obligations or restrictions."[28]

85.    The Apple Watch "Support Communities" forum is replete with complaints about the Defect and Apple's persistent refusal to cover the Defect under its Limited Warranty.  Below are representative examples of complaints on Apple's Support Communities forum describing Watch screens detaching, shattering, or cracking (many of which include photographs) as a result of the Defect, which exposes the screens' razor-sharp edges.  Such posts are among many others dating back to at least April 2016 referencing initially the First Generation Watch and, over time, have continued to be made by consumers with respect to every other series, including as recently as September 2022.[29]  Apple's response in most cases is the same: it implicitly or expressly (and improperly) blames the consumer for the Defect and refuses to cover repairs under the Limited Warranty or otherwise.  Apple then charges consumers an expensive "out of warranty service fee" to replace the Watch face, which often approaches the cost of a

---

[26] https://idmsa.apple.com/IDMSWebAuth/signin?path=%2F%2Fcreate%2Fquestion%3Flogin%3Dtrue&language=US-EN&instanceId=EN&appIdKey=529eb2b096d5a3d54162171f0f29ba797e602812660013123243e58bc7bedf56&rv=1

[27] https://discussions.apple.com/terms

[28] *Id.*

[29] https://discussions.apple.com/thread/254215473

new Apple Watch.

86.    The following quotations are representative of consumers' experiences with the First Generation Watch on the Apple Communities Support forum[30]:

- Billfromcottonwood, posted on April 29, 2016: I ordered my watch on 5/10/2015 I've had no problems till last night. **I wore it to bed and checked to see what time it was. I pressed the bottom button and then the top face fell off.** How long is the warranty and who should I contact regarding this problem. Thanks for your help! (URL:) (emphasis added).

- Mariep999, posted August 19, 2016: …**I was doing an exercise class and had my watch on then I heard a clicking noise. I looked and the watch face had popped out and was hanging by a cable.** I wasn't doing anything strenuous at that point. I had worn my watch exercising numerous times and it's been fine. What would cause watch face to pop out? I've had my watch for over a year so it will be out of warranty. I've no other issues with it apart from this. I look after my watch and I've never had it wet. (URL: https://discussions.apple.com/thread/7641542) (emphasis added).

- gbussey, posted August 31, 2016: . . .**My history has been the glass front of the watch detaching. Has happened three times.** Anybody else with similar problem? Ever discover the cause? Thanks (URL: https://discussions.apple.com/thread/7652700) (emphasis added).

- Mercadoj (First Generation), posted August 16, 2017: I purchased my Apple Watch (stainless steel) in June of 2015. Being a near $800 Watch, saying it's been well cared for is an understatement. The Watch has ... no scratches or dents, never been dropped, or exposed to water. **While working at my desk at work I noticed the screen dangling from the Watch housing.** I took the Watch to a local Apple Store, and they sent it to Apple for further review. After a couple of days they called and refused to fix the Watch because they claimed the screen fell off because of "accidental damage" and the device was "out of warranty." (URL: https://discussions.apple.com/thread/8041416) (emphasis added).

- Ankush Narula (First Generation), posted September 17, 2017: I have the same issue with my first generation (stainless steel) Apple Watch. **One day the screen just popped off while I was walking and now it hangs by the ribbon cable.** I can press the screen and the body together but the screen doesn't remain attached. I took it to the Apple Store this past Friday and the Genius Bar confirmed that there is no physical damage. However, they told me that my AppleCare warranty is expired and my device is not covered. I mentioned that I've read Apple has extended the warranty for first generation Apple Watch to 3 years. They said the extended warranty only applies to the Apple Watch Sport – not to the Apple Watch

---

[30] All references to forums of this nature throughout the complaint maintain all of the original typographical, spelling, and other errors so that they appear exactly as they do on the forum.

or Apple Watch Edition. Out of warranty repair cost is $249. Very disappointing for a $700 device for someone who over 20 years has spent tens of thousands on Apple products and thousands on AppleCare. (URL: https://discussions.apple.com/thread/8041416) (emphasis added).

- William YZF-R1 (First Generation), posted Sep 25, 2017: Same think happened to me too - 18 month old 42mm Milanese loop. I have hardly worn the watch but yesterday **when I was driving I felt something catching on my sleeve and looked down to see the watch screen hanging on by its ribbon cable.** Incidentally the watch became very hot on my wrist at the same time so I took it off and laid it on the floor of the car. I am reading of swollen batteries causing the screen to pop off and coincidentally perhaps I upgraded to OS4 a couple of days ago which seems to stressing the battery according to some posts. Sadly it is out of warranty but I genuinely consider this is a manufacturing fault and I fully expected my Apple watch to last considerably longer. (URL: https://discussions.apple.com/thread/7867965) (emphasis added) (emphasis added).

87.    Apple had persistently denied any widespread issue with its First Generation watches.  In April 2017, Apple extended its Limited Warranty for qualifying First Generation watches from one year to three years.  Other sources available to Apple, and, upon information and belief that Apple accessed and viewed, stated unequivocally: "The battery problem causes the Apple Watch screen to pop away from the casing, rendering it unusable."[31]

██████████████████████████████████████

████████████████████████

████████████████████████████████████████

████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

████████████████████████████████████████

██████████████████████████████

████████████████████████████████

88.    Before the First Generation Watch was released, Apple knew about the Defect and its

---

propensity to cause personal injury from its own product research, patent drafting, and pre-release testing.

89.     Additionally, Apple (either directly or through its third-party authorized service providers) continuously received and tracked claims made by consumers under the Limited Warranty relating to First Generation Watches (and subsequently Series 1, 2, 3, 4, 5, 6, and SE Watches) with detached, shattered, and/or cracked screens after the Defect manifested.   Based on this constant stream of Watch screen claims, Apple knew or reasonably should have known of the Defect because, in the normal course of business, Apple tracks Watch claims under its warranty as well as the facts and circumstances reported with those claims.   As discussed in more detail below, Apple also received and tracked additional repair claims for First Generation and Series 2 Watches with detached, shattered, or cracked screens after extending its Limited Warranty for those series to three (3) years in April 2017 and April 2018, respectively, or the additional repair claims Apple received and tracked for certain models of Series 2 and Series 3 Watches after implementing a Screen Replacement Program in August 2019.

90.     Apple's knowledge of the Defect accumulated after its receipt of consumer complaints, service repair requests, warranty claims, and media reports for First Generation Watches.   Each subsequent series – namely Series 1, Series 2, Series 3, Series 4, Series 5, Series 6, and Series SE – had the same battery shape, the same battery chemistry, the same available screen materials (Ion X glass and sapphire crystal), the same material internal configuration, came in one of four limited sizes (38mm, 40mm, 42mm, or 44mm), had the same dangerous space constraints, were designed to be worn in the same location (a consumer's wrist), and lacked any thermal or other solution to prevent and/or mitigate the danger of a detached, shattered, or cracked Watch screen.   Nothing material changed with respect to the Defect between the First Generation watches and each subsequent series.   Therefore, Apple's knowledge of the Defect and its propensity to cause personal injuries before the release of the First Generation (and its accumulated knowledge after the release of each series through all the means described herein) directly relates to its knowledge of the Defect in every subsequent series.

91.     Apple began to sell its Second Generation Watches (Series 1 and Series 2) in September 2016. Very shortly thereafter, consumers who purchased the Series 1 and Series 2 Watches complained that the screens on their Series 1 and Series 2 Watches had cracked, shattered, or completely detached from the body of their Watches. These consumers took their defective Watches to Apple Stores, contacted

1  Apple Support, and posted their complaints on the Apple Watch "Support Communities" forum on

2  apple.com.

3          92.     Media outlets also extensively reported this problem with the Apple Watch.  In May 2017,

4  InvestorPlace Media reported: "Making the battery even last all day without expanding the size of the

5  smartwatch is going to be a challenge.  And now – thanks to the original Apple Watch battery issues –

6  Apple Inc. is going to need to balance that need for more power with being extremely cautious about

7  strapping lithium-ion batteries to owners' wrists."[32]

8          93.     Apple  monitors  the  Apple  Watch  "Support  Communities"  forum.    The  following

9  quotations are representative of consumers' experiences with the Series 1 and 2 Watches on that forum:

   - Juliefromnew smyrna beach (Series 1), posted March 5, 2017: **Apple Watch series
     1 face fell off.** (URL: https://discussions.apple.com/thread/7882834)  (emphasis
     added).

   - Posted by Michwool on April 17, 2017: "Has anyone known the screen of their
     watch come completely off? This looks as though the top of the screen has lifted
     straight off, no chips or cracks. **It is really sharp and has cut right through the
     top of my wrist.** Only had the Watch 6 months." (URL:
     https://discussions.apple.com/thread/7927927) (emphasis added).

   - Mightymackem (Series 2), posted May 14, 2017: My series 2 has just done the
     exact same thing! Only had it a month and a half. I'm armed forces so I use it for
     running etc as it's designed for…**fine one minute, next it's decided to be a jack
     in the box and is hanging by the ribbon.** Cracked all around the face. (URL:
     https://discussions.apple.com/thread/7641542) (emphasis added).

   - Snetmail (Series 2), posted October 14, 2017: This is exactly the same situation I
     had. **I was sitting at my desk at work and noticed that the screen was suddenly
     detached.** I have only had my watch (Nike version - 2nd generation I think - 38mm)
     for 4 months and I have never gotten it wet or dropped it. I was shocked when
     Apple sent it for repair and I was told it was found to have been accidentally
     damaged. There are not even any scratches on it. I would think there could be
     accidental damage in simply shipping a product with out a connected screen if that
     is the case. I don't typically buy Apple care because I am careful with my devices
     and the devices are usually of good quality hardware-wise. I am shocked and upset
     about this. It may be the end of my relationship with Apple products. This is
     unacceptable. (URL: https://discussions.apple.com/thread/8041416) (emphasis
     added).

---

[32] https://investorplace.com/2017/05/apple-inc-aapl-has-an-apple-watch-problem/

- Thony0415 (Series 1), posted December 13, 2017: Same thing happened with my apple watch series1. **I was just standing in the garden on a sunny day then suddenly I felt something has popped from my wrist. Then I realised the screen is shattered.** I called up the apple centre and they keep on telling me they have no similar cases from the past and make it appear that it might have been caused by accident. Now I can see that Im not alone. Apple should just gracefully admit that something is terribly wrong with the product than make us all appear liars! (URL: https://discussions.apple.com/thread/7889589) (emphasis added).

- JHi47644 (Series 2), posted March 13, 2018: My wife had the same problem on the series 2 watch. **Sat in the car, went to check her watch and noticed it had cracked around all 4 edges and just hanging off from the top.** Logged a support call and sent them photos and the watch to be told I need to pay for it to be repaired because they found another crack coming from one of the cracks on the edge down to the case.....I've tried 3 time for them to accept that we have not dropped it and I can't see a crack in the original photos but they won't accept it. My point to them was that given its my word against theirs, if it had been knocked on the inside edge of the watch without her knowing (some how) why would it radiate all the way around the screen and what type of force would that take, its supposed to be a sports watch! Looks like I'm left paying to get the watch replaced but I won't go near Apple again, after being a customer for many, many years. They have no complaints procedure and no way to escalate. (URL: https://discussions.apple.com/thread/8223086?page=41) (emphasis added).

94.     Upon information and belief, Apple monitors the Reddit Apple Watch Community page. The quotation below is representative of consumers' experience with the Series 2 Watch on that page:

- Lilianet under the r/AppleWatch Community page on Reddit: I got a Series 2 Apple Watch back in November 2016 as a gift….Despite my bad habit of dropping and breaking phones, my watch has been safely on my wrist for the past 9ish months with no incidents. However, this past Friday I was doing yardwork at my friend's place and I went to rub my back, which was sweating from digging holes in the ground. It sort of stung, which was weird, and I asked my friend if he could see anything – he said no although it looked like I had a scratch on my back. It felt really damp a minute later, so I felt it to figure out why, and **when I pulled my hand back it was covered in blood. Obviously unexpected bleeding freaked me out, and trying to figure out where it was coming from, I looked at my hands, and notice that the entire face of my watch had separated in a jagged line from the rest of the casing, and what had at first appeared to be a scratch was actually a cut in my back caused by said edge slicing me open when I rubbed my back a minute earlier**…(URL: https://www.reddit.com/r/AppleWatch/comments/6twv0i/series_2_apple_watch_g ets_swollen_battery_causes/) (emphasis added)

95.     On or about April 13, 2018, Apple acknowledged a swelling battery in certain Series 2

1  Watches via an underlined internal document distributed to Apple Stores and Apple Authorized Service Providers.[33]

2  In response, Apple extended its Limited Warranty for qualifying Series 2 Watches from one year to three

3  years.[34]   Additional internal documents distributed to Apple Stores and Apple Authorized Service

4  Providers in August 2018 stated that: "Apple has determined that under certain conditions, some Apple

5  Watch Series 2 devices may not power on or they may experience an expanded battery."[35]   Other sources

6  available to Apple, and, upon information and belief, that Apple accessed and viewed, stated

7  unequivocally: "A swollen battery can prevent an Apple Watch from powering on or cause the display to

8  burst open."[36]

9      96.    Apple began selling its Third Generation (Series 3) Watch in September 2017. Shortly

10  thereafter, consumers who purchased the Series 3 Watch reported that the screens on their Watches were

11  cracking, shattering, or detaching from the body of their Watches, and lodged complaints about the Series

12  3 Watches with Apple in the ways described above.

13      97.    Apple monitors the Apple Watch "Support Communities" forum.   The following

14  quotations are representative of consumers' experiences with the Series 3 Watch:

15
16  • Navneet7935 (Series 3), posted November 27, 2017: **titled "apple watch screen
     pop up" - my watch is in warrenty is this a battery swallen problem and its
17     been only 2 weeks since i have purchased this watch** (URL:
       https://discussions.apple.com/thread/8178472)

18  • Traceyhincks (Series 3), posted January 3, 2018: My series 3 watch screen cracked
19     right around the edge and **the face popped out…I was sitting at my desk,** not
       moving didn't bang it on anything…I'd had the watch for one week…My husband
20     contacted apple, they said send it to the repairer, we are not close to an Apple
       Store…So end result from Apple is that it was my fault and it's going to cost $385
21     to fix it…After spending $600 to buy it, and me wearing it for a week, it's turning
       into a very expensive watch…They have flatly refused to warrant it…. (URL:
22     https://discussions.apple.com/thread/8223086?page=41) (emphasis added).

23  • Njsurfmaster (Series 3), posted March 15, 2018: I have the same problem with my
24     Series 3 watch. I purchased it in September 2017. **The screen around the entire
       edge cracked and separated. It happened while sitting in a chair watching TV.**

25

26  _____

27  [33] https://www.macrumors.com/2018/04/14/apple-watch-s2-swollen-battery-service-policy/
     [34] *Id.*
28  [35] *Id.*
     [36] *Id.*

I didn't bang it in any way. No visible scratches or any kind of damage on the watch…I took it to an Apple Store and they said it looked like a swollen battery and wrote it up that way. Apple denied it and is charging me $289+tax to repair…There is no doubt in my mind there is a problem with these watches. (URL: https://discussions.apple.com/thread/8223086?page=41 ) (emphasis added).

- THHV (Series 3), posted March 28, 2018: **My watch was fine the night before but after charging it for the night, when I put it back on there was a continuous hairline crack that wrapped around 2 sides of the screen on the bevel.** I'm positive that it happened when charing/ off the wrist as its very noticeable when swiping on the screen. My finger picks up the scratch when sliding my finger over it. I noticed it the second I put the watch on. Apple Store advised that it was covered under warranty as it was likely related to a swollen battery or other factory defect. They sent it for repair under warranty but the repair facility wants over $250 to fix the screen because it is cracked & considered physical damage... THIS IS WHY I SENT IT IN. Obviously it's cracked, the Apple Store saw this, verified it and advised it was covered under warranty. There are zero signs of wear and tear. No case damage, scratched, etc. (URL: https://discussions.apple.com/thread/8336776?page=2) (emphasis added).

- Megan781 (Series 3), posted on May 16, 2018: **My son's watch face popped off suddenly.  It looks like the battery swelled?!  The jagged edge cut his leg!** When I searched it there seemed to be a similar issue with Series 2.. Has anyone had a similar experience?! (URL: https://discussions.apple.com/thread/8393594) (emphasis added)

- MacBMcT (Series 3), posted on June 19, 2018: **Has anyone else received a laceration requiring medical attention due to their Apple Watch face spontaneously separating from the watch body?** The watch in question is less than 6 months old, Series 3 (with GPS + Cellular), and not previously dropped, hit or otherwise damaged. (URL: https://discussions.apple.com/thread/8432476) (emphasis added).

