UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| CHRIS SMITH, CHERYL SMITH, KAREN SMITHSON, JASON ROUSH, COREY POMROY, FRANK ORTEGA, ALBERTO CORNEA, MICHELLE ROGERS, JOSHUA BAYS, DEBORAH CLASS and AMBER JONES, individually and on behalf of all other similarly situated individuals,<br><br>        Plaintiffs,<br><br>    v.<br><br>APPLE INC.,<br><br>        Defendant. | Case No. 4:21-cv-09527-HSG (LB)<br><br>**DISCOVERY ORDER**<br><br>Re: ECF No. 65 |

## INTRODUCTION

This is a putative class action challenging a defect in Apple watches: the plaintiffs allege that sudden swelling of the watch batteries causes the screen to detach, shatter, or crack, exposing razor-sharp edges and leading to watch failure or user injury.[1] The plaintiffs want to show Apple's attorneys' eyes only (AEO) documents to the plaintiffs' experts.[2] The plaintiffs identified cases

---

[1] Order – ECF No. 80 at 1; Am. Compl. – ECF No. 31 at 2 (¶¶ 1–2). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF No. 64-1 at 2.

ORDER – No. 4:21-cv-09527-HSG (LB)

where their experts testified at deposition or trial, but Apple contends that the parties' protective order also requires the plaintiffs to identify matters where the experts provided declarations or professional services, and the plaintiffs have not done that.[3] The plaintiffs provided a list of all matters in the experts' firm for the past five years (a list that includes more matters than those the plaintiffs' experts worked on), contend that they can do no more without an eclipsing file-by-file review, and contend that nothing suggests any competitive risk to Apple.[4] The court sets forth a process to allow Apple more clarity but will not require a file-by-file review.

## STATEMENT

**1. The Protective Order and the Plaintiffs' Disclosures**

The parties' protective order has the following provision:

> 10. **NOTICE OF DISCLOSURE**
>
> (a) Unless otherwise ordered by the court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Expert (as defined in this Order) any information or item that has been designated "CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to Paragraph 9(b)(iii) first must make a written request to the Designating Party that (1) identifies the general categories of "CONFIDENTIAL – ATTORNEYS' EYES ONLY" information that the Receiving Party seeks permission to disclose to the Expert, (2) sets forth the full name of the Expert and the city and state of his or her primary residence, (3) attaches a copy of the Expert's current resume, (4) identifies the Expert's current employer(s), (5) identifies each person or entity from whom the Expert has received compensation or funding for work in his or her areas of expertise or to whom the expert has provided professional services, including in connection with a litigation, at any time during the preceding five years, and (6) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years.[5]

The two experts are Glen Stevick, Ph.D., P.E., and Rong Yuan, Ph.D., P.E., who work for Berkeley Engineering and Research, Inc. (BEAR). Both signed the protective order and agreed not

---

[3] Opp'n – ECF No. 67-3 at 6–7.

[4] Reply – ECF No. 71 at 7–9.

[5] Protective Order – ECF No. 62 at 11 (¶ 10(a)).

to use or divulge any confidential or AEO information disclosed to them under the protective order.[6] Both signed declarations that they have signed (and been bound by) scores of protective orders, have never been accused of violating them, and have no competitive decision-making authority — "defined as advice and participation in any or all of their decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor" — over any third party.[7]

On October 12, 2022, the plaintiffs disclosed all information required by section 10(a)(1)–(4) of the protective order. They provided a list of cases where their experts testified at deposition or trial in the last five years and a list of BEAR's clients for the past five years (1,553 in all). For 1,486 of the 1,553, they gave the name of the "end clients," meaning, the individual or entity that BEAR's paying client (usually a law firm or insurance company) represents. For 52 of the remaining 67 "end clients," the plaintiffs provided the names of both parties involved in the litigation. For the remaining 15, the plaintiffs provided the names of the law firms that retained BEAR and BEAR's unique case-identification number.[8] The list was compiled through BEAR's systems, is not sortable by expert, did not exist before Apple requested it, was compiled for this litigation, and took more than two weeks to produce at substantial time and cost.[9]

The plaintiffs did not disclose matters — other than depositions or trials — where the experts provided expert declarations, received compensation for work, or provided professional services.[10] Both experts have submitted declarations and reports in cases over the last five years, but they have no written record of cases where they have done so.[11] Thus, to provide a list of cases where the experts provided a declaration or a report, the experts would have to manually review the

---

[6] Curricula Vitae – ECF Nos. 65-8–65-9; Exs. A to Protective Order – ECF Nos. 65-1–65-2.

