UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS SMITH, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>APPLE, INC.,<br><br>    Defendant. | Case No. 21-cv-09527-HSG<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL**<br><br>Re: Dkt. No. 155 |

Pending before the Court is Plaintiffs' unopposed motion for preliminary approval of class action settlement. *See* Dkt. No. 155. The Court held a hearing on the motion, and now **GRANTS** it.

I.     **BACKGROUND**

    **A.**     **Factual Allegations**

This is a putative class action brought on behalf of purchasers of Apple Watches ("Plaintiffs"). *See* Dkt. No. 136 ("TAC") ¶ 1. Plaintiffs allege that First Generation, Series 1 through Series 6, and Series SE Apple Watches contain "an undisclosed and unreasonably dangerous safety hazard." *Id.* ¶ 2. More specifically, Plaintiffs allege that sudden swelling of the watch batteries can cause the screen to detach, shatter, or crack, "exposing its razor-sharp edges and leading to operational failure of the Watch and/or personal injuries . . . ." *Id.* Plaintiffs allege that Apple ("Defendant") failed to allocate sufficient space within the watch to prevent the screen issue, "[d]espite knowing that the battery inside the Watch can suddenly swell." *Id.* Plaintiffs further allege that the watches have injured Plaintiffs and putative class members, creating a "substantial and material risk of serious injury, including lacerations, cuts, abrasions, and other injuries." *Id.* ¶¶ 5–6.

Plaintiffs filed their initial complaint in December 2021, Dkt. No. 1, and an amended complaint in March 2022. Dkt. No. 31. Defendant then filed a motion to dismiss the amended complaint, which this Court granted in part and denied in part. Dkt. No. 80. Plaintiffs filed a second amended complaint in March 2023, and Defendant again moved to dismiss. *See* Dkt. Nos. 84, 100. The Court granted Plaintiffs' request to file a Third Amended Complaint and mooted the second motion to dismiss. Dkt. No. 134.

The operative complaint asserts the following causes of action against Defendant: violations of the California Unlawful Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"); violations of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"); fraud by omission under various state laws; violations of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790 *et seq.*; and violations of consumer protection and unfair competition laws in New York, Texas, and Florida. *See* FAC ¶¶ 295–396.

In August 2024, Plaintiffs filed their motion for preliminary approval, and the Court held a hearing on the motion and took it under submission on October 3, 2024. *See* Dkt. Nos. 155, 159. The Court subsequently directed the parties to submit additional evidence including: 1) a sufficiently detailed estimate of the potential class recovery at trial; and 2) the actual terms of the provision that triggers Defendant's ability to reject the settlement agreement. *See* Dkt. 160 at 1–2. The parties submitted timely responses. *See* Dkt. Nos. 161, 162.

**B.     Settlement Agreement**

In November 2023, the parties participated in a full-day mediation with mediator Randy Wulff. *See* Dkt. No. 155-2, Tufts Decl. ¶ 8. The parties ultimately entered into a settlement agreement. *See* Dkt. No. 155-1. The key terms are as follows:

<u>Class Definition</u>: The Settlement Class is defined as "all natural persons who reside in the United States, who own or owned any model First Generation, Series 1, Series 2 or Series 3 Apple Watch (i.e. "Covered Devices") for personal and/or household use, and who are reflected in Apple's records as having reported Covered Issues in the United States," between April 24, 2015, and February 6, 2024. Dkt. No. 155-1 ("Settlement Agreement," or "SA") at 1 ¶ 24. "Covered Issue(s)" are defined as "issues reported to Apple regarding the Covered Watches reflected in

2

Apple's records as having reported symptoms potentially associated with battery swell." *Id.* ¶ 24.