- WI-Pat (Series 3), posted July 26, 2018: I received my Apple Watch this past Christmas as a gift (2017) ( MQL42LL/A APPLE WATCH N+ S3 42 SG A ). This past week while enjoying an evening with friends, I placed my right hand over my watch.  I felt something sharp along the glass edge, on the side near the buttons. After touching it a bit, the whole glass face just lifted up, and sharp edges all the way around the face.  When I took the watch off, **I cut my hand in two places....edges are REALLY sharp**!  I know for a fact I have never bumped my Apple watch against anything. So I read some blog accounts of other people having this issue.  Has Apple honored their watch warranty for anyone?  I read something about a swollen battery can cause the face to crack, maybe that's what happened to me? I live over a 100 miles from the nearest Apple Store, so I don't want the travel there for them to tell me to just "go buy a new watch!".  Can anyone help me? (URL: https://discussions.apple.com/thread/8477746) (emphasis added)

- Danunda (Series 3), posted July 31, 2018: I'm gauging whether my recent run in with Apple is an anomaly. **I wore my apple watch on my left wrist. Recently woke up from a deep sleep to find my right index finger had been sliced open during the night - pretty gory, I'll save you the details. Anyway, it turns out**

the watch glass had a hair line fracture all the way around the face. **Hardly noticeable to the eye, but sharp enough to slice through skin while I slept. Bizarre and gruesome.** Fast forward to taking it in to the local apple store - they told me it would cost $285 to fix the glass.  1. This has to be a design fault. Watch glass shouldn't break that easily - retracing my steps, I have no idea when/how this could have happened. It can't have been a particularly traumatizing bump. 2. **This was clearly dangerous. Glass that can cut that deeply and while sleeping!?** Whaaa..3. The phone NEW was $420, so I'm finding it impossible to justify $285. I'm certain this has to be a flaw in the glass itself, but the "factory" will determine whether the limited warranty covers it. Let's see. Anyone else dealt with this? What options do we have? I loved my watch, but I can't justify the cost. (URL: https://discussions.apple.com/thread/8483351) (emphasis added)

- Tx2991guy (Series 3), posted December 9, 2018: Caution my watch is 11 months old, **the screen popped out as I was changing my daughter for bedtime and sliced my right thumb like butter!**  I had an older generation that had this issue after 3 years but was told it was fixed in this newest model!! Move posted on spoke forum, tried to call zero response. Gonna send this to my local news station (URL: https://discussions.apple.com/thread/250012456) (emphasis added)

- Latetech (Series 3), posted February 12, 2019: was resting whilst wearing my new Apple Watch 3.  **Looked down and noticed some blood on my wrist because the screen had popped off and scratched my arm.**   Arrange through chat with apple to return for repairs.   They've told me not covered and will charged £187+vat to fix.   The photo they sent of the damaged watch seemingly in worse condition than when I sent it.   I've challenged apple on this and am waiting for a reply.   Fortunately I'd taken some pics of the watch before I sent it back.   Has anyone else experienced this? (URL: https://discussions.apple.com/thread/250160260) (emphasis added)

- Brookemir (Series 3), posted on August 4, 2019: My Apple Watch series 3 screen randomly popped off tonight while I was prepping dinner. **I was holding my 4 month old baby and my boyfriend reached to hug us and then felt a sharp sting on his hand. We couldn't figure out what had cut him but he was bleeding quite a bit. Turns out, the screen had popped off my watch and was dangling and the glass cut him. I'm just glad it cut him and not my baby since she loves to grab things... but that's super dangerous!** I didn't even hit it on anything. I was just holding the baby and waiting for the oven to heat up. What should I do now? I've been reading up and apparently it's a major issue with series 2 and 3 watches, and many customers have said Apple refuses to even replace the watches for free. Am I owed compensation if they refuse repairs? (URL: https://discussions.apple.com/thread/250534145) (emphasis added)

98.     Apple began selling its Fourth Generation (Series 4) Watch in September 2018. Shortly thereafter, consumers who purchased the Series 4 Watch reported that the screens on their Watches were cracking, shattering, or detaching from the body of their Watches, and lodged complaints about the Series

4 Watches with Apple in the manners described above.

99. Apple monitors the Apple Watch "Support Communities" forum. The following quotations are representative of consumers' experiences with the Series 4 Watch:

- Kasia.parker (Series 4), posted February 2, 2019: Just happened to me as well. New Apple Watch 4. [In response to another post about the screen shattering]. (https://discussions.apple.com/thread/7889589?answerId=250248866022#250248866022)

- Wabenny (Series 4), posted February 16, 2019: **After having my Iwatch for 6 days, yes 6 days the screen shattered.** Apple has replied that it's NOT a factory defect and not under warranty. The watch was put on a granite countertop along with my iPhone. After showering I put the watch on and the screen was shattered! How can a watch face shatter in this manner without being defective to begin with? Now apple wants to change me $299.00 to replace their defective product. (URL: https://discussions.apple.com/thread/250169406) (emphasis added).

- Kmacd2366 (Series 4), posted Aug 10, 2019: iWatch series 4 screen combusted. **I woke up this morning and found my iWatch series 4 on the charger where I had put it the night before. The screen was combusted.** Has anyone had any issues with their screens doing this? The watch won't turn on. I'm assuming it's a battery issue. **I'm grateful I wasn't wearing it.** Trying to seek Apple support (URL: https://discussions.apple.com/thread/250547878) (emphasis added).

- Richard Stott2 (Series 4), posted Nov 11, 2019: **The screen on my Wife's watch has detached. She is 68 and didn't do anything that would have caused this.** I read a lot of other posts but not Series 4. The Apple rep mentioned battery swelling? Have other people got issues with this as I have to wait for a tech evaluation but I don't see how that diagnoses faulty glue? Screen repair is expensive and I'm concerned that my own watch is also at risk. (URL: https://discussions.apple.com/thread/250842802) (emphasis added).

- Suvit Sharma (Series 4), posted June 30, 2020: **My Apple Watch series 4 screen popped out on its own. After keeping Apple Watch like my own baby It's really frustrating seeing screen popping out.** Watch is out of warranty & I really don't understand how Apple product can be so fragile. I need support from Apple official in this regard. (https://discussions.apple.com/thread/251533004) (emphasis added).

- Brian7600 (Series 4), posted November 3, 2021: **I have an Apple Watch series 4 stainless, and my screen suddenly detached several months ago**. I went to the Genius Bar and apple claimed there has been no reports of series 4 having expanding batteries, only series 1, so they wanted more than a year old series 5 would cost to fix it. Fast forward a couple months: I had taken it to a service place which replaced all of the gaskets and glued the watch face back on. In about a month the face popped back off. There must be a defect pushing the face off (I would guess the battery). Has anybody else had this problem with a Series 4 watch? If so, have

you found any resolution with Apple? (emphasis added). (https://discussions.apple.com/thread/253326839)

100.    On or about April 1, 2019, Apple received notice of and later defended a proposed class action complaint warning that Series 1, 2, and 3 Watches posed "a significant safety hazard to consumers, as it has caused a number of putative Class members to suffer cuts and burns in connection with the screens cracking, shattering and/or detaching from the body of the Watches."[37]

101.    Apple began selling its Fifth Generation (Series 5) Watch in September 2019. Shortly thereafter, consumers who purchased the Series 5 Watch reported that the screens on their Watches were cracking, shattering, or detaching from the body of their Watches, and lodged complaints about the Series 5 Watches with Apple in the manners described above.

102.    Apple monitors the Apple Watch "Support Communities" forum.   The following quotations are representative of consumers' experiences with the Series 5 Watch:

- ColinYu (Series 5), posted on Dec 10, 2019: Possible Manufacturer Defect-Apple Watch Series 5. **Hello, is it common for an Apple Watch screen to develop deep gouges and cracks without any impact. I haven't impacted the screen of my Apple Watch in anyway but there are already several cracks** and scratches. (URL: https://discussions.apple.com/thread/250934270) (emphasis added).

- Cur_Hel (Series 5), posted on Jun 4, 2020 **I have a series 5 and it has cracked in the corner and along the bottom and side of the screen.** I haven't dropped it or banged it. Anyone know where I go for help? (URL: https://discussions.apple.com/thread/251429280) (emphasis added).

- Einstein2021 (Series 5), posted on Sep 3, 2020: **My Series 5 Apple Watch screen has cracked and spread with little or no contact?** Can anyone explain why this has happened? (URL: https://discussions.apple.com/thread/251758246) (emphasis added).

- Ourkidzrock (Series 5), posted on August 5, 2022: Watch screen separating – Is this a common problem on the watch 5s?  $350 to fix it.  gulp thx (URL: https://discussions.apple.com/thread/254091703) (emphasis added).

103.    Apple began selling its Sixth Generation (Series 6 and SE) Watch in September 2020. Shortly thereafter, consumers who purchased the Series 6 and SE Watch reported that the screens on their Watches were cracking, shattering, or detaching from the body of their Watches, and lodged complaints

---

[37] *Priano-Keyser v. Apple, Inc.*, 2:19-cv-09162-DM-MAH (D. N.J. 2019) (Doc. 1, ¶ 9).

about the Series 6 and SE Watches with Apple in the manners described above.

104.     Apple monitors the Apple Watch "Support Communities" forum.   The following quotations are representative of consumers' experiences with the Sixth Generation Watch:

- Sam-jayne1 (Series 6), posted on Dec 16, 2020: **My 2 month old series 6 watch has got 2 massive cracks across it and coming away from the edge and I have NOT dropped or bashed it!** I know there was a problem with series 2 and three with this spontaneous cracking has anyone else experienced it with a new series 6? (URL: https://discussions.apple.com/thread/252184825) (emphasis added).

- Cyiwatch (Series 6), posted on August 31, 2021: This is a new series 6 watch and it's just few months old… **But I don't know why screen is popped up**?!  (URL: https://discussions.apple.com/thread/253100938) (emphasis added).

- chonsy42 (Series 6), posted on November 9, 2021:  I bought my watch last year and had no problem whatsoever **today my screen just popped off** (URL: https://discussions.apple.com/thread/253100938) (emphasis added).

- Cattyindigo (Series SE), posted on November 24, 2021: **Today I noticed the screen and it's casing has started lifting away from my watch exposing the insides.   This is a 13 month old watch, I'm really upset it's literally falling apart, one month out of warranty.** It's a well cared for watch, that's spent most of its time worn at home since bought due to lockdown. Hasn't been out in the rain or knocked around. Will this be covered under Australian consumer law? I really am distressed at the idea of an expensive repair due to no fault of my own after only 13 months. Surely a product like this should last longer than 13 months? (URL: https://discussions.apple.com/thread/253397708) (emphasis added).

- DamePerk (Series SE), posted on September 20, 2022: I got a brand new Apple Watch last Christmas 2021. (SE) **I notice that watch face was becoming separated from the base of the watch. I did not do anything to cause it or no impact or physical damage.** It just randomly began detaching from the watch. I took it in to the Apple Store and they said it would cost almost the price of a new watch to fix it. My warranty was up less than two months ago. This can't be fair right.   If   I   didn't   do   anything   to   cause   it?   (URL: https://discussions.apple.com/thread/254215473) (emphasis added).

105.     ███████████████████   of consumers have made consumer complaints and/or warranty claims over the years associated with the Defect and Apple monitors, tracks, reviews, evaluates, and responds to those claims.

106.     Class members regularly sent Watches manifesting the Defect to Apple's Service Center and/or its retail stores and/or an Apple Authorized Service Provider (such as Best Buy) at least as early as

April 2016, the data associated with all of which Apple also monitors, tracks, reviews, evaluates, and analyzes.

107.    Based on the frequency and regularity of the manifestation of the Defect, as evidenced by, among other things, the regular and pervasive complaints of Class members and their requests for repair through Apple's Service Center and retail stores and/or Apple Authorized Service Providers (such as Best Buy), the pre-release testing conducted by Apple would have revealed the Defect.

108.    Given the admissions in Apple's patent applications and Apple's battery testing program, Apple was keenly aware of the Defect prior to bringing the First Generation to market on or after April 2015.  In addition to the patent applications and battery testing program, as a result of the customer complaints about the Defect and Apple's extension of its Limited Warranty for its First Generation Watches, Apple was keenly aware of the Defect prior to bringing Series 1 through Series 6 and Series SE Watches to market on and after September 2016.  Further, because Apple knew its Watch screens were made either of Ion-X glass (aluminum models) or sapphire crystal glass (stainless steel and titanium models), that each have a razor-sharp edge on all four sides, and that after a failure the exposed screen remains secured to the back of the Watch (and therefore within close proximity to a consumer's body) by means of the tiny flexible wire, Apple had notice that the Defect was an unreasonable safety hazard and could cause physical injury to consumers before it brought any of the Watches to market.

109.    As the above posts demonstrate, owners of defective Apple Watches are faced with unenviable and expensive options: They can pay anywhere between $159 and $2,800 (depending on the Series and model) to repair an already expensive Watch; they can purchase AppleCare+ for at least $49 (and then pay an additional $69-$79 service fee for each incident);[38] they can purchase a new Apple Watch; or they can simply not use their Watch. Under any option, consumers must either pay significantly more for the continued use of an already expensive Watch or be deprived of its use entirely. Moreover, if the consumer either repairs his or her Watch or purchases a new Watch, he or she would still run the risk of

---

[38] https://www.apple.com/shop/product/S5398LL/A/applecare-for-apple-watch-and-apple-watch-nike and https://www.apple.com/support/products/watch/ and https://support.apple.com/watch/repair/service/pricing (previous versions of this website included the $2,800 pricing for repairs of First Generation watches).

future harm from operational failure and the unreasonable safety hazard as the new or repaired Watch would continue to contain the same Defect described herein.

110.    Despite knowing that the Watch was defective and having ample opportunity to fix or at the very least accurately describe to consumers the Defect in the Apple Watch, Apple uniformly failed to disclose to any Plaintiff or Class member before purchase that the Watch is defective.

111.    As set forth in this Complaint, Apple had notice of and/or knew of the Defect and that the Defect posed an unreasonable safety hazard to consumers before each Plaintiff purchased his or her Watch.

112.    Each Plaintiff and Class member was unaware of the Watch's defective nature before purchasing it.  Had Apple disclosed the Defect, each Plaintiff and Class member would not have purchased a Watch, would not have paid the full retail price for it, or would have returned it during the buyer remorse period.

### The Limited Warranty For Apple Watches

113.    Apple provides a Limited Warranty for all purchasers of an Apple Watch, which covers the "product against manufacturing defects beginning on the original purchase date." The Limited Warranty is one year for most models but is two years for the Hermès and Edition models.

114.    Plaintiffs are informed and believe that, apart from distinctions in temporal duration, the terms of Apple's Limited Warranty are materially the same for all Apple Watch models and, in relevant part, provide:

WHAT IS COVERED BY THIS WARRANTY?

Apple Inc. of One Apple Park Way, Cupertino, California, U.S.A. 95014 ("Apple") warrants the Apple-branded hardware product and Apple-branded accessories contained in the original packaging ("Apple Product") against defects in materials and workmanship when used normally in accordance with Apple's published guidelines for a period of ONE (1) YEAR from the date of original retail purchase by the end-user purchaser ("Warranty Period"). Apple's published guidelines include but are not limited to information contained in technical specifications, user manuals and service communications.

WHAT IS NOT COVERED BY THIS WARRANTY?

This Warranty does not apply to any non-Apple branded hardware products or any software, even if packaged or sold with Apple hardware. This does not affect your rights under applicable consumer law. Manufacturers,

suppliers, or publishers, other than Apple, may provide their own warranties to you – please contact them for further information. Software distributed by Apple with or without the Apple brand (including, but not limited to system software) is not covered by this Warranty. Please refer to the licensing agreement accompanying the software for details of your rights with respect to its use. Apple does not warrant that the operation of the Apple Product will be uninterrupted or error-free. Apple is not responsible for damage arising from failure to follow instructions relating to the Apple Product's use.