[7] Stevick Decl. – ECF No. 65-17; Yuan Decl. – ECF No. 65-18.

[8] Cover Email – ECF No. 65-3; Expert Info. – ECF Nos. 65-8–65-11; Tufts Decl. – ECF No. 65 at 3 (¶ 15); Client List, Ex. 14 to *id.* – ECF No. 64-2; Reply – ECF No. 71 at 6 (describing the list).

[9] Letter – ECF No. 65-16 at 3.

[10] *See* Expert Info. – ECF Nos. 65-8–65-11.

[11] Cover Email – ECF No. 65-3.

1,553 case files.[12] At the February 9, 2023, discovery hearing, the plaintiffs' counsel said that requiring that review would result in the loss of their experts (and the substantial funds that the plaintiffs have paid them to date).

## ANALYSIS

Apple contends that the BEAR client list is deficient under the express terms of the protective order because it does not identify whether the experts worked on particular matters, and it does not provide the case number, filing date, or court location.[13] Apple thus cannot identify whether the experts' prior work raises competitive concerns.[14] It is the subject of the lawsuit, not the identity of the law firm, that creates the risk. Apple provides this example: a law firm might have hired BEAR to work on a case where the firm represented another watch manufacturer. Information related to the watch manufacturer, not the law firm, creates the competitive risk to Apple. Apple wants to evaluate whether the experts worked with Apple's competitors and their products.[15] The plaintiffs' incomplete information prevents Apple from determining the products (if any) involved in any particular matter or whether the parties worked for or are related to Apple's competitors.[16]

Apple excerpts part of the plaintiffs' list to show its lack of utility.[17] Because the list is under seal, this is a version of the excerpt with mocked-up names:

| BEAR Case Name | BEAR's Client | End Client |
| --- | --- | --- |
| Smith v. Doe et al. | The Phelps Law Firm | Not provided |
| AAI v. Beck | Grady, Rock, and Doe LLP | Fortress Insurance Company |
| Joe Black | Beckett & Cross LLP | Joe Black |
| Miller v. LTSP, Inc. | Beckett & Cross LLP | Miller |
| James, Peter | Johnson & Crockett LLP | Peter James |

---

[12] Mot. – ECF No. 64-1 at 11–12.

[13] Opp'n – ECF No. 67-3 at 8.

[14] *Id.* at 9.

[15] *Id.* at 10–11.

[16] *Id.* at 9.

[17] *Id.*

Apple contends that because the plaintiffs did not provide the so-called end clients or the case name, filing number, date, or court location, as required by the protective order, it would need to figure out the case name and review at least the complaint.[18] Apple also proposed compromises such the experts' identifying cases involving battery-related matters or Apple's identifying a subset of the list for review.[19] It says that the plaintiffs countered that Apple should provide a list of its competitors for the experts to review to see whether they worked for the competitors.[20] Apple resists providing a competitor list because the protective order does not require it.[21] The plaintiffs counter that a review of the list shows that no Apple competitor is on the list, a manual review of 1,553 files is inordinately burdensome and pointless, the experts' best recollection of their cases for the past five years would be incomplete (which is why the plaintiffs produced the list), and the list shows that the "end clients" are individual consumers who pose no competitive risk to Apple.[22]

In sum, Apple resists disclosure of its AEO material to the plaintiffs' experts only on the basis that the plaintiffs did not provide information required by the protective order. It "has not objected to the disclosure of AEO information based on a potential competitive relationship." (It says that it "does not have the information necessary to make that determination."[23]) The plaintiffs counter that they have provided all that they can and that there is no risk to Apple: Apple has identified no potential competitor from the list, the list does not contain any of Apple's competitors, the experts have no competitive decision-making role and promise to abide by the protective order's protections, and Apple really is trying to shut down the plaintiffs' ability to use their experts without any good reason to do so.[24] The issue thus is whether the plaintiffs' proposal to show Apple's AEO to its experts would violate the protective order.

---

[18] *Id.* at 9–10.

[19] *Id.* at 12–13.

[20] *Id.* at 13.

[21] *Id.* at 13–14.

[22] Reply – ECF No. 71 at 7–9.

[23] Opp'n – ECF No. 67-3 at 16.

[24] Reply – ECF No. 71 at 7–12.