<u>Settlement Benefits</u>:  Defendant will make a $20,000,000 non-reversionary payment.  SA at 1 ¶ 27.  This gross settlement fund will cover Court-approved attorneys' fees and costs, settlement administration fees, incentive payments to the Lead Plaintiff and the other named Plaintiffs, and payments to class members.  *Id.* at § B.2.  Class members who make a payment selection by the response deadline, or whose valid, current payment information is confirmed by the Settlement Administrator, will receive either $20 for each Covered Device or, if necessary, a pro rata portion of the settlement fund less than $20.  *Id.* at § B.4.  If there is more than $50,000 remaining in the settlement fund after all costs have been allocated, class members may receive up to $50 per Covered Device.  *See id.*  The parties propose that any remaining funds would go to the Rose Foundation's Consumer Products Fund as the *cy pres* recipient. SA § B.9.

<u>Release</u>:  The Named Plaintiffs and the Settlement Class release and discharge Defendant and its subsidiaries from:

> "any and all damages, suits, claims, debts, demands, assessments, obligations, liabilities, attorneys' fees, costs, expenses, rights of action and causes of action, of any kind or character whatsoever, whether based on contract (express, implied, or otherwise), statute, or any other theory of recovery, and whether for compensatory or punitive damages, and whether known or unknown, suspected or unsuspected, occurring before the Effective Date of the Settlement (the "Released Matters") arising out of or related to the claims made in this Lawsuit. This release will include claims relating to the Released Matters of which the Releasing Parties are presently unaware or which the Releasing Parties do not presently suspect to exist which, if known to the Releasing Parties, would materially affect the Releasing Parties' release of the Apple Released Parties."

SA § H.1.  Notice to class members will include the following language:

> "Unless you exclude yourself with an opt-out request (see Question ___), you cannot sue, continue to sue, or be part of any other lawsuit against Apple arising out of or related to the claims in this case. The "Releases" section in the Settlement Agreement describes the legal claims that you give up if you remain a Settlement Class Member. The Settlement Agreement can be viewed at www.watchsettlement.com."

SA, Ex. C, at 33.

<u>Incentive Award</u>:  Class counsel may apply for an incentive award for the lead Named Plaintiff of no more than $5,000, and for awards for the ten remaining Named Plaintiffs of up to

3

$2,000 each.  SA § G.1.

<u>Attorneys' Fees and Costs</u>:  The Settlement Agreement does not provide for an agreed-upon amount of attorney's fees and costs.  SA § G.2.  Plaintiffs' motion for preliminary approval states that Plaintiffs' counsel will request up to $5,000,000 in attorneys' fees.  Dkt. No. 155 ("Mot.") at 14.[1]

<u>Opt-Out Procedure</u>:  Class members must object to the Settlement Agreement or opt out (via regular mail or the settlement website) within 60 days after the date that the mailing date of the email and postcard notice.  SA § G.2; 1 ¶ 24.  In addition, Defendant may reject the settlement if "the number of Settlement Class members who elect to exclude themselves from the Settlement Class exceeds the threshold agreed to by the Parties and confidentially submitted to the Court *in camera*."  *Id.* § E.6.

## II. PROVISIONAL CLASS CERTIFICATION

The plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011).  Class certification is a two-step process.  *First*, a plaintiff must establish that each of the four requirements of Rule 23(a) is met:  numerosity, commonality, typicality, and adequacy of representation.  *Id.* at 349.  *Second*, it must establish that at least one of the bases for certification under Rule 23(b) is met.  Where, as here, a plaintiff seeks to certify a class under Rule 23(b)(3), it must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

"The criteria for class certification are applied differently in litigation classes and settlement classes."  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) ("*Hyundai II*").  When deciding whether to certify a litigation class, a district court must consider manageability at trial.  *Id*.  However, this concern is not present in certifying a settlement class.

---

[1] For ease of reference, the Court refers to the PDF pages rather than the document's internal pagination unless otherwise noted.

4

1    *Id*. at 556–57.  In deciding whether to certify a settlement class, a district court "must give

2    heightened attention to the definition of the class or subclasses."  *Id*. at 557.