**This Warranty does not apply: (a) to consumable parts, such as batteries or protective coatings that are designed to diminish over time, unless failure has occurred due to a defect in materials or workmanship; (b) to cosmetic damage, including but not limited to scratches, dents and broken plastic on ports unless failure has occurred due to a defect in materials or workmanship; (c) to damage caused by use with a third party component or product that does not meet the Apple Product's specifications (Apple Product specifications are available at www.apple.com under the technical specifications for each product and also available in stores); (d) to damage caused by accident, abuse, misuse, fire, earthquake or other external cause; (e) to damage caused by operating the Apple Product outside Apple's published guidelines; (f) to damage caused by service (including upgrades and expansions) performed by anyone who is not a representative of Apple or an Apple Authorized Service Provider ("AASP"); (g) to an Apple Product that has been modified to alter functionality or capability without the written permission of Apple; (h) to defects caused by normal wear and tear or otherwise due to the normal aging of the Apple Product, (i) if any serial number has been removed or defaced from the Apple Product, or (j) if Apple receives information from relevant public authorities that the product has been stolen or if you are unable to deactivate passcode-enabled or other security measures designed to prevent unauthorized access to the Apple Product, and you cannot prove in any way that you are the authorized user of the product (e.g. by presenting proof of purchase)** (emphasis in original).[39]

115.   For Hermes and Edition models, Apple's Limited Warranty is substantially the same in all relevant parts except that the duration is extended to two years.[40]

116.   Apple's website indicates that an Apple Watch is considered "out of warranty" when it is: (1) "beyond the eligible warranty term"; (2) "has an issue that's not covered under warranty or consumer law, such as accidental damage"; or (3) "service isn't covered by an AppleCare plan.

---

[39] https://www.apple.com/legal/warranty/products/warranty-us.html (emphasis in original)
[40] https://www.apple.com/legal/warranty/products/warranty-edition-us.html

117.     If an Apple Watch screen "breaks accidentally, [consumers] can replace [the] Apple Watch for an out-of-warranty fee."   The out of warranty Apple Watch repair service starts at $159 and can cost as much as $2,800 depending on the Series and model Watch that needs repair.[41]

118.     The Limited Warranty gives Apple sole discretion to repair, replace, or refund the purchase price of a defective Watch.  Apple has refused to carry out its obligations under this warranty.  When a consumer submits a warranty claim relating to the Defect, Apple often denies coverage, blames the consumer for "damaging" the Watch with no valid justification, and/or fails to provide an effective repair (in that the repaired Watch still contains the Defect which can cause the screen to detach, shatter, or crack again).

119.     Apple's refusal to provide an effective repair shifts the cost and burden of the Defect to consumers.

120.     Where Apple has agreed to repair or replace defective Watches, including through the Screen Replacement Program (described below), the repairs and replacements do not fix the Defect.  As a result, consumers have experienced repeated Watch failures and remain exposed to material and unreasonable safety hazards.

**Screen Replacement Program**

121.     On August 30, 2019, Apple announced a Screen Replacement Program[42] only for Aluminum Models of Apple Watch Series 2 and Series 3 ("Screen Replacement Program"), explaining: "Apple has determined that, under very rare circumstances, a crack may form along the rounded edge of the screen in aluminum models of an Apple Watch Series 2 or Series 3. The crack may begin on one side and then may continue around the screen as shown in the images below."[43]

122.     In an effort to conceal the true cause, Apple never publicly disclosed that the Screen Replacement Program was a direct result of the manifestation of the Defect and the resulting safety hazard that it caused.

---

[41] https://support.apple.com/watch/repair/service/pricing
[42] Apple also referred to this program as the "Repair Extension Program."
[43] https://support.apple.com/screen-replacement-program-apple-watch-series-2-3

123. As part of the Screen Replacement Program, Apple agreed that it or an Authorized Service Provider "will replace the screen on eligible Apple Watch units that exhibit this type of crack, free of charge."

124. Apple limited the Screen Replacement Program to the following models[44]:

| Series and Model | Case Sizes | Color and Material | Sold Dates |
|---|---|---|---|
| Apple Watch Series 2 | 38mm and 42mm | Space gray, gold, rose gold, and silver aluminum | September 2016 - September 2017 |
| Apple Watch Nike+ Series 2 | 38mm and 42mm | Space gray and silver aluminum | October 2016 - October 2017 |
| Apple Watch Series 3 (GPS) Apple Watch Series 3 (GPS+ Cellular) | 38mm and 42mm | Space gray, gold, and silver aluminum | September 2017 - September 2019 |
| Apple Watch Nike+ Series 3 (GPS) Apple Watch Nike+ Series 3 (GPS+ Cellular) | 38mm and 42mm | Space gray and silver aluminum | October 2017 - September 2019 |

125. The Screen Replacement Program covers eligible aluminum models of Apple Watch Series 2 and Series 3 for three years after the first retail sale of the unit or one year from the start date of the Screen Replacement Program, whichever is longer.[45] Apple also stated that the Screen Replacement Program does not extend the standard warranty coverage on any Watch.[46]

126. Apple does not claim to have implemented any design changes in the replacement Watches. The repairs offered under the Screen Replacement Program are limited to "replace[ment of] the screen on

---

[44] https://support.apple.com/screen-replacement-program-apple-watch-series-2-3
[45] Id.
[46] Id.

eligible Apple Watch units that exhibit" a particular type of crack.[47]   Replacements provided under the Screen Replacement Program have consistently failed again.

127.   Through its Screen Replacement Program, Apple forces many consumers to spend time and effort undergoing Watch repairs that Apple knows will not fix the underlying Defect.

128.   When Apple agrees to replace a screen on an eligible Apple Watch, the Watch remains defective and the new screen is susceptible to the same Defect as the old screen.  The Screen Replacement Program does nothing to address the root cause of the failure.

129.   Despite public denials, Apple knows that the Watches are defective and that its replacement of screens on those defective Watches will not resolve the underlying problem.

130.   Apple's Screen Replacement Program does not offer any relief to owners of any model Watch except those described above.

131.   Apple's Screen Replacement Program does not assure that Plaintiffs and other consumers will be fully compensated for their out-of-pocket expenses.  Apple does not offer refunds to consumers who have already paid for repairs or replacements.  Additionally, after substantially limiting the models of Watch that are eligible for the Screen Replacement Program in the first place, Apple also requires that those Watches have a specific type of crack in order for it to be eligible for the Screen Replacement Program.[48]

132.   As a result of Apple's failure to provide an effective remedy, consumers (including certain Plaintiffs and Class members) have been told to purchase new Watches or pay Apple's expensive service fees for repairs in order to have a functioning watch.

133.   In sum, the Screen Replacement Program fails to cure the underlying defect in the Watches.  Each iteration of Apple's Watch contains a design defect that renders the Watch prone to fail.  The Screen Replacement Program does nothing to address these underlying design problems.  Watches repaired through the Screen Replacement Program continue to fail at a high rate.

---

[47] *Id.*
[48] *Id.*

**Plaintiffs' Delayed Discovery**

134.     The Defect is latent.  Plaintiffs were not at fault for failing to discover the Defect and had no actual or presumptive knowledge of facts sufficient to put them on inquiry that it may exist.  Apple had the opportunity to disclose the Defect and its resulting safety hazard in all of the following, including, but not limited to: its advertising, press releases, the Watch packaging, the online purchase portal, the User Guide, or the initial setup process.

135.     The Defect alleged in this Complaint involves the structural components and design of the Apple Watch.  Therefore, discovery of the Defect cannot be made without disassembly and testing, which require equipment that is not accessible to consumers.  Indeed, the proposed Inspection Protocol currently being negotiated by the parties to evaluate the existence of the Defect in the named Plaintiffs' watches includes computed tomography scanners, optical microscopy (OM), Fourier transform infrared (FTIR) spectroscopy, and scanning electron microscopy with energy dispersive X-ray spectroscopy (SEM-EDS), among other things.

136.     The Defect exists within the Apple Watch enclosure (See ¶ 2).  Thus, it can only be seen and discovered by opening, examining, and testing the internal components of the Watch.

137.     However, in each version of Apple's User Guide, which is provided to consumers with the sale of the Watch, Apple specifically instructs consumers not to open the Apple Watch: "Don't open Apple Watch and don't attempt to repair Apple Watch yourself. Disassembling Apple Watch may damage it, result in loss of water resistance, and may cause injury to you.  If Apple Watch is damaged or malfunctions, contact Apple or an Apple Authorized Service Provider."

138.     All Apple's User Guides also instruct consumers not to replace the lithium-ion battery on their own: "Don't attempt to replace the Apple Watch battery yourself—you may damage the battery, which could cause overheating and injury. The lithium-ion battery in Apple Watch should be serviced only by Apple or an authorized service provider."

139.     Consistent with Apple's instructions, none of the named Plaintiffs ever opened the enclosure of their Watch.  As a result, none of the named Plaintiffs were at fault for failing to discover the Defect; none of the named Plaintiffs had any actual or presumptive knowledge of facts sufficient to put them on inquiry; and no reasonable diligence could have been exercised to reveal its existence.

140.    Additionally, it was impossible for any of the named Plaintiffs to exercise reasonable diligence to discover the Defect because Apple had exclusive control over all screen and battery testing as well as swelling and failure analyses conducted independently and/or in relation to the space constraints of the Watches' internal structural components that would have revealed it.  It is entirely unreasonable to expect the average consumer to hire an engineer or rent a laboratory, but one or the other is required to discover the Defect.  In their absence, Plaintiffs and potential class members could not exercise any reasonable diligence to determine the true cause of the sudden and unexpected screen detachment, cracking, or shattering – either before or after it occurred.

### Apple's Fraudulent Concealment

141.    As described above, Apple persistently denied any widespread issue with its First Generation watches.  In April 2017, Apple extended its Limited Warranty for qualifying First Generation watches from one year to three years.  Apple never publicly disclosed the true reason for the extended warranty was the existence of the Defect and the resulting safety hazard that it caused.

142.    As described above, on or about April 13, 2018, Apple acknowledged a swelling battery in certain Series 2 Watches via an _internal_ document distributed to Apple Stores and Apple Authorized Service Providers.[49]  In response, Apple extended its Limited Warranty for qualifying Series 2 Watches from one year to three years.[50]  Additional _internal_ documents distributed to Apple Stores and Apple Authorized Service Providers in August 2018 stated that: "Apple has determined that under certain conditions, some Apple Watch Series 2 devices may not power on or they may experience an expanded battery."[51]  Apple never publicly disclosed the true reason for the extended warranty was the existence of the Defect and the resulting safety hazard that it caused.

143.    As described above, on August 30, 2019, Apple announced a Screen Replacement Program only for Aluminum Models of Apple Watch Series 2 and Series 3 ("Screen Replacement Program"), explaining: "Apple has determined that, under very rare circumstances, a crack may form along the

---

[49] https://www.macrumors.com/2018/04/14/apple-watch-s2-swollen-battery-service-policy/
[50] _Id._
[51] _Id._

rounded edge of the screen in aluminum models of an Apple Watch Series 2 or Series 3. The crack may begin on one side and then may continue around the screen as shown in the images below."[52]  In an effort to conceal the true cause, Apple never publicly disclosed that the Screen Replacement Program was a direct result of the manifestation of the Defect and the resulting safety hazard that it caused.

144.    Even after the Defect manifested (i.e., the Watch screens detach, crack, or shatter), Apple worked to actively and systematically conceal the true cause, thereby preventing any of the named Plaintiffs or Class Members from discovering that the Defect was responsible for the damage to their Watch as described below.

145.    When consumers report their detached, cracked, or shattered screens to Apple, its response in most cases is the same – it implicitly or expressly (and improperly) blames the consumer for the Defect and refuses to cover repairs under the Limited Warranty or otherwise.  Apple then charges consumers an expensive "out of warranty service fee" to replace the Watch face, which often approaches the cost of a new Apple Watch.

146.    Plaintiff Alberto Cornea directly experienced this active concealment by Apple:

(a)    On July 22, 2018, Plaintiff Alberto Cornea purchased a new Series 3 Stainless Steel 42 mm (GPS + Cellular) Apple Watch (Serial No. FH7WL0PHJ6GH) from an Apple Store in New York for approximately $399.00 plus tax.

(b)    In early March 2020, the screen on Plaintiff Alberto Cornea's watch suddenly and unexpectedly detached from the watch's body.

(c)    In March 2020, Plaintiff Cornea contacted Apple.  ████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████ Apple replaced Mr. Cornea's original watch with another Series 3 Stainless Steel 42mm (GPS + Cellular) Apple Watch (Serial No. GQ2ZV06MJ6GH) with the same Defect. ████████████████
████████████████████████████████████████████████████████

---

[52] https://support.apple.com/screen-replacement-program-apple-watch-series-2-3

1 ███████████████████████████████

2     (d)    On or about August 2021, the screen on Mr. Cornea's replacement Series 3 Stainless Steel

3         42mm (GPS + Cellular) Apple Watch (Serial No. GQ2ZV06MJ6GH) suddenly and

4         unexpectedly detached from the watch's body.

5     (e)    Mr. Cornea again contacted Apple. ████████████████████████

6 ████████████████████████████████████

7 ████████████████████████████████████

8 ████████████████████████████████████

9 ████████████████████████████████████

10 ████████████████████████████████████

11 ████████████████████████████████████

12 ████████████████████████████████████

13 █████████████████████████████

14     (f)    Apple instead quoted Plaintiff Cornea a fee to replace his Apple Watch that he rejected.

15         Plaintiff has been unable to use his original watch since that time.

16     (g)    The service fee to repair Plaintiff Cornea's replacement watch is $329, nearly the cost of

17         his original watch.

18     147.    After her screen detached approximately one year after purchase, Plaintiff Alexis Keiser

19 also contacted Apple.  The representative for Apple unjustifiably told Plaintiff Keiser that the screen

20 detachment was her fault and informed her that it was not covered by any warranty.  Apple did not disclose

21 the Defect or warn her about any safety hazard associated with it during this encounter.

22     148.    Plaintiffs Roush and Jones also reported their damaged screens to Apple.  Apple did not

23 disclose the Defect or warn them about any safety hazard associated with it during these encounters.

24     149.    Given the experiences of Plaintiffs Cornea, Keiser, Roush, and Jones, it would have been

25 futile for any of the other named Plaintiffs or Class Members to report the damage to their watches to

26 Apple.  Apple never disclosed the Defect or warned any consumers about the safety hazard associated

27 with it when they called to report a problem with their Watch.  Instead, Apple told consumers that the

28 damage was the fault of the consumer or, if Apple decided to replace the watch, that the replacement

Watch (which also contained the Defect) corrected the problem.

150. As part of its: (i) inconsistently applied Limited Warranty coverage (including the extensions thereof announced in April 2017 and April 2018 for certain Series and models of Watches); (ii) its Apple Care warranty program; (iii) the Screen Replacement Program; and (iv) its separate out-of-warranty service/repair programs, Apple consistently and repeatedly substituted new parts (i.e., screens and batteries) into a broken design (the Defect) or provided new watches also containing the Defect and, with respect to these equally defective replacements, misrepresented to consumers that those defective replacements corrected the problem. Many consumers paid repair costs for these services that were nearly the cost of their original watch, providing another profitable revenue stream for Apple and giving it a strong motive not to disclose the Defect to the public.

151. Through all of the above methods, Apple sought to suppress information about the Defect in the public domain and/or prevent consumers' ability to discover it.

152. Plaintiffs and Class Members' knowledge, education, and experience with the design and componentry of Apple Watches was negligible as compared to Apple.

153. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

154. For all the reasons stated in paragraphs 134-153 above, it was reasonable and/or justifiable for Plaintiffs and Class Members to rely on Apple's material omissions and affirmative acts of fraudulent concealment regarding the Defect and its resulting safety hazard.

**Apple's Failure to Remedy the Defect**

155. Apple has flatly refused to acknowledge the existence of the Defect in any Watch, including every watch purchased by Plaintiffs and Class members. Nevertheless, Apple's patent applications, consumers' complaints at Apple Stores, to Apple Support, to Authorized Service Providers,

online via Apple's "Support Communities" forum, other online forums, and media coverage, etc. leave no doubt that Apple is fully aware of the Defect and that it is a safety hazard that can cause personal injuries. Even still, Apple has provided no notice of the Defect or the unreasonable safety hazard to consumers.

156.    Apple has failed to disclose the material and unreasonable safety Defect to consumers, and, when presented with defective Watches, has insisted on numerous occasions that the damage caused by the Defect is the fault of consumers and has refused to repair or replace their Watches free of charge, as required under the Limited Warranty, implied warranties, and otherwise. These are material facts about which consumers would reasonably expect to receive notice. Had Plaintiffs and Class members known about the Defect and, further, that Apple would refuse to remedy the Defect under its Limited Warranty or otherwise, they would not have bought the Watches, or would have paid less to purchase them.

157.    Although aware of the Defect in the Watches, Apple has engaged in the following acts and omissions:

    a)  failing to disclose, prior to, at and after the time of purchase and attempts to repair, any and all known material facts or material defects associated with the Watches, including the associated repair costs, as well as the Defect in the Watches that existed during their normal and/or expected range of operation;

    b)  failing to disclose prior to, at, and after the time of purchase that the Watches were not in good working order, were defective, and were not fit for their intended purposes;

    c)  failing to disclose or actively concealing the fact that the Watches were and are defective, despite the fact that Apple learned of such defects through pre-release and/or other testing, repair requests, and consumer complaints soon after Apple began selling the Watches; and

    d)  failing to disclose that the Defect poses significant safety concerns and can cause personal injuries.