1    "To determine whether or not a protective order has been violated, courts focus on the terms of
2    the protective order itself." *Rheumatology Diagnostics Lab'y, Inc. v. Aetna, Inc.*, No. 3:12-cv-
3    05847-WHP, 2015 WL 1744330, at *10 (N.D. Cal. Apr. 15, 2015) (cleaned up). "A protective order
4    should be read in a reasonable and common sense manner so that its prohibitions are connected to
5    its purpose." *Id.* (cleaned up). Here, the relevant purpose is that the parties use information
6    discovered in this case solely for purposes of this case.[25]

Importantly, Rule 26(c) authorizing protective orders "underscores the extensive control that district courts have over the discovery process." *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 369 (9th Cir. 1982). Thus, "a court may be as inventive as the necessities of a particular case require in order to achieve the benign purposes of the rule." *Id.* (quoting 8A Wright & Miller, Fed. Prac. & Proc., Deps. & Disc. § 2036). This wide discretion "to prescribe such terms and conditions as may be just" also entails "discretion to make changes in [a protective] order for those purposes, upon a proper showing." *Martin v. Reynolds Metals Corp.*, 297 F.2d 49, 57 (9th Cir. 1961).

Here, there is a compromise short of standing on the protective order's terms when those terms are not achievable except by a per-file review that is unlikely to reveal actual information about whether the experts' prior work raises competitive concerns (Apple's asserted objective).[26] The court reviewed the list: nothing identifies a potential competitor. The plaintiffs contend that to the contrary, these are individuals who pose no competitive risk. There are ways to achieve more clarity. While — as the plaintiffs point out — the experts' recollection is imperfect, it at least is testable.[27] Apple identifies competitive risk as other watch manufacturers.[28] Conceivably, the experts could have some recollection about whether they worked on projects involving watch manufacturers. Apple could identify other areas of competitive risk. It could identify particular competitors or a subset of the files. (The last might be too onerous, but it might not be.)

---

[25] Protective Order – ECF No. 62 at 2 (¶ 1(a)).
[26] Opp'n – ECF No. 67-3 at 9.
[27] Reply – ECF No. 71 at 7–8.
[28] Opp'n – ECF No. 67-3 at 10–11.

ORDER – No. 4:21-cv-09527-HSG (LB)        6

The court will allow Apple the opportunity for more clarity, but on this record, will not — effectively — preclude the plaintiffs from using their experts. Apple's citation to *Cadence Pharmaceuticals, Inc. v. Fresenius Kabi USA, LLC*, does not suggest a different conclusion. No. 13cv139-DMS (MDD), 2013 WL 12076534 (S.D. Cal. Dec. 10, 2013).[29] The protective order there required advance disclosure of experts and "a list of all companies with which the individual has consulted or by which the individual has been employed within the last six years and the time period(s)." *Id.* at *1. The expert refused to produce the names of the companies, claiming that confidentiality agreements prohibited their disclosure. *Id.* He declared that he did not know about the plaintiff before his retention as an expert, he had not consulted with any expert regarding the drug at issue in the case, and his consulting work had not exposed him to any confidential information. *Id.* That was not enough to overcome the provision in the protective order. *Id.* at *2. But that case involved a refusal to produce known information. By contrast, the information here is unknowable without a manual review of 1,553 files that seems unlikely to provide relevant information. At the least, there other avenues that can provide more illumination.

On the one hand, Apple is entitled under the protective order to more information to assess any competitive risk associated with providing AEO information to the plaintiffs' experts. On the other hand, the ultimate issue is the seemingly unlikely prospect that the experts will disclose Apple's confidential information to Apple's competitors, and an unforeseen logistical difficulty in perfectly complying with the existing protective order should not necessarily force the unjust result of precluding the plaintiffs from using their experts. That is, although Apple's concerns are legitimate, a protective order is not immutable where "the necessities of a particular case require" otherwise. *Columbia Broad. Sys.*, 666 F.2d at 369; *Martin*, 297 F.2d at 57.

Thus, within two weeks, Apple must provide any additional information — whether that is competitor information, areas of concern (such as other watch manufacturers, batteries, or other products), or a subset of the files — for the experts and the plaintiffs to consider. If there is inordinate burden, the plaintiffs can raise it. But it seems likely that the experts can submit

---

[29] *Id.* at 11–12.

1  supplemental declarations to address Apple's concerns. They must do so within two weeks after

2  Apple provides its additional information.

3  This disposes of ECF No. 65.

4  **IT IS SO ORDERED.**

5  Dated: March 19, 2023

LAUREL BEELER
United States Magistrate Judge