### A.     Rule 23(a) Certification

The Court finds that all the requirements of Rule 23(a) are met:

- **Numerosity.**  Joinder of the hundreds of thousands of estimated class members would be impracticable.  *See* Mot. at 15 (estimating over 600,000 class members).
- **Commonality.**  Common questions of law and fact include whether the Covered Devices were defective, whether the alleged defect caused the Covered Devices to fail, and whether Defendant had knowledge of the alleged defect but failed to disclose it.  *See* Dkt. No. 155 at 15–16.
- **Typicality.**  Plaintiffs' claims are both factually and legally similar to those of the putative class because all class members purchased the Covered Devices and reported a Covered Issue to Defendant.  *See* SA at 1 ¶ 24.
- **Adequacy of Representation.**  The Court is unaware of any actual conflicts of interest in this matter and no evidence in the record suggests that either Plaintiffs or counsel have a conflict with other class members.  Plaintiffs' counsel has been appointed class counsel in numerous federal and state class actions.  Dkt. Nos. 155-2 ¶ 4; 155-3 ¶¶ 4–12; 155-4 ¶¶ 3–4.  The Court finds that proposed class counsel and Plaintiffs have prosecuted this action vigorously on behalf of the class to date and will continue to do so.

### B.     Rule 23(b)(3)

The Court also finds that the predominance and superiority requirements of Rule 23(b)(3) are met:

- **Predominance.**  The Court concludes that for purposes of settlement, common questions predominate here because Plaintiffs and the settlement class members all purchased the same products from Defendant and allegedly experienced and reported the same defect.  In addition, the Court at this stage need not analyze whether any differences in the state laws underlying some of Plaintiffs' claims

prevent provisional class certification. *See Hyundai II*, 926 F.3d at 561–62 (holding that district courts do not need "to address choice-of-law issues beyond those raised by objectors" before certifying a settlement class).

- **Superiority.** Especially given the relatively modest value of the individual claims here, class action enables the most efficient use of Court and attorney resources and reduces costs to the class members by allocating costs among them. Further, this forum is appropriate, and there are no obvious difficulties in managing this class action.

### C. Class Representative and Class Counsel

Because the Court finds that the Plaintiffs meets the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiffs as Class Representatives. When a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). Counsel have investigated and litigated this case throughout its existence and have submitted declarations detailing their expertise in representing plaintiffs in class action suits, especially product liability and consumer class actions. Dkt. Nos. 155-2 ¶ 4; 155-3 ¶¶ 4–12; 155-4 ¶¶ 3–4. Accordingly, the Court appoints Cunningham Bounds LLC, Morgan & Morgan Complex Litigation Group, and Kilborn Law, LLC as Class Counsel. *See* Fed. R. Civ. P. 23(g)(1)(A) (listing factors courts must consider when appointing class counsel).

## III. PRELIMINARY SETTLEMENT APPROVAL

Finding that provisional class certification is appropriate, the Court considers whether it should preliminarily approve the parties' class action settlement.

### A. Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair,

6

adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quotations omitted). Such settlement agreements "'must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.'" *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). A more "exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id.* (quotations omitted).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement:  (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted). Courts lack the authority, however, to "delete, modify or substitute certain provisions.  The settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026.

### B. Analysis

#### i. Evidence of Conflicts and Signs of Collusion

The first factor the Court considers is whether there is evidence of collusion or other conflicts of interest. *See Roes*, 944 F.3d at 1049.  The Ninth Circuit has directed district courts to look for "subtle signs of collusion," which include whether counsel will receive a disproportionate distribution of the settlement, whether the parties negotiate a "'clear sailing' arrangement (*i.e.*, an arrangement where defendant will not object to a certain fee request by class counsel)," and whether the parties agree to a reverter that returns unclaimed funds to the defendant. *Id.*