158.    When Plaintiffs and Class members have visited Apple Stores (or Authorized Service Providers) and/or contacted Apple Support to complain about the Defect, Apple has concealed the true nature of the Defect by failing to acknowledge the Defect, often failing to make free repairs under its Limited Warranty or otherwise, and often insisting that the detached, shattered or cracked screen is the result of Plaintiffs' and other Class members' actions.

159.    Apple has not recalled the Watches to repair the Defect and has not offered its customers a suitable repair or replacement free of charge. Indeed, Apple's conduct demonstrates that its internal policy is to deny the existence of a Defect and to instead claim the Defect is the result of "accidental damage" caused by the consumer, and thus not covered by its Limited Warranty.

160.    As a result of the issues caused by the Defect during foreseeable normal use, owners of the Watches are unable to use them as they were intended and expected to be used.

161.    A reasonable consumer expects and assumes that, when he or she purchases a Watch purportedly designed for active wear and use, the Watch screen will not spontaneously crack, detach, or shatter when it is being used within its normal and/or expected range of operation. A reasonable consumer also expects that the Watch will not be an unreasonable safety hazard.

162.    In addition to repair or replacement costs associated with remedying the Defect, Apple has a duty to disclose the defective nature of the Watches because Apple has exclusive knowledge of or access to all the material information and has known these facts were not reasonably discoverable by Plaintiff or the Class members, and because the Defect poses a material and unreasonable safety hazard.

### PLAINTIFF-SPECIFIC ALLEGATIONS

*Plaintiffs Chris Smith and Cheryl Smith*

163.    Plaintiffs Chris Smith and Cheryl Smith incorporate the above allegations by reference, including, but not limited to, those related to Apple's fraudulent and active concealment of the Defect and Plaintiffs' inability to use reasonable diligence to discover it.

164.    On or about December 15, 2017, Plaintiff Cheryl Smith purchased a new Series 3 GPS Aluminum 42mm Apple Watch (Serial No. FH7VQBEYJ5X4) from Best Buy in Daphne, Alabama for $359.00 plus tax and gifted it for personal use to her son, Chris Smith, on December 25, 2017.

165.    Apple had knowledge of the Defect, its propensity to cause injury, and its existence in Series 3 Watches before Plaintiff Cheryl Smith made her purchase on December 15, 2017.

166.    Prior to purchasing an Apple Watch, Plaintiff Cheryl Smith reviewed the packaging for the Series 3 Watch.

167.    Upon receipt of the Watch on December 25, 2017, with at least 4 days remaining in which the Watch could be returned, Plaintiff Chris Smith reviewed the packaging, User Guide, and other set up

and pairing information that came with the Watch.  Prior to his receipt of the Watch, Plaintiff Chris Smith saw advertisements and promotional materials in which Apple touted the health, fitness, and safety features of the Series 3 Watch.

168.    On September 8, 2020, Plaintiff Chris Smith was wearing his Watch on his left wrist while sitting in a golf cart.  As Plaintiff Chris Smith reached down from the steering wheel to place the golf cart in motion, a detached screen on his Apple Watch severely sliced the underside of Plaintiff's forearm, cutting a vein, and resulting in substantial personal injury.  The watch was no longer operational.

169.    At all times prior to Plaintiff Chris Smith's injury, the watch was maintained as recommended by Apple.  The watch was free from any cracks or other damage to the screen face or surrounding area.  It only had a few cosmetic scratches.  The watch screen had never detached prior to his injury on September 8, 2020.  It was in like-new condition with no prior damage when the Defect manifested itself.

170.    On or about October 14, 2020, Plaintiff Chris Smith submitted a claim to Apple via checkcoverage.apple.com pursuant to its Limited Warranty, but his claim was denied.  Thereafter, on or about December 14, 2020, Plaintiff Chris Smith brought his watch to the Daphne, Alabama Best Buy store, an Apple Authorized Service Provider, to inquire about coverage for the detached screen. He also submitted a claim to them pursuant to Apple's Screen Replacement Program prior to the coverage expiration, but his Screen Replacement Program claim was denied by Best Buy acting as Apple's authorized representative. The service fee to repair Plaintiff Chris Smith's watch is $159.00.[53]

171.    If Plaintiffs decide to have the repair done, they still run the risk of future harm (as do other members of the Class) because the "repaired" watch will have the same Defect described herein.

172.    Had Plaintiffs Chris Smith and Cheryl Smith been aware of the existence of the Defect, Cheryl Smith would not have purchased the watch or would have paid significantly less for it or Cheryl and/or Chris Smith would have returned it for a refund.  As a result of Apple's conduct, Plaintiff Chris Smith and Plaintiff Cheryl Smith have been injured.

173.    Plaintiff Chris Smith discovered the Defect in July 2021 only after his counsel in this

---

[53] https://support.apple.com/watch/repair/service/pricing

1   litigation conducted an independent investigation and communicated with him.  Prior to July 2021, no

2   reasonable diligence on the part of Plaintiff Chris Smith could have revealed the Defect for the reasons

3   outlined in paragraphs 134 to 154, incorporated herein.  For these reasons, Plaintiff Chris Smith

4   specifically pleads the delayed discovery rule (which tolls the statute of limitations with respect to his

5   UCL and fraudulent omission claims) as well as fraudulent and active concealment.

6       174.    Plaintiff Cheryl Smith discovered the Defect in July 2021 only after her counsel in this

7   litigation conducted an independent investigation and communicated with her.  Prior to July 2021, no

8   reasonable diligence on the part of Plaintiff Cheryl Smith could have revealed the Defect for the reasons

9   outlined in paragraphs 134 to 154, incorporated herein.  For these reasons, Plaintiff Cheryl Smith

10  specifically pleads the delayed discovery rule (which tolls the statute of limitations with respect to her

11  UCL, CLRA, and fraudulent omission claims) as well as fraudulent and active concealment.

*Plaintiff Karen Smithson*

13      175.    Plaintiff Karen Smithson incorporates the above allegations by reference, including, but

14  not limited to, those related to Apple's fraudulent and active concealment of the Defect and Plaintiff's

15  inability to use reasonable diligence to discover it.

16      176.    On or about December 18, 2016, Plaintiff Karen Smithson purchased for personal use a

17  Series 2 Stainless Steel 38mm Apple Watch (Serial No. FHLTP06ZHDXL) from the Apple Store in San

18  Francisco, California for $1,026.71 with tax.  She reviewed the product packaging, the User Guide, and

19  the information provided by Apple during the set-up and pairing process.

20      177.    Apple had knowledge of the Defect, its propensity to cause injury, and its existence in

21  Series 2 Watches before Plaintiff Karen Smithson made her purchase on December 18, 2016.

22      178.    Prior to purchasing an Apple Watch, Plaintiff Karen Smithson saw advertisements and

23  promotional materials in which Apple touted the health, fitness, and safety features of the Watch.  She

24  reviewed the promotional material on Apple's website, including Apple's statements about the health,

25  fitness, and safety features and capabilities of the Watch.  She also recalls seeing advertisements for the

26  Apple Watch.

27      179.    With several days remaining in which the Watch could be returned, Plaintiff Smithson

28  reviewed the packaging, User Guide, and other set up and pairing information that came with the Watch.

1      180.    Given the evidence of the latent Defect described throughout this Amended Complaint,

2  including the information known about the relatively short life span, low thermal stability, and limited

3  load capabilities of lithium cobalt oxide batteries and resulting swelling, the small size and depth of the

4  Watch, the lack of any thermal or other protection, and other information specifically outlined above,

5  Plaintiff Smithson's Watch imposes an unreasonable risk of malfunction and personal injury.  Plaintiffs

6  allege that the Apple Watch design is defective, and thus the defect exists at the point of sale, regardless

7  of whether the user ever experiences the symptoms of that defect.

8      181.    Had Plaintiff Karen Smithson been aware of the existence of the Defect, she (1) would not

9  have purchased a Watch, (2) would have paid substantially less for it, or (3) would have returned it for a

10  refund.  As a result of Apple's conduct, Plaintiff Karen Smithson has suffered injury.

11      182.    Plaintiff Karen Smithson discovered the Defect in September 2021 only after her counsel

12  in this litigation conducted an independent investigation and communicated with her.  Prior to September

13  2021, no reasonable diligence on the part of Plaintiff Smithson could have revealed the Defect for the

14  reasons outlined in paragraphs 134 to 154, incorporated herein.  For these reasons, Plaintiff Smithson

15  specifically pleads the delayed discovery rule (which tolls the statute of limitations with respect to her

16  UCL, CLRA, and fraudulent omission claims) as well as fraudulent and active concealment (which tolls

17  the statute of limitations with respect to her Song-Beverly Act claims).

18                                    *Plaintiff Jason Roush*

19      183.    Plaintiff Jason Roush incorporates the above allegations by reference, including, but not

20  limited to, those related to Apple's fraudulent and active concealment of the Defect and Plaintiffs' inability

21  to use reasonable diligence to discover it.

22      184.    On or about November 12, 2017, Plaintiff Jason Roush purchased for personal use a new

23  Series 2 Nike Aluminum 42mm Apple Watch (Serial No. FHLTK0HRHF1N) from Best Buy in Akron,

24  Ohio for approximately $350.00 plus tax.

25      185.    Apple had knowledge of the Defect, its propensity to cause personal injury, and its

26  existence in Series 2 Watches before Plaintiff Jason Roush made his purchase in November 2017.

27      186.    Prior to purchasing an Apple Watch, Plaintiff Jason Roush saw advertisements and

28  promotional materials both in store and online in which Apple touted the health, fitness, and safety features

of the Watch.  He reviewed the promotional material on Apple's website, including Apple's statements about the health, fitness, and safety features and capabilities of the Series 2 Watch.  He also reviewed promotional materials on Bestbuy.com, Verizon.com, Overstock.com and in-store at Best Buy and Walmart.  He also watched television advertisements promoting the Watch.

187.   With several days remaining in which the Watch could be returned, Plaintiff Roush reviewed the packaging, User Guide, and other set up and pairing information that came with the Watch.

188.   On April 30, 2021, the screen on Plaintiff Jason Roush's watch suddenly and unexpectedly detached from the watch's body.  When Plaintiff Roush looked at the watch, he observed that the screen had become partially detached from the rest of the watch.  The watch was no longer operational. Plaintiff has been unable to use his watch since that time.

189.   Shortly thereafter, Plaintiff Roush contacted Apple by telephone.  Apple refused to cover the repair under Apple's Limited Warranty or Screen Replacement Program.  Apple did not disclose the Defect or warn him about any safety hazard associated with it during this encounter.

190.   The service fee to repair Plaintiff Roush's watch is $229.[54]

191.   If Plaintiff decides to have the repair done, he still runs the risk of future harm (as do other Class members) because the "repaired" watch will have the same Defect described herein.

192.   At all times prior to the failure of Plaintiff Jason Roush's watch, the watch was maintained as recommended by Apple.  The watch was free from any cracks or other damage to the screen face or surrounding area.  It only had a few cosmetic scratches.  The watch screen had never detached prior to the incident on April 30, 2021.  It was in like-new condition with no prior damage when the Defect manifested itself.

193.   Had Plaintiff Jason Roush been aware of the existence of the Defect, he (1) would not have purchased a Watch, (2) would have paid substantially less for it, or (3) would have returned it for a refund. As a result of Apple's conduct, Plaintiff Jason Roush suffered injury.

194.   Plaintiff Jason Roush discovered the Defect in May 2021 only after his counsel in this litigation conducted an independent investigation and communicated with him.  Prior to May 2021, no

---

[54] https://support.apple.com/watch/repair/service/pricing

reasonable diligence on the part of Plaintiff Roush could have revealed the Defect for the reasons outlined in paragraphs 134 to 154, incorporated herein.  For these reasons, Plaintiff Roush specifically pleads the delayed discovery rule (which tolls the statute of limitations with respect to his UCL, CLRA, and fraudulent omission claims) as well as fraudulent and active concealment.

*Frank Ortega*

195.    Plaintiff Frank Ortega incorporates the above allegations by reference, including, but not limited to, those related to Apple's fraudulent and active concealment of the Defect and Plaintiffs' inability to use reasonable diligence to discover it.

196.    On or about March 23, 2021, Plaintiff Frank Ortega purchased for personal use a new Series SE Aluminum 44mm (GPS) Apple Watch (Serial No. H4HF7AE0Q07Y) from an Apple Store in Northridge, California for approximately $309.00 plus tax.

197.    Apple had knowledge of the Defect, its propensity to cause injury, and its existence in Series SE Watches before Plaintiff Frank Ortega made his purchase in March 2021.

198.    Prior to purchasing an Apple Watch, Plaintiff Frank Ortega saw advertisements and promotional materials in which Apple touted the health, fitness, and safety features of the Watch.  He reviewed promotional material, including Apple's statements about the health, fitness, and safety features and capabilities of the Series SE Watch.

199.    With several days remaining in which the Watch could be returned, Plaintiff Ortega reviewed the packaging, User Guide, and other set up and pairing information that came with the Watch.

200.    Less than a year after his original purchase, in June 2021, the screen on Plaintiff Frank Ortega's watch suddenly and unexpectedly detached from the watch's body.  When Plaintiff Ortega looked at the watch, he observed that the screen had become partially detached from the rest of the watch.

201.    If Plaintiff decides to have the repair done, he still runs the risk of future harm (as do other Class members) because the "repaired" watch will have the same Defect described herein.

202.    At all times prior to the failure of Plaintiff Frank Ortega's watch, the watch was maintained as recommended by Apple.  The watch was free from any cracks or other damage to the screen face or surrounding area.  It only had a few cosmetic scratches.  The watch screen had never detached prior to the incident in June 2021.  It was in like-new condition with no prior damage when the Defect manifested

1    itself.

2        203.    Had Plaintiff Frank Ortega been aware of the existence of the Defect, he (1) would not

3    have purchased a Watch, (2) would have paid substantially less for it, or (3) would have returned it for a

4    refund. As a result of Apple's conduct, Plaintiff Frank Ortega suffered injury.

5        204.    Plaintiff Frank Ortega discovered the Defect in March 2022 only after his counsel in this

6    litigation conducted an independent investigation and communicated with him.

7                                    *Plaintiff Alberto Cornea*

8        205.    Plaintiff Alberto Cornea incorporates the above allegations by reference, including, but not

9    limited to, those related to Apple's fraudulent and active concealment of the Defect and Plaintiffs' inability

10   to use reasonable diligence to discover it.

11       206.    On or about July 22, 2018, Plaintiff Alberto Cornea purchased a new Series 3 Stainless

12   Steel 42 mm (GPS + Cellular) Apple Watch (Serial No. FH7WL0PHJ6GH) from an Apple Store in New

13   York for approximately $399.00 plus tax.

14       207.    Apple had knowledge of the Defect, its propensity to cause injury, and its existence in

15   Series 3 Watches before Plaintiff Alberto Cornea made his purchase in July 2018.

16       208.    Prior to purchasing an Apple Watch, Plaintiff Alberto Cornea saw advertisements and

17   promotional materials in which Apple touted the health, fitness, and safety features of the Watch.  He

18   reviewed promotional material, including Apple's statements about the health, fitness, and safety features

19   and capabilities of the Series 3 Watch.

20       209.    With several days remaining in which the Watch could be returned, Plaintiff Alberto

21   Cornea reviewed the packaging, User Guide, and other set up and pairing information that came with the

22   Watch.

23       210.    In early March 2020, the screen on Plaintiff Alberto Cornea's watch suddenly and

24   unexpectedly detached from the watch's body.  When Plaintiff Cornea looked at the watch, he observed

25   that the screen had become partially detached from the rest of the watch.  The watch was no longer

26   operational.

27       211.    Also in March 2020, Plaintiff Cornea contacted Apple.  ████████████████████

28   ████████████████████████████████████████████████████████████

1

2 [REDACTED] Apple replaced Mr. Cornea's original watch with another Series 3

3 Stainless Steel 42mm (GPS + Cellular) Apple Watch (Serial No. GQ2ZV06MJ6GH) with the same

4 Defect. [REDACTED]

5 [REDACTED]

6 212.    On or about August 2021, the screen on Mr. Cornea's replacement Series 3 Stainless Steel

7 42mm (GPS + Cellular) Apple Watch (Serial No. GQ2ZV06MJ6GH) suddenly and unexpectedly

8 detached from the watch's body.  When Plaintiff Cornea looked at the watch, he observed that the screen

9 had become partially detached from the rest of the watch.  The watch was no longer operational.