Here, Plaintiffs' motion for preliminary approval states that Plaintiffs' counsel will request up to $5,000,000 in attorneys' fees.  Mot. at 14.  Although the Court will determine the

appropriate amount of fees and awards at final approval, the Court finds that because this proposed amount reflects the Ninth Circuit benchmark for an attorneys' fees award, it is not so disproportionate as to raise concerns, at least at the preliminary approval stage. *See*, *e.g.*, *In re Bluetooth Headset*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). Further, there is no clear sailing agreement: the Settlement Agreement "entitles Class Counsel to apply for reasonable attorneys' fees and expenses" while reserving Defendant's right to object to or oppose any such request. *See* SA § G.2. And the proposed settlement is non-reversionary. *See id*. § B.9. The agreement provides that any unclaimed funds remaining after the final distribution of the settlement fund, taking into account any increased payments to class members up to $50 per Covered Device, will first be used to pay unanticipated additional costs of settlement administration, and the remainder will be paid to the *cy pres* recipient. *See id.* Finally, while Defendant may reject the settlement if the number of exclusions from the settlement class exceeds a certain threshold agreed to by the parties, *id.* § E.6, the Court reviewed this amount *in camera* and finds it reasonable at this stage.

### ii.  Preferential Treatment

The Court next considers whether the Settlement Agreement provides preferential treatment to any class member. The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth*, 654 F.3d at 947. For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grant[s] preferential treatment to class representatives." *Lenovo*, 2018 WL 6099948, at *8 (quotations omitted).

The Settlement Agreement authorizes Lead Plaintiff to apply for an incentive award of up to $5,000 for his role in this lawsuit and authorizes each of the remaining Named Plaintiffs (ten in total) to apply for awards up to $2,000. *See* SA § G.1. The Court will ultimately determine whether any of these individuals are entitled to such an award and the reasonableness of the amount requested. Incentive awards "are intended to compensate class representatives for work

done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Plaintiffs must provide sufficient evidence to allow the Court to evaluate their awards "individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . .'" *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). The Court will consider the evidence presented at the final fairness hearing and evaluate the reasonableness of any incentive award request. Nevertheless, because incentive awards are not per se unreasonable, the Court finds that this factor weighs in favor of preliminary approval. *See Rodriguez*, 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in class action cases" and "are discretionary" (emphasis omitted)).

### iii. Settlement within Range of Possible Approval

The third factor the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*, 2018 WL 6099948, at *8. This requires the Court to evaluate the strength of Plaintiffs' case.

As an initial matter, the Court notes that the claims alleged in the operative complaint are broader than those released under the parties' agreement. In their operative complaint, Plaintiffs bring claims related to First Generation, Series 1 through Series 6, and Series SE Apple Watches. *Id.* ¶ 2. However, the Settlement Agreement defines the Settlement Class as purchasers of First Generation, Series 1, Series 2 or Series 3 watches only. SA at 1 ¶ 24. Plaintiffs' counsel explains that the parties narrowed the class definition after determining through discovery that the incidence of symptoms associated with battery swell was significantly lower in later generations of the Apple Watch. As a result, Defendant's records reflect that a much smaller percentage of owners of these later models reported battery swelling symptoms. Mot. at 24. As such, expanding the class would not have meaningfully increased recovery to the class. *Id.* Further, given the narrower definition of the class and the scope of the Release in the agreement, purchasers of the later Apple Watch models are not releasing any claims under the settlement.

9

*See id.*; SA § H.1.  The Court finds this explanation reasonable in considering whether to grant preliminary approval.

Plaintiffs' motion for preliminary approval did not include an estimate of the potential class recovery at trial, instead asserting generally that trial "carried considerable risk of a lesser recovery or none at all."  *See* Dkt. 155 at 17.  Plaintiffs' supplemental brief now provides two different analyses of the potential damages that could be recovered at trial.  *See* Dkt. No. 161 at 3–4.  First, Plaintiffs conducted a "choice-based conjoint" analysis, which they describe as a calculation of "how much of a discount a consumer would have demanded if they had known a feature they were promised was defective."  *See id.* at 3; *see In Re Macbook Keyboard Litigation*, No. 5:18-CV-02813-EJD, 2021 WL 1250378, at *5 (N.D. Cal. Apr. 5, 2021) ("Choice-based conjoint ('CBC') analysis is a well-recognized economic method used to study and quantify consumer preferences.").  According to this analysis, consumers would have required a discount of approximately $156 per unit had they known of the alleged defect.  *See id.*  However, Plaintiffs maintain that because the analysis is based on results in a survey in which consumers are asked to assume the defect was certain to occur, the final damages amount would be "far less" than $156 per class member after accounting for an unspecified "actual probability of occurrence."  *See id.* at 3.