10 213.    Mr. Cornea again contacted Apple. [REDACTED]

11 [REDACTED]

12 [REDACTED]

13 [REDACTED]

14 [REDACTED]

15 [REDACTED]

16 [REDACTED]

17 [REDACTED]

18 214.    Apple instead quoted Plaintiff Cornea a fee to replace his Apple Watch that he rejected.

19 Plaintiff has been unable to use his original watch since that time.

20 215.    The service fee to repair Plaintiff Cornea's replacement watch is $329.[55]

21 216.    If Plaintiff decides to have the repair done, he still runs the risk of future harm (as do other

22 Class members) because the "repaired" watch will have the same Defect described herein.

23 217.    At all times prior to the failure of both Plaintiff Alberto Cornea's original watch and

24 replacement watch, the Watches were maintained as recommended by Apple.  The watches were free from

25 any cracks or other damage to the screen face or surrounding area.  They only had a few cosmetic

26 scratches.  The watch screens had never detached prior to the incident with the original Watch in March

27

28 [55] https://support.apple.com/watch/repair/service/pricing

2020 and the replacement Watch in August 2021.  Both were in like-new condition with no prior damage when the Defect manifested itself.

218.    Had Plaintiff Alberto Cornea been aware of the existence of the Defect, he (1) would not have purchased a Watch, (2) would have paid substantially less for it, or (3) would have returned it for a refund. As a result of Apple's conduct, Plaintiff Alberto Cornea suffered injury.

219.    Plaintiff Alberto Cornea discovered the Defect in December 2021 only after his counsel in this litigation conducted an independent investigation and communicated with him.  Prior to December 2021, no reasonable diligence on the part of Plaintiff Cornea could have revealed the Defect for the reasons outlined in paragraphs 134 to 154, incorporated herein.  For these reasons, Plaintiff Cornea specifically pleads the delayed discovery rule (which tolls the statute of limitations with respect to his UCL, CLRA, and fraudulent omission claims) as well as fraudulent and active concealment.

*Plaintiff Michelle Rogers*

220.    Plaintiff Michelle Rogers incorporates the above allegations by reference, including, but not limited to, those related to Apple's fraudulent and active concealment of the Defect and Plaintiffs' inability to use reasonable diligence to discover it.

221.    On or about November 24, 2015, Plaintiff Michelle Rogers purchased for personal use a First Generation Sport Aluminum 38mm Apple Watch (Serial No. FH7QLV5AGR79) from a Best Buy in Ohio for approximately $349.00 plus tax.

222.    Apple had knowledge of the Defect, its propensity to cause injury, and its existence in First Generation Watches before Plaintiff Michelle Rogers made her purchase in November 2015.

223.    Prior to purchasing an Apple Watch, Plaintiff Michelle Rogers saw advertisements and promotional materials in which Apple touted the health, fitness, and safety features the Watch.  She reviewed promotional material, including Apple's statements about the health, fitness, and safety features and capabilities of the Series 1 Watch.

224.    With several days remaining in which the Watch could be returned, Plaintiff Rogers reviewed the packaging, User Guide, and other set up and pairing information that came with the Watch.

225.    On or about December 20, 2018, the screen on Plaintiff Michelle Rogers watch suddenly and unexpectedly detached from the watch's body.  When Plaintiff Rogers looked at the watch, he

observed that the screen had become partially detached from the rest of the watch.  The watch was no longer operational.

226.    Plaintiff had her Watch repaired at Battery Plus in Florida for a fee.

227.    Plaintiff still runs the risk of future harm (as do other Class members) because her Watch still has the same Defect described herein.

228.    At all times prior to the failure of Plaintiff Michelle Rogers's watch, the watch was maintained as recommended by Apple.  The watch was free from any cracks or other damage to the screen face or surrounding area.  It only had a few cosmetic scratches.  The watch screen had never detached prior to the incident in December 2018.  It was in like-new condition with no prior damage when the Defect manifested itself.

229.    Had Plaintiff Michelle Rogers been aware of the existence of the Defect, she (1) would not have purchased a Watch, (2) would have paid substantially less for it, or (3) would have returned it for a refund. As a result of Apple's conduct, Plaintiff Michelle Rogers suffered injury.

230.    Plaintiff discovered the Defect in February 2022 only after her counsel in this litigation conducted an independent investigation and communicated with her.  Prior to February 2022, no reasonable diligence on the part of Plaintiff Rogers could have revealed the Defect for the reasons outlined in paragraphs 134 to 154, incorporated herein.  For these reasons, Plaintiff Rogers specifically pleads the delayed discovery rule (which tolls the statute of limitations with respect to her UCL, CLRA, and fraudulent omission claims) as well as fraudulent and active concealment.

*Plaintiff Deborah Class*

231.    Plaintiff Deborah Class incorporates the above allegations by reference, including, but not limited to, those related to Apple's fraudulent and active concealment of the Defect and Plaintiffs' inability to use reasonable diligence to discover it.

232.    On or about February 3, 2016, Plaintiff Deborah Class purchased for personal use a new First Generation Sport Aluminum 38mm Apple Watch (Serial No. FHLR11R4GR79) from Apple's website for approximately $349.00.

233.    Apple had knowledge of the Defect, its propensity to cause injury, and its existence in First Generation Watches before Plaintiff Deborah Class made her purchase in February 2016.

234.    Prior to purchasing an Apple Watch, Plaintiff Deborah Class saw the external packaging promoting the features and capabilities of the First Generation Watch.

235.    With several days remaining in which the Watch could be returned, Plaintiff Class participated in the pairing and setup process for the Watch, with which she had assistance.

236.    In 2021, the screen on Plaintiff Deborah Class's watch suddenly and unexpectedly detached from the watch's body.  When Plaintiff Deborah Class looked at the watch, she observed that the screen had become partially detached from the rest of the watch.  The watch was no longer operational.

237.    If Plaintiff decides to have any repair done, she still runs the risk of future harm (as do other Class members) because the "repaired" watch will have the same Defect described herein.

238.    At all times prior to the failure of Plaintiff Deborah Class's watch, the watch was maintained as recommended by Apple.  The watch was free from any cracks or other damage to the screen face or surrounding area.  It only had a few cosmetic scratches.  The watch screen had never detached prior to the incident in 2021.  It was in like-new condition with no prior damage when the Defect manifested itself.

239.    Had Plaintiff Deborah Class been aware of the existence of the Defect, she (1) would not have purchased a Watch, (2) would have paid substantially less for it, or (3) would have returned it for a refund. As a result of Apple's conduct, Plaintiff Deborah Class suffered injury.

240.    Plaintiff Deborah Class discovered the Defect in February 2022 only after her counsel in this litigation conducted an independent investigation and communicated with her.  Prior to February 2022, no reasonable diligence on the part of Plaintiff Class could have revealed the Defect for the reasons outlined in paragraphs 134 to 154, incorporated herein.  For these reasons, Plaintiff Class specifically pleads the delayed discovery rule (which tolls the statute of limitations with respect to her UCL, CLRA, and fraudulent omission claims) as well as fraudulent and active concealment.

*Plaintiff Amber Jones*

241.    Plaintiff Amber Jones incorporates the above allegations by reference, including, but not limited to, those related to Apple's fraudulent and active concealment of the Defect and Plaintiffs' inability to use reasonable diligence to discover it.

242.    On or about December 26, 2017, Amber Jones purchased for personal use a new Series 1

Aluminum 38mm Apple Watch (Serial No. G99VMBXXHF12) from the Apple Store in Southlake, Texas for approximately $249.00 plus tax.

243.    Apple had knowledge of the Defect, its propensity to cause injury, and its existence in First Generation Watches before Plaintiff Amber Jones made her purchase in December 2017.

244.    Prior to purchasing an Apple Watch, Plaintiff Amber Jones reviewed Apple's website which Apple touted the health, fitness, and safety features of the Watch.

245.    With several days remaining in which the Watch could be returned, Plaintiff Jones reviewed the User Guide and other set up and pairing information that came with the Watch.

246.    In September 2021, the screen on Plaintiff Amber Jones's watch suddenly and unexpectedly detached from the watch's body.  When Plaintiff Jones looked at the watch, she observed that the screen had become partially detached from the rest of the watch.  The watch was no longer operational.

247.    Plaintiff Jones contacted Apple and was told that the service fee to repair the watch is $250. Apple did not disclose the Defect or warn her about any safety hazard associated with it during this encounter.

248.    If Plaintiff decides to have the repair done, she still runs the risk of future harm (as do other Class members) because the "repaired" watch will have the same Defect described herein.

249.    At all times prior to the failure of Plaintiff Amber Jones's watch, the watch was maintained as recommended by Apple.  The watch was free from any cracks or other damage to the screen face or surrounding area.  It only had a few cosmetic scratches.  The watch screen had never detached prior to the incident in September 2021.  It was in like-new condition with no prior damage when the Defect manifested itself.

250.    Had Plaintiff Amber Jones been aware of the existence of the Defect, she (1) would not have purchased a Watch, (2) would have paid substantially less for it, or (3) would have returned it for a refund. As a result of Apple's conduct, Plaintiff Amber Jones suffered injury.

251.    Plaintiff Amber Jones discovered the Defect in February 2022 only after her counsel in this litigation conducted an independent investigation and communicated with her.  Prior to February 2022, no reasonable diligence on the part of Plaintiff Jones could have revealed the Defect for the reasons

outlined in paragraphs 134 to 154, incorporated herein.  For these reasons, Plaintiff Jones specifically pleads the delayed discovery rule (which tolls the statute of limitations with respect to her UCL, CLRA, and fraudulent omission claims) as well as fraudulent and active concealment.

*Plaintiffs Krystal and Marcus Edwards*

252.    Plaintiffs Krystal and Marcus Edwards incorporate the above allegations by reference, including, but not limited to, those related to Apple's fraudulent and active concealment of the Defect and Plaintiffs' inability to use reasonable diligence to discover it.

253.    In December 2015, Plaintiff Marcus Edwards purchased a new First Generation Stainless Steel 42mm Apple Watch (Serial No. FHLQLFUCG9J8) from the Apple Store in Emeryville, California for approximately $399.00 plus tax and gifted it for personal use to his wife, Krystal Edwards.

254.    Apple had knowledge of the Defect, its propensity to cause injury, and its existence in First Generation Watches before Plaintiff Marcus Edwards made his purchase in December 2015.

255.    Prior to purchasing an Apple Watch, Plaintiff Marcus Edwards reviewed the packaging for the First Generation Watch.

256.    Upon receipt of the Watch in December 2015, with at least 10 days remaining in which the Watch could be returned, Plaintiff Krystal Edwards reviewed the User Guide and other set up and pairing information that came with the Watch.  Prior to her receipt of the Watch, Plaintiff Krystal Edwards saw advertisements and promotional materials in which Apple touted the health, fitness, and safety features of the First Generation Watch.

257.    Less than a year after purchase, the screen on Plaintiff Krystal Edwards's watch suddenly and unexpectedly detached from the watch's body.  When Plaintiff Krystal Edwards looked at the watch, she observed that the screen had become partially detached from the rest of the watch.  The watch was no longer operational.

258.    The service fee to repair the watch is $249.00.

259.    If Plaintiff decides to have the repair done, she still runs the risk of future harm (as do other Class members) because the "repaired" watch will have the same Defect described herein.

260.    At all times prior to the failure of Plaintiff Krystal Edwards's and Marcus Edwards's watch,

the watch was maintained as recommended by Apple.  The watch was free from any cracks or other damage to the screen face or surrounding area.  It only had a few cosmetic scratches.  The watch screen had never detached prior to the incident in 2016.  It was in like-new condition with no prior damage when the Defect manifested itself.

261.    Had Plaintiffs Krystal and Marcus Edwards been aware of the existence of the Defect, Marcus Edwards would not have purchased the watch or would have paid significantly less for it or Krystal and/or Marcus Edwards would have returned it for a refund.  As a result of Apple's conduct, Plaintiff Krystal Edwards and Plaintiff Marcus Edwards have been injured.

262.    Plaintiff Krystal Edwards discovered the Defect in February 2022 only after her counsel in this litigation conducted an independent investigation and communicated with her.  Prior to February 2022, no reasonable diligence on the part of Plaintiff Krystal Edwards could have revealed the Defect for the reasons outlined in paragraphs 134 to 154, incorporated herein.  For these reasons, Plaintiff Krystal Edwards specifically pleads the delayed discovery rule (which tolls the statute of limitations with respect to her UCL and fraudulent omission claims) as well as fraudulent and active concealment (which tolls the statute of limitations with respect to her Song-Beverly Act claims).

263.    Plaintiff Marcus Edwards discovered the Defect in February 2022 only after his counsel in this litigation conducted an independent investigation and communicated with him.    Prior to February 2022, no reasonable diligence on the part of Plaintiff Marcus Edwards could have revealed the Defect for the reasons outlined in paragraphs 134 to 154, incorporated herein.  For these reasons, Plaintiff Marcus Edwards specifically pleads the delayed discovery rule (which tolls the statute of limitations with respect to his UCL, CLRA, and fraudulent omission claims) as well as fraudulent and active concealment (which tolls the statute of limitations with respect to his Song-Beverly Act claims).

*Plaintiffs Alexis Keiser and Loorn Saelee*

264.    Plaintiffs Alexis Keiser and Loorn Saelee incorporate the above allegations by reference, including, but not limited to, those related to Apple's fraudulent and active concealment of the Defect and Plaintiffs' inability to use reasonable diligence to discover it.

265.    On or about January 28, 2016, Plaintiff Loorn Saelee, who lived in the same household as Plaintiff Alexis Keiser, purchased a new First Generation Sport Aluminum 42mm Apple Watch (Serial

No. FHLQP33XGR7M) from the Best Buy in Redding, California for approximately $399.00 plus tax and gifted it for personal use to his girlfriend, Plaintiff Alexis Keiser.

266. Apple had knowledge of the Defect, its propensity to cause injury, and its existence in First Generation Watches before Loorn Saelee made his purchase in February 2016.

267. Prior to purchasing an Apple Watch, Loorn Saelee saw advertisements and promotional materials in which Apple touted the health, fitness, and safety features of the Watch. He reviewed promotional material, including Apple's statements about the health, fitness, and safety features and capabilities of the First Generation Watch.

268. Upon receipt of the Watch in February 2016, with at least a few days remaining in which the Watch could be returned, Plaintiff Alexis Keiser reviewed the external packaging, User Guide, and other set up and pairing information that came with the Watch. Prior to her receipt of the Watch, Plaintiff Alexis Keiser saw advertisements and promotional materials in which Apple touted the health, fitness, and safety features of the First Generation Watch.

269. Approximately one year after purchase, the screen on Plaintiff Alexis Keiser's watch suddenly and unexpectedly detached from the watch's body. When Plaintiff Alexis Keiser looked at the watch, she observed that the screen had become partially detached from the rest of the watch. The watch was no longer operational. The exposed screen scratched her wrist and left a scar.

270. The date that her screen detached, Plaintiff Keiser contacted Apple. In an effort to conceal the Defect, the representative for Apple unjustifiably told Plaintiff Keiser that the damage was her fault and informed her that it was not covered by any warranty. Apple did not disclose the Defect or warn her about any safety hazard associated with it during this encounter.

271. The service fee to repair the watch is $249.00.

272. If Plaintiff decides to have the repair done, she still runs the risk of future harm (as do other Class members) because the "repaired" watch will have the same Defect described herein.

273. At all times prior to the failure of Plaintiff Alexis Keiser's watch, the watch was maintained as recommended by Apple. The watch was free from any cracks or other damage to the screen face or surrounding area. It only had a few cosmetic scratches. The watch screen had never detached prior to the incident less than one year after purchase. It was in like-new condition with no prior damage when the

Defect manifested itself.

274.    Had Plaintiff Loorn Saelee been aware of the existence of the Defect, he would not have purchased the watch or would have paid significantly less for it or Alexis Keiser would have returned it for a refund.  As a result of Apple's conduct, Plaintiffs Alexis Keiser and Loorn Saelee have been injured.

275.    Plaintiff Alexis Keiser discovered the Defect in February 2023 only after her counsel in this litigation conducted an independent investigation and communicated with her.  Prior to February 2023, no reasonable diligence on the part of Plaintiff Keiser could have revealed the Defect for the reasons outlined in paragraphs 134 to 154, incorporated herein.  For these reasons, Plaintiff Keiser specifically pleads the delayed discovery rule (which tolls the statute of limitations with respect to her UCL and fraudulent omission claims) as well as fraudulent and active concealment (which tolls the statute of limitations with respect to her Song-Beverly Act claims).