The other potential damages analysis Plaintiffs submit is based on a service cost of $79, which is the amount that Apple Watch owners pay for service of battery issues if they are not AppleCare+ subscribers.  *See* Dkt. No. 161 at 3.  Using this amount, the potential damages recovery would be almost $50,000,000 if all of the 625,000 individuals who reported symptoms potentially associated with battery swell paid $79 to Defendant.  *Id.* at 3–4.  But according to Plaintiff, the actual total spent on service costs would be less because "[s]ome consumers" received a free replacement watch or screen.  *Id.* at 4.

Finally, Plaintiffs argue that continuing the litigation would pose "significant risks" to their ability to certify the settlement class and prevail at trial because Defendant strongly denies liability and would mount a rigorous defense to Plaintiffs' claims.  Mot. at 21, 24.  Under the settlement, class members will be able to receive payments without having to file a claim.  *See*

10

SA § B.3.

Based on Plaintiffs' submission, even without any further reductions that likely would apply if the case proceeded, the settlement provides approximately 40% of the possible recovery using the service costs model, or at least $20 and up to $50 of the $156 overpayment reflected in the CBC analysis. Given the substantial risks that Plaintiffs identify if the case were to go forward, the Court finds that the settlement amount is reasonable and weighs in favor of granting preliminary approval.

### iv.  Obvious Deficiencies

The Court also considers whether there are obvious deficiencies in the Settlement Agreement. The Court finds no obvious deficiencies, and therefore finds that this factor weighs in favor of preliminary approval.

\*        \*        \*

Having weighed the relevant factors, the Court preliminarily finds that the Settlement Agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval. The Court **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when submitting their motion for final approval. The proposed order should thoroughly address all of the topics set forth in the Northern District's Procedural Guidance for Class Action Settlements.[2] The parties should also review this Court's recent orders granting final approval of class action settlements and draft their proposed order accordingly.[3]

//

//

//

//

---

[2] *See* N.D. Cal. Procedural Guidance for Class Action Settlements, https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ (updated Sept. 5, 2024).

[3] *See, e.g.*, *Smith v. Keurig Green Mountain, Inc.*, No. 18-CV-06690-HSG, 2023 WL 2250264 (N.D. Cal. Feb. 27, 2023); *Chess v. Volkswagen Grp. of Am., Inc.*, No. 17-CV-07287-HSG, 2022 WL 4133300 (N.D. Cal. Sept. 12, 2022).

## IV. PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct to the class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Individual notice must be sent to all class members "whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). District courts have "broad power and discretion vested in them by [Rule 23]" in determining the contours of appropriate class notice. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979).

With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members[.]

Fed. R. Civ. P. 23(c)(2)(B).

The parties have agreed that a third-party settlement administrator, Angeion Group, will send the class notice. SA § F.1. Defendant will provide the Settlement Administrator will the names and last known mailing and/or email addresses for class members. *Id.* at § F.3. The Settlement Administrator will then send the class notice via email to class members for whom Defendant provided an email address, and via direct mail postcard for members for whom Defendant provided a physical address, but not an email address. *Id.* at § F.4. Before sending the postcard notice, the Settlement Administrator will update physical addresses with the National Change of Address database, and any postcard notices returned as undeliverable will be re-mailed to a forwarding address. *Id.* at § F.5.d. In the event that this email and postcard notice process reaches less than 90% of the class, the Settlement Administrator will provide supplemental direct mail notice to class members whose emails returned a hard bounce back and for whom a mailing address can be located, at least thirty days prior to the Objection and Exclusion Deadline. *See id.*