276.    Plaintiff Loorn Saelee discovered the Defect in February 2023 only after his counsel in this litigation conducted an independent investigation and communicated with him.  Prior to February 2023, no reasonable diligence on the part of Plaintiff Saelee could have revealed the Defect for the reasons outlined in paragraphs 134 to 154, incorporated herein.  For these reasons, Plaintiff Saelee specifically pleads the delayed discovery rule (which tolls the statute of limitations with respect to his UCL, CLRA, and fraudulent omission claims) as well as fraudulent and active concealment (which tolls the statute of limitations with respect to his Song-Beverly Act claims).

*Plaintiff Rebecca McKeown*

277.    Plaintiff Rebecca McKeown incorporates the above allegations by reference, including, but not limited to, those related to Apple's fraudulent and active concealment of the Defect and Plaintiffs' inability to use reasonable diligence to discover it.

278.    In May 2019, Plaintiff Rebecca McKeown purchased a Series 3 Apple Watch (Serial No. unknown) from the Best Buy in Laguna Hills, California for approximately $349.00 plus tax.

279.    Apple had knowledge of the Defect, its propensity to cause injury, and its existence in First Generation Watches before Plaintiff Rebecca McKeown made her purchase in May 2019.

280.    Prior to purchasing an Apple Watch, Plaintiff Rebecca McKeown reviewed the external packaging and Apple's website in which Apple touted the health, fitness, and safety features of the Series

1    3 Watch.

2        281.    With several days remaining in which the Watch could be returned, Plaintiff McKeown

3    reviewed the User Guide and other set up and pairing information that came with the Watch.

4        282.    In approximately December 2019, the screen on Plaintiff Betty McKeown's watch

5    suddenly and unexpectedly detached from the watch's body.  When Plaintiff McKeown looked at the

6    watch, she observed that the screen was cracked on three sides.  The watch was no longer operational.

7        283.    Plaintiff McKeown brought her watch to the Laguna Beach Best Buy store, an Apple

8    Authorized Service Provider, to inquire about coverage for the cracked screen.  The service fee to repair

9    Plaintiff Rebecca McKeown' watch is $159.00.

10       284.    If Plaintiff decides to have the repair done, she still runs the risk of future harm (as do other

11   Class members) because the "repaired" watch will have the same Defect described herein.

12       285.    At all times prior to the failure of Plaintiff Rebecca McKeown's watch, the watch was

13   maintained as recommended by Apple.  The watch was free from any cracks or other damage to the screen

14   face or surrounding area.  It only had a few cosmetic scratches.  The watch screen had never detached

15   prior to the incident in December 2019.  It was in like-new condition with no prior damage when the

16   Defect manifested itself.

17       286.    Had Plaintiff Rebecca McKeown been aware of the existence of the Defect, she (1) would

18   not have purchased a Watch, (2) would have paid substantially less for it, or (3) would have returned it

19   for a refund. As a result of Apple's conduct, Plaintiff Rebecca McKeown suffered injury.

20       287.    Plaintiff Rebecca McKeown discovered the Defect in June 2022 only after her counsel in

21   this litigation conducted an independent investigation and communicated with her.  Prior to June 2022, no

22   reasonable diligence on the part of Plaintiff Krystal Edwards could have revealed the Defect for the

23   reasons outlined in paragraphs 134 to 154, incorporated herein.  For these reasons, Plaintiff McKeown

24   specifically pleads the delayed discovery rule (which tolls the statute of limitations with respect to her

25   UCL, CLRA, and fraudulent omission claims) as well as fraudulent and active concealment (which tolls

26   the statute of limitations with respect to her Song-Berverly Act claims).

27                                   *Plaintiff Thomas Pear*

28       288.    Plaintiff Thomas Pear incorporates the above allegations by reference, including, but not

limited to, those related to Apple's fraudulent and active concealment of the Defect and Plaintiffs' inability to use reasonable diligence to discover it.

289.    Plaintiff Thomas Pear is a Florida citizen domiciled in Florida.  In September 2021, he purchased an SE Aluminum 44mm Apple Watch (Serial No. G99G8MP0Q12C) from a Verizon Store in Cape Coral, Florida for approximately $359.99 plus tax.

290.    Apple had knowledge of the Defect, its propensity to cause injury, and its existence in Series SE Watches before Plaintiff Thomas Pear made his purchase in September 2021.

291.    Prior to purchasing an Apple Watch, Plaintiff Thomas Pear reviewed Apple's website and saw advertisements and promotional materials in which Apple touted the health, fitness, and safety features of the Watch.  He reviewed promotional material, including Apple's statements about the health, fitness, and safety features and capabilities of the Series SE Watch.

292.    With several days remaining in which the Watch could be returned, Plaintiff Pear reviewed the User Guide.

293.    In May 2022, the screen on Plaintiff Thomas Pear's watch suddenly and unexpectedly detached from the watch's body.  When Plaintiff Pear looked at the watch, he observed that the screen had become partially detached from the rest of the watch.  The watch was no longer operational.

294.    The service fee to repair the watch is $219.00.

295.    If Plaintiff decides to have the repair done, he still runs the risk of future harm (as do other Class members) because the "repaired" watch will have the same Defect described herein.

296.    The watch screen had never detached prior to the incident in May 2022.

297.    Had Plaintiff Thomas Pear been aware of the existence of the Defect, he (1) would not have purchased a Watch, (2) would have paid substantially less for it, or (3) would have returned it for a refund. As a result of Apple's conduct, Plaintiff Thomas Pear suffered injury.

298.    Plaintiff Thomas Pear discovered the Defect in May 2022 only after his counsel in this litigation conducted an independent investigation and communicated with him.

*Plaintiff Tannaisha Smallwood*

299.    Plaintiff Tannaisha Smallwood incorporates the above allegations by reference, including, but not limited to, those related to Apple's fraudulent and active concealment of the Defect and Plaintiffs'

1    inability to use reasonable diligence to discover it.

2        300.    Plaintiff Tannaisha Smallwood is a Texas citizen domiciled in Texas.  In February 2017,

3    she purchased a new Series 1 Aluminum 38mm Apple Watch (Serial No. FHLT4E5GHF12) for herself

4    from Apple's website for approximately $249.00 plus tax.  Also in February 2017, Plaintiff Tannaisha

5    Smallwood purchased a new Series 1 Aluminum 38mm Apple Watch (Serial No. FHLT42Z6HF1C) for

6    her daughter from Apple's website for approximately $249.00 plus tax.

7        301.    Apple had knowledge of the Defect, its propensity to cause injury, and its existence in

8    Series 3 Watches before Plaintiff Tannaisha Smallwood made her purchases in February 2017.

9        302.    Prior to purchasing either Apple Watch, Plaintiff Tannaisha Smallwood saw the external

10   packaging of the watch.

11       303.    With several days remaining in which the Watches could be returned, Plaintiff Smallwood

12   reviewed the User Guide and other set up and pairing information that came with her Watch (Serial No.

13   FHLT4E5GHF12).

14       304.    In or around July 2021, the screen on Plaintiff Tannaisha Smallwood's daughter's watch

15   (Serial No. FHLT42Z6HF1C) suddenly and unexpectedly detached from the watch's body.  The watch

16   was no longer operational.

17       305.    In or around August 2021, the screen on Plaintiff Tannaisha Smallwood's watch (Serial

18   No. FHLT4E5GHF12) suddenly and unexpectedly detached from the watch's body.  The watch was no

19   longer operational.

20       306.    The service fee to repair each watch is $199.00.

21       307.    If Plaintiff decides to have either repair done, she still runs the risk of future harm (as do

22   other Class members) because the "repaired" watch will have the same Defect described herein.

23       308.    At all times prior to the failure of both watches that Plaintiff Tannaisha Smallwood

24   purchased, the watches were maintained as recommended by Apple.  The watches were free from any

25   cracks or other damage to the screen face or surrounding area.  They only had a few cosmetic scratches.

26   The watch screens had never detached prior to the incidents in July 2021 and August 2021, respectively.

27   They were in like-new condition with no prior damage when the Defect manifested itself.

28       309.    Had Plaintiff Tannaisha Smallwood been aware of the existence of the Defect, she (1)

would not have purchased either Watch, (2) would have paid substantially less for them, or (3) would have returned them for a refund. As a result of Apple's conduct, Plaintiff Tannaisha Smallwood suffered injury.

310.     Plaintiff Tannaisha Smallwood discovered the Defect in January 2023 only after her counsel in this litigation conducted an independent investigation and communicated with her.  Prior to January 2023, no reasonable diligence on the part of Plaintiff Smallwood could have revealed the Defect for the reasons outlined in paragraphs 134 to 154, incorporated herein.  For these reasons, Plaintiff Smallwood specifically pleads the delayed discovery rule (which tolls the statute of limitations with respect to her UCL, CLRA, and fraudulent omission claims) as well as fraudulent and active concealment (which tolls the statute of limitations with respect to her Song-Beverly Act claims).

*Plaintiff William Lavelle*

311.     Plaintiff William Lavelle incorporates the above allegations by reference, including, but not limited to, those related to Apple's fraudulent and active concealment of the Defect and Plaintiffs' inability to use reasonable diligence to discover it.

312.     In July 2017, Plaintiff William Lavelle purchased a new Series 2 Aluminum 38mm Apple Watch (Serial No. FHLTMOPDHJLL) from Apple's website for approximately $369.99 plus tax.

313.     Apple had knowledge of the Defect, its propensity to cause personal injury, and its existence in Series 2 Watches before Plaintiff William Lavelle made his purchase in July 2017.

314.     Prior to purchasing an Apple Watch, Plaintiff William Lavelle saw advertisements and promotional materials online in which Apple touted the health, fitness, and safety features of the Watch. He reviewed the promotional material on Apple's website, including Apple's statements about the health, fitness, and safety features and capabilities of the Series 2 Watch.

315.     With several days remaining in which the Watch could be returned, Plaintiff Lavelle reviewed the packaging, User Guide, and other set up and pairing information that came with the Watch.

316.     In approximately April 2020, the screen on Plaintiff William Lavelle's watch suddenly cracked along the edges.  The watch was no longer operational. Plaintiff has been unable to use his watch since that time.

317.     The service fee to repair Plaintiff Lavelle's watch is $229.00.

318.     If Plaintiff decides to have the repair done, he still runs the risk of future harm (as do other

1 | Class members) because the "repaired" watch will have the same Defect described herein.

2 |     319.   At all times prior to the failure of Plaintiff William Lavelle's watch, the watch was

3 | maintained as recommended by Apple.  The watch was free from any cracks or other damage to the screen

4 | face or surrounding area.  It only had a few cosmetic scratches.  The watch screen had never cracked prior

5 | to the incident in April 2020.  It was in like-new condition with no prior damage when the Defect

6 | manifested itself.

7 |     320.   Had Plaintiff William Lavelle been aware of the existence of the Defect, he (1) would not

8 | have purchased a Watch, (2) would have paid substantially less for it, or (3) would have returned it for a

9 | refund.  As a result of Apple's conduct, Plaintiff William Lavelle suffered injury.

10 |     321.   Plaintiff William Lavelle discovered the Defect in March 2023 only after his counsel in

11 | this litigation conducted an independent investigation and communicated with him.  Prior to March 2023,

12 | no reasonable diligence on the part of Plaintiff Lavelle could have revealed the Defect for the reasons

13 | outlined in paragraphs 134 to 154, incorporated herein.  For these reasons, Plaintiff Lavelle specifically

14 | pleads the delayed discovery rule (which tolls the statute of limitations with respect to his UCL, CLRA,

15 | and fraudulent omission claims) as well as fraudulent and active concealment (which tolls the statute of

16 | limitations with respect to his Song-Beverly Act claims).

## CLASS ACTION ALLEGATIONS

18 |     322.   Pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), (b)(3), and (c)(4),

19 | Plaintiffs seek certification of the following nationwide Class (the "Class" or the "Nationwide Class"):

> **All natural persons who purchased, other than for resale, any model First Generation, Series 1, Series 2, Series 3, Series 4, Series 5, Series 6, or Series SE Apple Watch ("Class Watches" or "Watches") and who made such purchase in the United States (including the District of Columbia) for personal, consumer, and/or household use.**

**Nationwide Internet Subclass**
All persons who purchased, other than for resale, via Apple's website or Apple Store App, a Class Watch.

**Alabama Subclass**
All persons who purchased, other than for resale, within Alabama, a Class Watch.

**California Subclass**
All persons who purchased, other than for resale, within California, a Class Watch.

**New York Subclass**
All persons who purchased, other than for resale, within New York, a Class Watch.

**Ohio Subclass**
All persons who purchased, other than for resale, within Ohio, a Class Watch.

**Texas Subclass**
All persons who purchased, other than for resale, within Texas, a Class Watch.

**Florida Subclass**
All persons who purchased, other than for resale, within Florida, a Class Watch.

323.   Excluded from the Classes are Defendant; any parent, affiliate, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; Defendant's officers or directors; or any successor or assign of Defendant.  Also excluded are any Judge or court personnel assigned to this case and members of their immediate families.

324.   Plaintiffs reserve the right to amend or modify the class definitions after having had an opportunity to conduct discovery.

325.   **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1), the Class is so numerous that joinder of all members is impracticable.  While Plaintiffs do not know the exact number of Class members, Plaintiffs believe the Class and the Subclasses are comprised of millions of members. Class members may be identified through objective means, including through Defendant's records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, social media, and/or published notice.

326.   **Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3).**  Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirements, this action involves common questions of law and fact as to all Class members, which predominate over any questions affecting individual Class members.  Such questions of law and fact common to the Class include, but are not limited to:

a.      Whether the Apple Watch was defective at the time of sale;

1      b.    Whether the Defect poses a material safety hazard to consumers;

2      c.    Whether the Defect poses an unreasonable safety hazard to consumers;

3      d.    Whether the Defect substantially impairs the value of the Apple Watch;

4      e.    Whether Apple knew of the Defect but continued to promote and sell the Apple Watch

5            without disclosing the Defect or its consequences to consumers;

6      f.    Whether a reasonable consumer would consider the Defect and its consequences

7            important to the decision whether to purchase an Apple Watch;

8      g.    Whether Apple's omissions relating to the Apple Watch and the Defect were likely to

9            deceive a reasonable consumer;

10    h.    Whether Apple acted unlawfully, unfairly, and/or fraudulently in violation of

11        California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*;

12    i.    Whether Plaintiffs and Class members materially overpaid for their Apple Watch as a

13        result of the Defect;

14    j.    Whether Plaintiffs and Class members are entitled to equitable relief, including

15        injunctive relief; and

16    k.    Whether Plaintiffs and Class members are entitled to damages or other monetary relief,

17        and if so, in what amount.

18    327.   **Typicality. Fed. R. Civ. P. 23(a)(3).** Consistent with rule 23(a)(3), Plaintiff's claims are

19 typical of the claims of the members of the Class. Apple's common course of conduct in violation of law

20 as alleged herein has caused Plaintiff and Class members to sustain the same or similar injuries and

21 damages. Plaintiff's claims are thereby representative of and coextensive with the claims of the Class.

22    328.   **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiffs are adequate

23 representatives of the Class because Plaintiffs are members of the Class and are committed to pursuing

24 this matter against Defendant to obtain relief for the Class.  Plaintiffs have no conflicts of interest with

25 Class members.  Plaintiffs' Counsel are competent and experienced in litigating consumer class actions,

26 including product liability matters.  Plaintiffs intend to vigorously prosecute this case and will fairly and

27 adequately protect the interests of the Class.  Plaintiffs' claims arise out of the same common course of

28 conduct giving rise to the claims of the other members of the Class.  Plaintiffs' interests are coincident

with, and not antagonistic to, those of the other Class members.

329.     **Superiority. Fed. R. Civ. P. 23(b)(3).** Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to an individual Plaintiff may not be sufficient to justify individual litigation.  Here, the damages suffered by Plaintiffs and the Class are relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable.  Individual litigation by each Class member would also strain the court system.   Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

330.     **Injunctive and Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendant, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

331.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.  Such particular issues are set forth in Paragraph 326(a)–(k) above.

332.     Finally, all members of the proposed Class are readily ascertainable.  Defendant has access to information regarding the individuals who purchased its defective Watches.  Using this information, Class members can be identified and their contact information ascertained for the purpose of providing notice to the Class.