1    Finally, the Settlement Administrator will also maintain a website that will include the class
2    notice, publicly filed papers related to the case, and additional information, and will establish a
3    toll-free phone number that class members can contact. *Id.* at § F.5.a–b.
4        The Court finds that the proposed notice process is "reasonably calculated, under all the
5    circumstances, to apprise all class members of the proposed settlement." *Roes*, 944 F.3d at 1045
6    (quotation omitted).
7        As to the substance of the notice, the parties have attached a copy of the full proposed class
8    notice to the Settlement Agreement. *See* Dkt. No. 155-1, Ex. C.[4]  This notice will be posted on the
9    settlement website. *Id.* at § F.5.a.  The parties have also provided copies of the proposed email
10   notice, *see id.*, Ex. A, and proposed postcard notice, *see id.*, Ex. B.  All of the notices explain the
11   nature of the action and claims, define the class, and inform class members about what payment
12   they will receive and how to opt out of or object to the Settlement Agreement. *See id.*
13       However, only the full class notice informs class members that they may object to the
14   motion for attorneys' fees and motion for incentive awards; the email and postcard notices do not
15   include this information, and instead only generally state that class member make "exclude
16   [themselves] or object." *See* Dkt. No. 155-1, Ex. A, at 22; Ex. B, at 25.  To better enable class
17   members to understand that they may specifically object to these motions in addition to the
18   proposed settlement, Class Counsel shall include language in the email and postcard notice:
19   (1) specifically stating that class members may object to the attorneys' fees motion and request for
20   Plaintiffs' incentive awards; (2) specifically stating the deadlines for filing these motions and for
21   any class member objections to them; and (3) informing class members how to access the motions
22   and supporting materials. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993–94
23   (9th Cir. 2010) (holding that under Rule 23(h), class members must be given a full and fair
24   opportunity to examine and object to attorneys' fees motion).

---

[4] The Settlement Agreement indicates that the full notice is attached as Exhibit A to the Settlement Agreement, Dkt. No. 155-1, the email notice is attached as Exhibit B, and the postcard notice is attached as Exhibit C. *See* SA at 1 ¶ 12; *id.* § F.5.c, d.  But based on the content of the notices, it appears that Exhibit A is the email notice, Exhibit B is the postcard notice, and Exhibit C is the full class notice.

13

1       In addition, one statement in the proposed full class notice, Dkt. No. 155-1, Ex. C,
2   contradicts Plaintiffs' representations in the motion for preliminary approval.  The full class notice
3   states that "Class Counsel may ask the Court for an award of attorneys' fees of up to 30% of the
4   Settlement Fund, litigation expenses, and service awards to the Class Representatives of up to
5   $5,000 each." *Id.* at 34.  But the motion indicates that Plaintiffs' counsel "will apply for no more
6   than $5,000,000 in attorneys' fees, plus costs and expenses," or 25% of the $20 million settlement
7   fund (not 30%).  Mot. at 14.  Further, according to the motion (and the Settlement Agreement),
8   counsel will request up to $5,000 for the Lead Plaintiff, but only up to $2,000 for each of the
9   remaining Named Plaintiffs.  *Id.*; SA § G.1.  Class counsel must conform the language in the full
10  class notice to correct these inconsistencies and accurately reflect the amount of attorneys' fees
11  and awards Plaintiffs' counsel may request.
12      The Court finds that with these changes, the content of the proposed notice provides
13  sufficient information about the case and thus conforms with due process requirements.  *See*
14  *Hyundai II*, 926 F.3d at 567 ("Notice is satisfactory if it generally describes the terms of the
15  settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come
16  forward and be heard." (quotation omitted)).

## V.     CONCLUSION

The Court **GRANTS** the motion for preliminary approval.  Dkt. No. 155.  The parties are **DIRECTED** to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court within seven days of the date of this Order.

//
//
//
//
//
//
//
//

14

| Event | Date |
|---|---|
| Deadline for Settlement Administrator to mail notice to all putative Class Members | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for Class Members to opt-out or object to settlement and/or application for attorneys' fees and costs and incentive payment, at least 45 days after the filing of the motion for attorneys' fees and incentive payments | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan with the edits identified above.

**IT IS SO ORDERED.**

Dated:  October 25, 2024

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

15