**<u>FIRST CLAIM FOR RELIEF</u>**
**Violations of the Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL")**

333.     Plaintiffs incorporate the above allegations by reference.

334.   Plaintiffs assert this claim on behalf of the Class and the California subclass.[56]

335.   Apple is a "business" as defined by § 17200.

336.   The UCL proscribes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

**Unlawful**

337.   Apple's conduct is unlawful, in violation of the UCL, because it violates the Consumers Legal Remedies Act, the Song-Beverly Consumer Warranty Act, and the common law of implied warranty and fraud (as alleged in this Complaint).

**Unfair**

338.   Apple's conduct is unfair in contravention of the UCL because it violates California public policy, legislatively declared in both the Consumers Legal Remedies Act and the Song-Beverly Consumer Warranty Act.  The CLRA prohibits unfair and deceptive business practices. Apple violated the CLRA because it sold defective Watches as further described in this Complaint.  The Song-Beverly Consumer Warranty Act requires a manufacturer to ensure that goods it places on the market are fit for their ordinary and intended purposes.  Apple violated the Song-Beverly Act because the Apple Watch contains a material and unreasonable safety hazard and as further described in this Complaint.

339.   Apple also acted in an unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner with respect to Plaintiffs and the Class members.  Apple engaged in unfair business practices and acts in at least the following respects:

- Apple promoted and sold Watches it knew contain a Defect that constitutes a material and unreasonable safety hazard to consumers;

- Apple promoted and sold Watches with the Defect despite knowing that users do not expect the Watches to be a material and unreasonable safety hazard;

- Apple made repairs that caused repeated instances of failure and unbeknownst to consumers did

---

[56] Plaintiffs' read the Court's order on Apple's Motion To Dismiss the First Amended Complaint (Doc. 80) as permitting Plaintiffs the opportunity to amend their UCL claim to assert forms of equitable relief other than restitution, provided that their remedies at law are inadequate.

not provide a permanent fix for the underlying safety hazard Defect to remove the ongoing threat that consumers could be injured;

- Apple failed to exercise adequate quality control and due diligence over the Watches before placing them on the market;

- Apple minimized the scope and severity of the problems with the Watches, refusing to acknowledge that they are defective and failing to provide adequate relief to consumers.

340. The gravity of harm resulting from Apple's unfair conduct outweighs any potential utility. The practice of selling defective Watches that contain an unreasonable safety hazard without providing an adequate remedy to cure the Defect – and continuing to sell those Watches without full and fair disclosure of the Defect – harms the public at large and is part of a common and unform course of wrongful conduct.

341. The harm from Apple's conduct was not reasonably avoidable by consumers. The Watches suffer from a latent defect at the point of sale, and even after receiving a large volume of consumer complaints, Apple did not disclose the Defect. Plaintiffs did not know of, and had no reasonable means of discovering, that the Watches are defective.

342. There were reasonably available alternatives that would have furthered Apple's business interests of satisfying and retaining its customers while maintaining profitability, such as: (1) acknowledge the Defect and providing a permanent fix for the defective Watch; (2) adequately disclosing the Defect to prospective purchasers; (3) extending the warranty for the Watch; and (4) offering refunds or a suitable non-defective replacement Watch to consumers with defective watches.

### Fraudulent (Fraud by Omission)

343. Apple's conduct is fraudulent in violation of the UCL because it is likely to deceive a reasonable consumer and:

- Apple knowingly and intentionally concealed from Plaintiffs and Class members that the Watch contains a latent defect that renders the Watches prone to failure and creates an unreasonable safety hazard that can cause personal injury.

- Apple volunteered information to Plaintiffs and Class members through advertising and other means that the Watch was a functional, premium product that assisted a safe and healthy lifestyle

without disclosing facts that would have materially qualified those partial representations.

- Apple promoted the high quality and premium features of the Watch, including its role in a safe, healthy, and active lifestyle, despite knowing that the Watch is defective, and failed to correct its misleading partial disclosures.

- Apple provided to each consumer a User Guide that includes a specific section on "Safety and Handling" containing "Important Safety Information" with no disclosures about the propensity of the screen to suddenly detach, shatter, or crack exposing its razor-sharp edges and the resulting risk of injury therefrom.  Apple's statements regarding safe use of the Watch in the User Guide applicable to each series constituted partial representations triggered a duty to disclose additional facts that would have materially qualified these partial representations, including the existence of the Defect and resulting unreasonable safety hazard.  Apple permits consumers 14 days after the date of purchase to return the Watch and its authorized retailers do the same (see footnote 1).

344.    Apple had ample means and opportunities to alert Plaintiffs and Class members of the defective nature of the Watches, including on Apple's Watch webpages; in its advertisements of the Watch; on the external packaging of the Watch; in the Apple online purchase portals; in the User Manuals; and as part of the standardized Watch setup process.  Apple uniformly failed to disclose that the Watch is defective.  Had Apple disclosed that the Watch is defective, Plaintiffs and Class members would not have purchased a Watch, would have paid substantially less, or would have returned their Watch during the respective buyer's remorse periods.

345.    Apple was under a duty to disclose the Defect because of its exclusive knowledge of the Defect before selling the Watch and because the Defect resulted in a material and unreasonable safety hazard and because Apple made partial representations about the Watch without disclosing the Defect.

346.    Apple's omissions were material.  Each Plaintiff was exposed to Apple's specific representations about the Watch before and immediately after purchase and within the time period in which they could have returned their Watch without penalty.  Each Plaintiff saw the external packaging of the Watch – which Apple developed – before purchasing or using the Watch and during the buyer's remorse period and/or saw and relied on Apple's representations about the Watch online or in product advertisements, and/or in the online purchase portal, and/or in the User Guide, and/or received further

information from Apple about the Watch during its setup process. None of the informational sources Plaintiffs or Class Members encountered – advertisements, websites, external packaging, the online purchase portal, the User Guide, the setup process, or the Watch launch event – disclosed that the Watch is defective or that it creates an unreasonable safety hazard.

347. Plaintiffs and Class members were unaware of the Defect until they experienced it. Had Apple disclosed the Defect, including through advertising, press releases, the Watch packaging, the online purchase portal, the User Guide, or the initial setup process, Plaintiffs and Class members would have been aware of it, and would not have purchased a Watch, would have paid substantially less for it, or would have returned it for a refund.

348. Absent Apple's unlawful, unfair and fraudulent conduct, Plaintiffs and Class members, who were all unaware of the Defect and the unreasonable safety hazard it caused at the time of purchase, would not have purchased a Watch, would not have purchased a Watch at the prices they did, or would have returned their Watch for a refund during their respective buyer's remorse periods. Apple omitted material information that it was under a duty to disclose and on which Plaintiffs and the Class members would have relied.

349. Through its unlawful, unfair, and fraudulent conduct, Apple acquired Plaintiffs' money directly and as passed on by Apple's authorized resellers (e.g., Best Buy, Amazon, and Walmart). Plaintiffs and Class members suffered injury in fact, including lost money or property, as a result of Apple's unlawful, unfair, and fraudulent conduct.

350. Apple's conduct threatens to cause future harm to Plaintiffs and Class members. Plaintiffs and Class members would purchase Apple Watches in the future if the Defect were remedied.

351. The Apple Watch has no comparable product on the market. No other product integrates as seamlessly with other Apple devices since the Apple Watch is the only such product within the Apple "ecosystem."

352. Therefore, there is no adequate remedy for Plaintiffs and Class members under the law, and Plaintiffs and Class members seek separate injunctive relief including but not limited to an order or judgment enjoining Apple from making similar misrepresentations and omissions in the future or from continuing its unfair, unlawful, and fraudulent practice.

**SECOND CLAIM FOR RELIEF**
**Violations of the Consumers Legal Remedies Act,**
**Cal. Civ. Code §§ 1750, *et seq*.  ("CLRA")**

353.    Plaintiffs incorporate the above allegations by reference.

354.    Plaintiffs Cheryl Smith, Karen Smithson, Jason Roush, Frank Ortega, Alberto Cornea, Michelle Rogers, Deborah Class, Amber Jones, Marcus Edwards, Loorn Saelee, Rebecca McKeown, Thomas Pear, Tannaisha Smallwood, and William Lavelle assert this claim on behalf of the Class and the California subclass.  Plaintiffs Karen Smithson, Frank Ortega, Marcus Edwards, Loorn Saelee, Rebecca McKeown, Tannaisha Smallwood, and William Lavelle also assert this claim on behalf of the Nationwide Internet Subclass.

355.    Apple is a "person" within the meaning of California Civil Code sections 1761(c) and 1770, and provided "goods" within the meaning of sections 1761(a) and 1770.

356.    Apple's acts and practices, as alleged in this complaint, violate California Civil Code sections 1770(a)(5), (7), and (9) because they include unfair and deceptive acts and practices in connection with transactions – the sale of defective Watches.  In violation of the CLRA, Apple:

•       By its omission of the safety Defect, represented that the Watch had characteristics, uses, and benefits it does not have;

•       By its omission of the safety Defect, represented that the Watch is of a standard, quality, or grade when in fact it is not; and

•       Advertised the Watch with intent not to sell it as advertised.

357.    Through its design, development, and pre-release testing of the Watch, as well as through consumer complaints, as well as other means set forth in this Complaint, Apple knew that the Watch is defective, prone to failure, and presents a material and unreasonable safety hazard to consumers.

358.    Apple was under a duty to disclose that the Watch is defective because it had superior knowledge of the Defect – through research, pre-release testing, consumer complaints, and the other means set forth in this Complaint – and because the Defect resulted in a material safety hazard and because Apple made partial, materially misleading representations about the Watch's high quality, premium features, and assistance in promoting a safe and healthy lifestyle.

359.    Apple had ample means and opportunities to disclose to Plaintiffs and Class members that

the Watch is defective, including through advertisements and promotional materials, on external packaging, in the online purchase portal, in the User Guides, and during the Watch's set up process. Despite its exclusive and knowledge and ample opportunities to disclose the Watch's defective nature, Apple failed to disclose the Defect to Plaintiffs and Class members either prior to purchase or before Plaintiffs' and Class members' respective buyer's remorse periods expired or any time thereafter.

360.     Plaintiffs Frank Ortega, Marcus Edwards, Loorn Saelee, Rebecca McKeown, and Thomas Pear and certain other Class members experienced manifestation of the alleged latent Defect within the applicable 1-year or 2-year Limited Warranty period, or within the two extensions thereof to 3 years by Apple for certain series and models in April 2017 and April 2018, respectively.  Some Plaintiffs and Class members experienced manifestation of the alleged latent Defect after the applicable Limited Warranty period while other Plaintiffs and Class Members have not yet had the alleged latent Defect manifest in their Watches.  In all the above situations, the latent Defect was present at the time of sale.  Because the Defect at issue creates an unreasonable safety hazard, Apple had a duty to disclose this Defect even after the applicable Limited Warranty period (and Apple's extensions thereof) expired.

361.     Apple's omissions were material.  Each Plaintiff was exposed to Apple's omission about the Watch before and immediately after purchase and within the time period in which they could have returned their Watch without penalty.  Each Plaintiff saw and relied on the external packaging of the Watch – which Apple developed – before purchasing or using the Watch and during the buyer's remorse period and/or saw and relied on Apple's representations about the Watch online or in product advertisements, and/or in the online purchase portal, and/or in the User Guide, and/or received further information from Apple about the Watch that they read and followed during its setup process.  None of the informational sources Plaintiffs encountered – advertisements, websites, external packaging, the User Guides, the setup process, or the Watch launch event – indicated the Watch is defective and that the Defect creates an unreasonable safety hazard.

362.     Plaintiffs and Class members were unaware of the Defect until they experienced it.  Had Apple disclosed the Defect, including through advertising, press releases, the Watch packaging, the online purchase portal, the User Guide, or the initial setup process, Plaintiffs and Class members would have been aware of it, and would not have purchased a Watch, would have paid substantially less for it, or

1  would have returned it for a refund.

2  363.  Apple's conduct is ongoing and continuing, such that prospective injunctive relief is

3  necessary, especially given Plaintiffs' desire to purchase these products in the future if they can be assured

4  that the Watches are reasonably safe, functioned as advertised, and/or if the Court ordered Apple to comply

5  with relevant advertising and warranty laws.

6  364.  Those Plaintiffs whose CLRA claims would have otherwise expired allege that they are

7  tolled by the delayed discovery rule.  Plaintiffs incorporate paragraphs 134 to 154 related to Plaintiffs'

8  general allegations of fraudulent concealment and delayed discovery and paragraphs 163 to 321 for

9  additional plaintiff-specific allegations.

10  365.  Under California Civil Code section 1782(a), on their own behalf and on behalf of the

11  Class, Plaintiffs Cheryl Smith, Karen Smithson, and Jason Roush served CLRA demand to Apple on

12  November 8, 2021 on behalf of a nationwide class (Exhibit A).  Apple failed to remedy the defect.

13  366.  Plaintiffs' CLRA demands were sent via certified mail, return receipt requested, to Apple's

14  principal place of business, advising Apple that it is in violation of CLRA and must correct, replace, or

15  otherwise rectify the goods alleged to be in violation of California Civil Code section 1770.

16  367.  Plaintiffs were injured by Apple's CLRA violations.  As a result, Plaintiffs are entitled to

17  injunctive and declaratory relief because they do not have an adequate remedy at law.   Plaintiffs and other

18  Class members would purchase a Watch in the future if the devices were reasonably safe, functioned as

19  advertised, and if the Court ordered Apple to comply with all pertinent advertising and warranty laws.

20  Apple continues to design, manufacture, and release updated versions of the Apple Watch, often

21  discontinuing the sale of previous versions shortly after the release of new ones.  In the absence of

22  injunctive relief, Plaintiffs, at best, would be forced to file frequent suits to recoup their overpayments on

23  future purchases if Apple is enjoined from continuing its practice of selling Watches with the Defect and

24  failing to warn consumers about the Defect.

25  368.  Additionally, because Apple failed to correct its business practices or provide the requested

26  relief within 30 days of the demand, Plaintiffs also seek monetary damages, reasonable attorneys' fees

27  and costs, and punitive damages under the CLRA.

28  369.  In accordance with California Civil Code section 1780(d), Plaintiffs' CLRA venue

declarations are attached to this Complaint as Exhibits B through O.

**THIRD CLAIM FOR RELIEF**
Fraud By Omission

370.    Plaintiffs incorporate the above allegations by reference.

371.    Plaintiffs bring this claim on behalf of the Class under California law or, alternatively, Plaintiffs Ortega and Smithson bring this claim under California law on behalf of the California Subclass; Plaintiffs Ortega, Smithson, Smallwood, and Lavelle bring this claim under California law on behalf of the Nationwide Internet Subclass; Plaintiff Cornea brings this claim under New York law on behalf of the New York Subclass; Plaintiffs Roush and Rogers bring this claim under Ohio law on behalf of the Ohio Subclass; Plaintiffs Cheryl Smith and Chris Smith bring this claim under Alabama law on behalf of the Alabama Subclass; Plaintiff Jones brings this claim under Texas law on behalf of the Texas Subclass; Plaintiff Thomas Pear brings this claim under Florida law on behalf of the Florida Subclass.

372.    Apple intentionally failed to disclose material facts about the safety and quality of the Watch.  As alleged above, Apple knew that the Watches were defective and dangerous before the Plaintiffs and Class members purchased them.  Further, Apple was aware of numerous consumer complaints, Limited Warranty claims, Limited Warranty extension claims (i.e., extensions initiated by Apple in April 2017 and April 2018), and Screen Replacement Program claims concerning Defect-related problems, but never disclosed the Defect and resulting unreasonable safety hazard to Plaintiffs and Class members.

373.    Because the Defect in the Watch is latent and unobservable until it arises, Plaintiffs and Class members had no reasonable means of knowing that Apple's representations concerning the Watch were incomplete, misleading, or that it had failed to disclose that the Watch was defective.  Plaintiffs and Class members did not and reasonably could not have discovered Apple's deceit before they purchased the Watch or before the end of their buyer's remorse periods.

374.    Had Plaintiffs and Class members known that the Watch is defective, they would not have purchased a Watch, would not have purchased it at the price they did, or would have returned it during their respective buyer's remorse periods.

375.    Apple had a duty to disclose the Defect to Plaintiffs, Class members, and the public because

the Defect results in a material and unreasonable safety hazard and Apple possessed exclusive knowledge of it.  Among other things, Apple conducted pre-release testing of the Watch and its internal components.  This testing revealed or should have revealed the existence of the Defect before the Watch's release.  Only Apple had knowledge of and access to those test results.

376.    Apple also had a duty to disclose the Defect because, through advertising, press releases, and statements made during the launch event, on its Watch webpages, on its packaging, in its online purchase portal, in its User Guide, on its devices during the setup and pairing process, and in other sources that Plaintiffs and Class members encountered before purchasing their Watches, Apple made partial representations regarding the safe use of the Watch (in the User Guides) as well as the supposed high quality of the Watch and its premium features – including its contribution to a user's health and safety – but failed to disclose facts that would have materially qualified these partial representations, including the existence of the Defect and resulting unreasonable safety hazard.  Having volunteered information relating to the Watch to Plaintiffs and Class members, Apple had a duty to disclose the whole truth about the Watch and, in particular, its defective nature.

377.    Each Plaintiff was exposed to Apple's specific representations about the Watch before and immediately after purchase and within the time period in which they could have returned their Watch without penalty.  Each Plaintiff saw the external packaging of the Watch – which Apple developed – before purchasing or using the Watch and during the buyer's remorse period and/or saw Apple's representations about the Watch online and/or or in product advertisements, and/or in Apple's online purchase portal, and/or in the User Guide, and/or received further information from Apple about the Watch during its setup process.  None of the informational sources Plaintiffs encountered – advertisements, websites, external packaging, the online purchase portal, the setup process, or the Watch launch event – indicated the Watch is defective.  If Apple had made such disclosures, Plaintiffs would have been aware of them.

378.    Apple failed to disclose the Defect to sell more Watches at a premium price, prevent damage to its brand, turn so-called "repair" of the detached, shattered, or cracked screens resulting from the Defect into another profitable revenue stream for itself via expensive out-of-warranty service fees, and avoid the costs of developing a permanent fix for the Defect and of repairs, replacements, and refunds

under its Warranty.

379.    The facts about the Watch that Apple suppressed and omitted were material to a reasonable objective consumer, and Plaintiffs and Class members were unaware of them until they experienced the Defect.  Had Apple disclosed the Defect, including through advertising, press releases, the Watch packaging, the online purchase portal, the User Guide, or the initial setup process, Plaintiffs and Class members would have been aware of it, and would not have purchased a Watch, would have paid substantially less for it, or would have returned it for a refund.

380.    When deciding to purchase a Watch, Plaintiffs and Class members reasonably and/or justifiably relied to their detriment upon Apple's material omissions regarding the quality of the Watch, the safety of the Watch, and the product Defect.

381.    Plaintiffs and Class members sustained damages as a direct and proximate result of Apple's deceit and fraudulent concealment.  Among other damage, Plaintiffs and Class members did not receive the value of the premium price they paid for the Watch.

382.    Apple's fraudulent omission was malicious, oppressive, deliberate, intended to defraud Plaintiffs and Class members and enrich Apple, and in reckless disregard of Plaintiffs' and Class members' rights, interests, and well-being.  Apple's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct, to be determined according to proof.

383.    Those Plaintiffs whose fraudulent omission claims would have otherwise expired allege that they are tolled by the delayed discovery rule.  Plaintiffs incorporate paragraphs 134 to 154 related to Plaintiffs' general allegations of fraudulent concealment and delayed discovery and paragraphs 163 to 321 for additional plaintiff-specific allegations.

## FOURTH CLAIM FOR RELIEF
### Violations of the Song-Berly Consumer Warranty Act
### Cal. Civ. Code § 1792, *et seq.*

384.    Plaintiffs incorporate the above allegations by reference.

385.    Plaintiffs Karen Smithson, Frank Ortega, Alexis Keiser, Loorn Saelee, Krystal Edwards, Marcus Edwards, and Rebecca McKeown assert this claim on behalf of the California Subclass and Plaintiffs Karen Smithson, Frank Ortega, Alexis Keiser, Loorn Saelee, Krystal Edwards, Marcus Edwards,

Rebecca McKeown, Tannaisha Smallwood, and William Lavelle assert this claim on behalf of the Nationwide Internet Subclass.

386.   Plaintiffs Smithson, Ortega, Saelee, and McKeown are "buyers" within the meaning of California Civil Code § 1791(b).  Plaintiffs Smithson, Ortega, Saelee, Marcus Edwards, and McKeown purchased a Watch in California.  Plaintiffs Smallwood and Lavelle purchased their Watches in California via Apple's website.

387.   The members of the California Subclass are "buyers" within the meaning of California Civil Code § 1791(b).  The members of the California subclass purchased their Watches in California directly from Apple through its website and/or the Apple Store App, through an Apple retail store located in California, and/or through one of its authorized reseller's retail stores located in California.  Title to the goods passed to these buyers in California.  These Watches were "sold at retail in this state" as required by California Civil Code § 1792.

388.   The members of the Nationwide Internet Subclass are "buyers" within the meaning of California Civil Code § 1791(b).  The members of the Nationwide Internet Subclass purchased their Watches in California directly from Apple, which is located in California, through its website and/or the Apple Store App. Title to the goods passed to these buyers in California.  Apple administers and operates its website in California, requires in its terms and conditions that California law applies to access and use of its website, and requires users to consent to jurisdiction and venue in California.[57]  Upon information and belief, Apple administers and operates its App store in California as part of its website, so the same terms and conditions apply.[58]   These Watches were "sold at retail in this state" as required by California Civil Code § 1792.

389.   Apple is a manufacturer within the meaning of California Civil Code § 1791(j).  Apple was

---

[57] "Apple administers and operates the www.apple.com Site from its location in Cupertino, California USA…You agree that all matters relating to your access to or use of the Site, including all disputes, will be governed by the laws of the United States and by the laws of the State of California without regard to its conflicts of laws provisions. You agree to the personal jurisdiction by and venue in the state and federal courts in Santa Clara County, California, and waive any objection to such jurisdiction or venue." https://www.apple.com/legal/internet-services/terms/site.html
[58] See previous footnote.

1  responsible for producing the Watch and directed and was involved in all stages of the production and

2  manufacturing process.

3       390.   The Watch is a "consumer good[ ]" within the meaning of California Civil Code § 1791(a).

4       391.   The Song-Beverly Consumer Warranty Act applies to both the Nationwide Internet

5  Subclass and the California Subclass.

6       392.   Apple impliedly warranted to Plaintiffs Smithson, Ortega, McKeown, Saelee, Smallwood,

7  and the Nationwide Internet Subclass and the California Subclass that the Watch each purchased was

8  "merchantable" under California Civil Code §§ 1791.1 and 1792.

9       393.   Apple breached the implied warranty of merchantability by producing, manufacturing, and

10  selling Watches that were not of merchantable quality.  The Watch is defective and poses an unreasonable

11  safety hazard, resulting in destruction or operational failure of the Watch and/or personal injuries.  The

12  Watch is therefore unfit for the ordinary purposes for which it is issued and would not pass without

13  objection in the watch or wearable device trade.

14       394.   The defect in the Watch is latent.  Though the Watch appears operable when new, the

15  Defect existed in the product at the time of sale and throughout the one-year Limited Warranty period (or

16  two years with Hermes and Edition models).  Accordingly, any subsequent discovery of the Defect beyond

17  that time does not bar an implied warranty claim under the Song-Beverly Act.  Further, despite Plaintiffs

18  and the Class's due diligence they were not reasonably able to discover the problem because it was

19  undetectable and Apple failed to disclose or concealed it from them as set forth in this Complaint.

20       395.   Any attempt by Apple to disclaim its implied warranty obligations under the Song-Beverly

21  Act is ineffective due to its failure to adhere to California Civil Code §§ 1792.3 and 1792.4.  Those sections

22  provide that, in order to validly disclaim the implied warranty of merchantability, a manufacturer must

23  "in simple and concise language" state: "(1) The goods are being sold on as 'as is' or 'with all faults'

24  basis; (2) The entire risk as to the quality and performance of the goods is with the buyer. (3) Should the

25  goods prove defective following their purchase, the buyer and not the manufacturer, distributor, or retailer

26  assumes the entire cost of all necessary servicing or repair."  Apple's attempted warranty disclaimer does

27  not conform to sections 1792.3 and 1792.4.

28       396.   Those Plaintiffs whose Song-Beverly Act claims would have otherwise expired allege that

they are tolled by the doctrine of fraudulent concealment.  Plaintiffs incorporate paragraphs 134 to 154 related to Plaintiffs' general allegations of fraudulent concealment and delayed discovery and paragraphs 163 to 321 for additional plaintiff-specific allegations.

397.     As a direct and proximate cause of Apple's breaches of the Song-Beverly Consumer Warranty Act, Plaintiffs Karen Smithson, Frank Ortega, Alexis Keiser, Loorn Saelee, Krystal Edwards, Marcus Edwards, Rebecca McKeown, Tannaisha Smallwood, William Lavelle, the Nationwide Internet Subclass, and the California Subclass have been damaged in an amount to be proven at trial.

398.     Plaintiffs Karen Smithson, Frank Ortega, Alexis Keiser, Loorn Saelee, Krystal Edwards, Marcus Edwards, Rebecca McKeown, Tannaisha Smallwood, William Lavelle, the Nationwide Internet Subclass, and the California Subclass seek costs and expenses, including reasonable attorneys' fees, under California Civil Code § 1794.

## FIFTH CLAIM FOR RELIEF
### Violations of the New York General Business Law § 349
### N.Y. Gen. Bus. Law § 349

399.     Plaintiffs incorporate the above allegations by reference.

400.     Plaintiff Alberto Cornea asserts this claim on behalf of himself and the New York Subclass.

401.     Plaintiff Cornea and the New York Subclass members are "persons" within the meaning of the New York General Business Law.  N.Y. Gen. Bus. Law § 349(h).

402.     Apple is a "person, firm corporation or association or agent or employee thereof" within the meaning of the New York General Business Law.  N.Y. Gen. Bus. Law § 349(b).

403.     Under the New York Gen. Bus. Law section 349, "[d]eceptive acts or practices in the conduct of any business trade or commerce" are unlawful.

404.     In the course of Apple's business, it failed to disclose and actively concealed the Defect in the Apple Watch with the intent that consumers rely on that concealment in deciding whether to purchase the Apple Watch.

405.     By intentionally concealing the Defect, Apple engaged in deceptive acts or practices in violation of the New York General Business Law § 349.

406.     Apple's deceptive acts or practices were materially misleading.  Apple's conduct was likely

to and did deceive reasonable consumers, including Cornea, about the true performance and value of the Apple Watch.

407.    Cornea and New York Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that Apple suppressed.

408.    Apple's actions set forth above occurred in the conduct of trade or commerce.

409.    Apple's misleading conduct concerns widely purchased consumer products and affects the public interest.  Apple's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large.

410.    Plaintiff Cornea and New York Subclass members suffered ascertainable loss as a direct and proximate result of Apple's New York General Business Law violations.  Cornea and New York Subclass members overpaid for their Apple Watch, and their Apple Watch suffered a diminution of value. These injuries are the direct and natural consequences of Apple's material omissions.

411.    Cornea, individually and on behalf of the New York Subclass, requests that this Court enter such orders or judgments as may be necessary to enjoin Apple from continuing its unfair and deceptive practices.  Under the New York General Business Law, Cornea and New York Subclass members are entitled to recover their actual damages or $50, whichever is greater.  Additionally, because Apple acted willfully or knowingly, Cornea and New York Subclass members are entitled to recover three times their actual damages.  Cornea is also entitled to reasonable attorneys' fees.

### SIXTH CLAIM FOR RELIEF
**Violations of the Texas Deceptive Trade Practices-Consumer Protection Act**
**Tex. Bus. & Com. Code § 17.41, *et seq.* ("DTPCPA")**

412.    Plaintiffs incorporate the above allegations by reference.

413.    Plaintiff Jones brings this claim on behalf of herself and the Texas Subclass.

414.    The DTPCPA prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."  DTPCPA § 17.46(a).

415.    Apple has, at all relevant times, engaged in conduct that constitutes "trade" and "commerce," as those terms are defined in Section 17.45(6) of the DTPCPA.

416.    Apple Watches are "goods" as that term is defined in Section 17.45(1).

417.   Jones, Texas Subclass members, and Apple are "persons" and "consumers" within the meaning of the DTPCPA.

418.   Apple, as alleged above, is engaging or has engaged in false, misleading, or deceptive acts or practices in the conduct of trade or commerce, in violation of DTPCPA §§ 17.46(24), as follows:

a.   § 17.46(b)(24): Failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclose.

419.   By selling the defective Watch with exclusive knowledge of the Defect, and by promoting the health and safety features of the Apple Watch while failing to disclose and actively concealing the Watch's defective nature, Apple engaged in deceptive practices that violate Texas law.

420.   Apple engaged in these deceptive practices with the intent that consumers like Jones would rely on Apple's omissions when deciding whether to purchase a Watch.

421.   Plaintiff Jones was unaware of Apple's deceptive trade practices until August 2021 when she experienced the Defect.

422.   Jones, individually and on behalf of the Texas Subclass, requests that this Court enter such orders or judgments as may be necessary to enjoin Apple from continuing its unfair and deceptive practices.

423.   Apple received written notice of these Texas claims when they were added to this litigation on March 28, 2022 (the original claims did not seek damages under Subdivision (1) of Subsection (b) of Section 17.50). (Doc. 31).  Apple informed Plaintiffs for the first time that it was working on an inspection protocol for the named Plaintiffs' watches during the parties' meet-and-confer on June 15, 2022 – after the 60-day notice period expired.   V.T.C.A., Bus. & C. § 17.505.   Thus, Plaintiff Amber Jones, individually and on behalf of the Texas Subclass, now requests that this Court also award damages under Subdivision (1) of Subsection (b) of Section 17.50.

<u>**SEVENTH CLAIM FOR RELIEF**</u>
**Violations of the Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. § 501.201, *et seq*. ("FDUTPA")**

424.   Plaintiffs incorporate the above allegations by reference.

425. Plaintiff Thomas Pear brings this claim on behalf of himself and the Florida Subclass.

426. Pear and Florida Subclass members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

427. Apple engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

428. The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

429. Apple's acts and practices, described herein, are unfair and in violation of Florida law for the reasons stated in paragraphs 333 to 342 of the First Claim For Relief, *supra*.

430. Apple also engaged in deceptive trade practices in violation of Florida law, by promoting the health, fitness, and safety features of the Apple Watch while willfully failing to disclose and actively concealing the Watch's defective nature.

431. Apple committed deceptive acts and practices with the intent that consumers, such as Pear and Florida Subclass members, would rely upon Apple's representations and omissions when deciding whether to purchase an Apple Watch.

432. Pear and Florida Subclass members suffered ascertainable loss as a direct and proximate result of Apple's unfair and deceptive acts or practices. Had Pear and Florida Subclass members known that the Apple Watch contained a latent defect, they would not have purchase the Apple Watch or would have paid significant less for the Apple Watch. Among other injuries, Pear and Florida Subclass members overpaid for the Apple Watch, and their Apple Watch suffered a diminution in value.

433. Pear and the Florida Subclass members are entitled to recover their actual damages under Fla. Stat. § 501.211(2), and reasonable attorneys' fees under Fla. Stat. § 501.2105(1).

434. Pear also seeks an order enjoining Apple's unfair and deceptive acts or practices pursuant to Fla. Stat. § 501.211, and any other just and proper relief available under the FDUTPA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, respectfully request that this Court:

A. Determine that the claims alleged herein may maintained as a class action under Federal

Rule of Civil Procedure 23, and enter an order certifying the Class defined above and appointing Plaintiffs as Class representatives;

B.      Award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

C.      Award pre-judgment and post-judgment interest as provided by law;

D.      To the extent an adequate remedy at law does not exist: (a) grant appropriate equitable relief, including, without limitation, an order requiring Apple to adequately disclose the defective nature of the Watch; (b) enter an order or judgment enjoining Apple from making similar misrepresentations and omissions in the future or from continuing its unfair, unlawful, and fraudulent practice; and/or (c) grant such other equitable relief to which Plaintiffs and Class members are entitled.

E.      Award reasonable attorneys' fees and costs as permitted by law; and

F.      Grant such other and further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all issues triable as of right.

Dated: March 17, 2023

**CUNNINGHAM BOUNDS, LLC**
By: */s/ Lucy E. Tufts*
Lucy E. Tufts (admitted *Pro Hac Vice*)
let@cunninghambounds.com
Steven L. Nicholas (admitted *Pro Hac Vice*)
sln@cunninghambounds.com
Jenna Jayjohn York (admitted *Pro Hac Vice*)
jbj@cunninghambounds.com
1601 Dauphin Street
Mobile, AL 36604
Telephone: (251) 471-6191
Facsimile: (251) 479-1031

**KILBORN LAW, LLC**
Benjamin H. Kilborn, Jr. (admitted *Pro Hac Vice*)
benk@kilbornlaw.com
P.O. Box 2164
Fairhope, AL 36533
Telephone: (251) 929-4623

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6293

Ra O. Amen (admitted *Pro Hac Vice*)
Ramen@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

*Counsel for Plaintiffs and the Proposed Class*