CUNNINGHAM BOUNDS, LLC
Steven L. Nicholas (*admitted pro hac vice*)
sln@cunninghambounds.com
Lucy E. Tufts (*admitted pro hac vice*)
let@cunninghambounds.com
1601 Dauphin Street
Mobile, AL 36604
Telephone: (251) 471-6191

KILBORN LAW, LLC
Benjamin H. Kilborn, Jr. (*admitted pro hac vice*)
benk@kilbornlaw.com
P.O. Box 2164
Fairhope, AL 36533
Telephone: (251) 929-4620

MORGAN & MORGAN
COMPLEX LITIGATION GROUP
Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913

*Attorneys for Plaintiffs and the Settlement Class*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS SMITH, CHERYL SMITH, KAREN SMITHSON, ALBERTO CORNEA, FRANK ORTEGA, MICHELLE ROGERS, DEBORAH CLASS, AMBER JONES, ALEXIS KEISER, LOORN SALEE, THOMAS PEAR, and TANNAISHA SMALLWOOD, individually and on behalf of all other similarly situated individuals,<br><br>              Plaintiffs,<br>v.<br><br>APPLE INC.,<br>              Defendant. | No. 4:21-cv-09527-HSG<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Hon. Haywood S. Gilliam, Jr.<br>Date: April 10, 2025<br>Time: 2:00 p.m.<br>Dept.: Courtroom 2 |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 1

I.     INTRODUCTION ........................................................................................................ 1

II.    ARGUMENT ............................................................................................................... 4

    A.  The Court should grant Class Counsel's requested fees and costs .......................... 4

        1.  Class Counsel are entitled to seek a fee award from the common fund ................................................................................................................... 4

        2.  Class Counsel's requested fees are reasonable and justified ............................ 6

            i.    Class Counsel's requested fee is reasonable under the percentage-of-the-recovery analysis ................................................................................ 7

                a.  Class Counsel achieved exceptional results for the class ............... 8

                b.  Class Counsel bore the considerable risks of this litigation and handled it on a contingency basis ........................................... 10

                c.  Class Counsel accepted significant burdens to pursue this litigation ...................................................................................... 12

            ii.   Class Counsel's requested fees are reasonable under a lodestar cross-check ........................................................................................... 15

                a.  Class Counsel's hours are reasonable ............................................ 15

                b.  Class Counsel's billing rates are reasonable ................................. 17

                c.  Class Counsel's requested fees represent a negative multiplier .................................................................................... 18

        3.  Class Counsel's expenses are reasonable ..................................................... 20

    B.  The Court should grant Plaintiffs' requested service awards ............................... 21

III.   CONCLUSION ......................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Andrews v. Plains All Am. Pipeline L.P.*, 2022 WL 4453864, *3
  (C.D. Cal. Sept. 20, 2022) ................................................................. 12

*Bakhtiar v. Info. Res., Inc.*, 2021 WL 4472606, at *8 (N.D. Cal. Feb. 10, 2021) .................... 7

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015) ...... 10, 16, 19, 22

*Bernstein v. Virgin Am., Inc.*, 2023 WL 7284158, at *2 (N.D. Cal. Nov. 3, 2023) ................. 7

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ............................................. 5

*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).................................... 17

*Destefano v. Zynga, Inc.*, 2016 WL 537946, at *16 (N.D. Cal. Feb. 11, 2016) ...................... 6

*Di Giacomo v. Plains All Am. Pipeline*, 2001 WL 34633373, *10-11 (S.D. Fla. Dec. 19,
  2001)................................................................................................ 20

*Fischel v. Equitable Life Assur. Soc'y of the United States*, 307 F.3d 997, 1009
  (9th Cir. 2002) ................................................................................ 11

*Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) .............. 17

*Floyd v. First Data Merch. Servs. LLC*, 2022 WL 6173122, at *6 (N.D. Cal.
  Oct. 7, 2022) ................................................................................... 20

*Galeener v. Source Refrigeration & HVAC, Inc.*, 2015 WL 12977077, at *2 (N.D. Cal. Aug.
  21, 2015)......................................................................................... 19

*Grace v. Apple, Inc.*, No. 5:17-cv-00551-LHK, Dkt. No. 456, *6 (N.D. Cal. 2021).............. 9

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) .................................. 9

*Haag v. Hyundai Motor Am.*, 2019 WL 1029002, at *4 (W.D.N.Y. Mar. 5, 2019) .............. 11

*Horvath v. LG Electronics MobileComm U.S.A., Inc.*, No. 3:11-cv-01576, Dkt. No. 101
  (S.D. Cal. Jan. 14, 2014) ................................................................. 9

*Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, *14 (N.D. Cal. Dec. 18, 2018)............... 17

*Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, *4 (N.D. Cal. Feb. 6, 2013).................... 18

*iPod Nano Cases*, Case No. BC342056 (Los Angeles Super. Ct.) ............................................9

*In re Apple iPhone 4 Prod. Liab. Litig.*, 2012 WL 3283432, at *1 (N.D. Cal. Aug. 10, 2012) ....................................................................................................................................8

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) ...........4, 5, 18

*In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *2 (N.D. Cal. Sept. 21, 2018)...........6

*In re Haier Freezer Consumer Litig.*, 2013 WL 2237890, *4 (N.D. Cal. 2013) ...................12

*In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, 2005 WL 1594403, *19 (C.D. Cal. June 10, 2005) ........................................................................................................9

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 571 (9th Cir. 2019).............................5

*In re Lenovo Adware Litig.*, 2019 WL 1791420, at *8 (N.D. Cal. Apr. 24, 2019) ..................7

*In re Lithium Ion Batteries Antitrust Litig.*, 2018 WL 3064391, at *1 (N.D. Cal. May 16, 2018)........................................................................................................................................8

*In re MacBook Keyboard Litig.*, 2023 WL 3688452, *13 (N.D. Cal. 2023)..................6, 7, 18

*In re Magsafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD, Dkt. Nos. 238, 247 (N.D. Cal.)................................................................................................................................9

*In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995)..................20

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010)......................4

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015)....................7

*In re Seagate Tech. LLC*, 326 F.R.D. 223, 245 (N.D. Cal. 2018) ..........................................12

*In re Toys R Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 470–72 (C.D. Cal. 2014) ...........22

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 2672, 2017 WL 1047834, *5 (N.D. Cal. Mar. 17, 2017) ..............................................................17

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ....................................................................................................................5, 10

*In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 519 (N.D. Cal. 2020)..................................................................................................................7, 16, 19

iv

*In re Xcel Energy, Inc., Sec., Derivative & "'ERISA" Litig.*, 364 F. Supp. 2d 980, 998-99 (D. Minn. 2005) ..................................................................................................................20

*In re Zoom Video Commc'ns, Inc. Priv. Litig.*, 2022 WL 1593389, at *12 (N.D. Cal. Apr. 21, 2022) ......................................................................................................................22

*Kakani v. Oracle Corp.*, 2007 WL 4570190, *4 (N.D. Cal. Dec. 21, 2007) ..........................11

*Korean Air Lines Co. Antitrust Litig.*, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013)....6

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) ....................20

*Manier v. Sims Metal Mgmt.-Northwest*, No. 19-cv-00718, 2022 WL 20184566, at *2 (N.D. Cal. Jan. 14, 2022) .................................................................................................4, 5

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970) ................................................5, 20

*Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*, 2021 WL 4133860, at *6 (N.D. Cal. Sept. 10, 2021) ...............................................................................................................18

*Moses v. New York Times Co.*, 79 F.4th 235, 243 (2nd Cir. 2023) ...........................................5

*Norris v. Mazzola*, 2017 WL 6493091, at *13 (N.D. Cal. Dec. 19, 2017) ................................9

*Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1328 (W.D. Wash. 2009) ....................10

*Perdue v. Kenny A. ex rel. Winn*, 599 U.S. 542, 552 (2010) .....................................................5

*Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000) ...........................................................5

*Priano-Keyser v. Apple, Inc.*, 2019 WL 7288941 (D. N.J. 2019) ................................3, 11, 19

*Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) ..........................17

*Rabin v. PricewaterhouseCoopers LLP*, 2021 WL 837626, at *9 (N.D. Cal. Feb. 4, 2021) ....7

*Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) ..........................21

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) ...............................14, 21

*Roe v. SFBSC Mgmt., LLC*, 2022 WL 17330847, at *19 (N.D. Cal. Nov. 29, 2022) ...............6

*Rollins v. Dignity Health*, 2022 WL 20184568, at *4 (N.D. Cal. July 15, 2022) ..............5, 21

*Rosado v. Ebay Inc.*, 2016 WL 3401987, *8 (N.D. Cal. June 21, 2016) ................................19

v

*Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588 (N.D. Cal. 2020) ........................ 20

*Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787 (N.D. Cal. 2019) ...................................... 3, 11, 19

*Skeen v. BMW of N. Am., LLC*, 2016 WL 4033969, at *9 (D.N.J. July 26, 2016) ................. 12

*Steiner v. Am. Broad. Co., Inc.*, 248 F. App'x 780, 783 (9th Cir. 2007) ............................... 20

*Thornberry v. Delta Air Lines*, 676 F.2d 1240, 1244 (9th Cir. 1982) ..................................... 21

*Valliere v. Tesoro Refining & Mktg. Co.*, 2020 WL 13505043, at *10 (N.D. Cal. Dec. 16, 2020) ........................................................................................................................................ 7

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) ................... 21

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) ........................................ 7

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) ........................... 5

*Williams v. SuperShuttle Int'l, Inc.*, 2015 WL 685994, at *2 (N.D. Cal. Feb. 12, 2015) ........ 20

*Wing v. Asarco Inc.*, 114 F.3d 986, 988–89 (9th Cir. 1997) .................................................... 12

*Wren v. RGIS Inventory Specialists*, 2011 WL 123826, *31 (N.D. Cal. Apr. 1, 2011) *supplemented*, 2011 WL 1838562 (N.D. Cal. May 13, 2011) ..................................... 21

*Zepada v. PayPal, Inc.*, 2017 WL 1113293, *20 (N.D. Cal. Mar. 24, 2017) ........................... 9

**Rules**

Fed. R. Civ. P. 23(h) ..................................................................................................... 1, 4, 20

vi

<u>**NOTICE OF MOTION AND MOTION**</u>

**PLEASE TAKE NOTICE** that on April 10, 2025 at 2:00 p.m., before the Honorable Haywood S. Gilliam, Jr. of the United States District Court for the Northern District of California, Plaintiffs will and do hereby move the Court, pursuant to Federal Rules of Civil Procedure 23(h), for an Order awarding attorneys' fees, reimbursement of litigation expenses, and service awards for the named Plaintiffs.

The Motion is based on this Notice of Motion; the incorporated memorandum of points and authorities; the accompanying Declarations of Lucy Tufts and Jennie Lee Anderson; the record in this action, the argument of counsel, including on reply and at the Final Fairness Hearing; and any other matters the Court may consider.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Plaintiffs move for an award of attorneys' fees of 25% of the $20 million settlement fund, reimbursement of litigation expenses of $433,417.83, and service awards for the named Plaintiffs.

In December 2021, Plaintiffs filed this class action against Apple asserting claims arising out of an alleged defect in the Apple Watch.  (ECF No. 1).  Since that time, Class Counsel has fully briefed responses to two motions to dismiss (ECF Nos. 45, 106); successfully defeated Apple's Motion to Stay Discovery (ECF 40, 44); propounded eight sets of document requests and one set of interrogatories to Apple; served seven subpoenas duces tecum on non-party resellers and repair providers; written 20 formal letters regarding discovery disputes on a wide variety of topics; participated in 16 meet and confers with opposing counsel; negotiated a stipulated Protective Order and ESI Protocol (ECF Nos. 61, 62); engaged in extensive motion practice before Magistrate Judge Beeler (ECF Nos. 65, 68, 71, 85, 92, and 98); hired and consulted with multiple experts in disciplines such as engineering, economics, and consumer behavior; analyzed and summarized 1.4 million pages of documents produced by Apple;

facilitated written discovery responses from 12 named Plaintiffs, each of whom had to answer at least 16 interrogatories, 35 document requests, and a request for inspection of his or her Apple Watch; participated in weeks' worth of inspections and scans of Plaintiffs' Watches; and engaged in extensive settlement negotiations.  Moreover, unlike many cases of this complexity, which often take more than 5 years to resolve, Class Counsel were aggressive and efficient – reaching an agreement in principle at mediation in less than 2 years – even though the Defendant (one of the largest and richest companies in the world) vigorously defended the allegations.[1]

The Settlement contemplates relief for the following proposed Settlement Class:

 "All natural persons who reside in the United States, who own or owned any model First Generation, Series 1, Series 2 or Series 3 Apple Watch for personal and/or household use, and who are reflected in Apple's records as having reported the Covered Issues in the United States." (ECF 155-1, ¶ 24).  "Covered Issue(s)" means "issues reported to Apple regarding the Covered Watches reflected in Apple's records as having reported symptoms potentially associated with battery swell."  (ECF 155-1, ¶ 5).

The Settlement benefits squarely address the issues raised in the litigation and provide significant relief to approximately 541,552[2] Settlement Class Members.  The cash payment will be either $20 for each Covered Device or, if necessary, a pro rata portion of the Net Settlement Fund.  If, following the deadline for Settlement Class Members to update or confirm payment information and elect a payment method, it appears that the Net Settlement Fund minus the sum of all Class Payments will exceed $50,000, then each Settlement Class Member who has confirmed or updated payment information and made a payment selection by the Response Deadline, as well as any Settlement Class Members for whom valid, current payment information

---

[1] As required by this Court's Procedural Guidance for Class Action Settlements, the case history and background facts of this case will be more fully set forth in Plaintiffs' Motion for Final Approval and thus not repeated here. https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/

[2] This number was refined based on the Settlement Administrator's January 4, 2025 report of the total number of members of the Settlement Class.  *See* Doc. 155, p.10 (Section F.3).  The Settlement Administrator reports that 18,733 members of the Settlement Class have more than one qualifying serial number and that there is valid contact information for over 98% of the Settlement Class.

2

can be confirmed by the Settlement Administrator, will receive an equal, total payment of up to a maximum of $50 for each Covered Device. (ECF No. 155-1, Section B(4)). The payment is appropriate in light of the preliminary results from Plaintiffs' choice-based conjoint survey and the costs for service related to symptoms associated with the alleged battery swell issue.

To achieve the settlement, Plaintiffs invested over $5.5 million in attorney time, yielding a negative (0.90) multiplier if the Court awards the full $5,000,000 fee requested. A fee award of 25% of the total recovery falls within the standard 20-30% range for fees based on the percentage-of-recovery method. A fee award equal to 25% of the settlement fund will ensure that Class Counsel are not penalized for investing the time and money needed to achieve a fair settlement, furthering the objective of motivating counsel to take complex cases and assume the risk required to generate meaningful results.

Class Counsel advanced over $430,000 in expenses while the risks that they assumed in prosecuting this action on a contingent basis were considerable. Two earlier cases alleging nearly identical theories of defect ended when federal courts dismissed all claims at the pleading stage. *Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787 (N.D. Cal. 2019); *Priano-Keyser v. Apple, Inc.*, 2019 WL 7288941 (D. N.J. 2019). Class Counsel's expenditures were reasonable and necessary to achieve the $20 million recovery; absent Class Counsel's willingness to risk over $430,000 in out-of-pocket expenses, there would be no settlement.

Plaintiffs also request service awards of $5,000 to the lead Plaintiff Chris Smith and $2,000 for the remaining eleven named Plaintiffs (totaling $27,000). These amounts, frequently approved by courts in class action cases, are warranted given the time and work named Plaintiffs invested in the case.

After deduction of the requested attorneys' fees, costs, service awards, and administrative expenses, approximately $14 million would remain in the Settlement Fund, which Class Counsel anticipates will be sufficient to cover the individual Settlement Class Member payments estimated in the Class Notice. Tufts Decl., ¶ 3 (Ex. A). As such, the size of the Settlement Fund

1  and the relief for the Class strongly support the requested amounts for fees, costs, and service

2  awards. *Id.*

3  **II.    ARGUMENT**

4       **A. The Court should grant Class Counsel's requested fees and costs.**

5       "In a certified class action, the court may award reasonable attorney's fees and nontaxable

6  costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts

7  have an independent obligation to ensure that the award, like the settlement itself, is reasonable,

8  even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*,

9  654 F.3d 935, 941 (9th Cir. 2011).

10      Class Counsel, working on contingency against one of the largest companies in the world,

11 overcame substantial challenges to bring these claims to a favorable resolution. Attorneys' fees,

12 which represent 25% of the total recovery, are justified based on the years of work Class Counsel

13 has provided on behalf of Plaintiffs and Settlement Class Members, the meaningful relief

14 obtained, and the risks borne throughout this litigation. Absent counsels' efforts, the Settlement

15 Class likely would not be receiving any monetary compensation at all. Considering the settlement

16 achieved – which provides cash payments without a claims process to all class members who

17 experienced and reported the alleged defect – Class Counsel's requested 25% fee is reasonable,

18 consistent with applicable law, and well supported by the record. Accordingly, the Court should

19 grant this request.

20      **1.  Class Counsel are entitled to seek a fee award from the common fund.**

21      For common fund settlements, courts may employ two methods for calculating a

22 reasonable fee award: the lodestar method or the percentage-of-recovery method. *In re Mercury

23 Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010).  "[C]ourts have discretion to

24 employ either the lodestar method or the percentage-of-recovery method to assess the

25 reasonableness of the requested attorney's fee award." *Manier v. Sims Metal Mgmt.-Northwest*,

26 No. 19-cv-00718, 2022 WL 20184566, at *2 (N.D. Cal. Jan. 14, 2022) (internal quotation marks

27

and citation omitted). Regardless of the approach used, "the main inquiry is whether the fee award is 'reasonable in relation to what the plaintiffs [and class] recovered.'" *Manier*, 2022 WL 20184566, at *3 (quoting *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000)).

The lodestar method is typically "appropriate in class actions brought under fee-shifting statutes" or in claims-made settlements. *Rollins v. Dignity Health*, No. 13-cv-01450, 2022 WL 20184568, at *4 (N.D. Cal. July 15, 2022) (citations omitted).[3]

Alternatively, "[b]ecause the benefit to the class is easily quantified in common-fund settlements, . . . courts [may] award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth*, 654 F.3d at 942. The Supreme Court has recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Mills v. Auto Lite Co.*, 396 U.S. 375, 392-93 (1970). Attorneys' fees are awarded as a means of ensuring the beneficiaries of a common fund share with those whose labor created the fund. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("WPPSS"). The percentage-of-the-fund method aligns class counsel's interests with those of the class, and properly incentivizes capable counsel not only to accept challenging cases but to push for the best result that can be achieved. *See, e.g., Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (percentage method "directly aligns the interests of the class and its counsel") (citation omitted), *superseded on other* grounds, *Moses v. New York Times Company*, 79 F.4th 235, 243 (2nd Cir. 2023).

Employing the percentage-of-the-recovery method for calculating Class Counsel's fees is appropriate here. The settlement amount in this case is a fixed common fund of $20,000,000. Because this is a common fund settlement, the Court should employ the percentage-of-the-

---

[3] When using the lodestar method to calculate fees, the fee is "presumptively [reasonable]," and courts are not required to perform a "crosscheck" in common fund settlements. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 571 (9th Cir. 2019) (quoting *Perdue v. Kenny A. ex rel. Winn*, 599 U.S. 542, 552 (2010)).

recovery method to analyze the reasonableness of Class Counsel's requested fees. The benefit to the class is easily quantifiable, which favors determining the fee using the percentage method. *See Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *16 (N.D. Cal. Feb. 11, 2016). The percentage method "is preferred when" – as here – "counsel's efforts have created a common fund for the benefit of the class." *In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *2 (N.D. Cal. Sept. 21, 2018); *accord Korean Air Lines Co. Antitrust Litig.*, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013) (recognizing that "use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit"); *Roe v. SFBSC Mgmt., LLC*, No. 14-CV-03616-LB, 2022 WL 17330847, at *19 (N.D. Cal. Nov. 29, 2022) (same).

In a similar case—against the same defendant—another court in this district used the percentage-of-the-recovery method to calculate fees, ultimately determining that Class Counsel's requested fees were reasonable under that methodology. *See In re MacBook Keyboard Litig.*, 2023 WL 3688452, *13 (N.D. Cal. 2023). There, the settlement included a $50,000,000 non-reversionary common fund, and the class counsel sought $15,000,000 in attorneys' fees (representing a 30% benchmark) and $1,559,090.75 in litigation costs—totaling $16,559,090.75. *Id.* at *13, *15-16. The court held that "the percentage-of-the-fund method [was] the appropriate method to determine attorneys' fees subject to a lodestar cross-check," and ultimately approved the requested fees and expenses as fair, reasonable, and adequate. *Id.* at *13, *16.

## 2. Class Counsel's requested fees are reasonable and justified.

Under the percentage-of-recovery method, a court may award attorneys' fees based on a percentage of the common fund. "Notably, in common fund cases, awards generally range from 20-30%...of the recovery." *In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *13 (N.D. Cal. May 25, 2023).

Courts in the Ninth Circuit generally start with the 25% benchmark and adjust upward or downward based on various factors, including:

> the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated

6

benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experience while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (internal quotation marks omitted). *See also In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 519 (N.D. Cal. 2020) (citations omitted), *aff'd*, 845 F. App'x 563 (9th Cir. 2021). Although a requested fee of 25% of the common fund is "not per se valid, it is a helpful 'starting point.'" *In re Online DVD-Rental*, 779 F.3d at 955 (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002)).

### i. Class Counsel's requested fee is reasonable under the percentage-of-the-recovery analysis.

Class Counsel seek only $5,000,000 of the total $20,000,000 common fund for fees, which represents the 25% benchmark that is generally accepted by courts in the Ninth Circuit. Class Counsel also reasonably incurred litigation expenses in this case amounting to $433,417.83, *see infra* Section II(A)(3).

Courts have previously approved fee and expense requests representing similar benchmarks compared to the total recovery of their settlements. As noted, a 25% benchmark, like that requested here, is generally reasonable, and courts in this district have approved such requests. *See, e.g., Bakhtiar v. Info. Res., Inc.*, No. 17-CV-04559, 2021 WL 4472606, at *8 (N.D. Cal. Feb. 10, 2021); *Valliere v. Tesoro Refining & Mktg. Co.*, No. 17-cv-00123, 2020 WL 13505043, at *10 (N.D. Cal. Dec. 16, 2020). Indeed, requests exceeding this benchmark have also been approved in this District. *See, e.g., Bernstein v. Virgin Am., Inc.*, No. 15-CV-02277, 2023 WL 7284158, at *2 (N.D. Cal. Nov. 3, 2023) (approving a 33% benchmark in a settlement that included statutory fees); *In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *14 (approving a 30% benchmark); *Rabin v. PricewaterhouseCoopers LLP*, No. 16-CV-02276, 2021 WL 837626, at *9 (N.D. Cal. Feb. 4, 2021) (approving a 35% benchmark); *In re Lenovo Adware Litig.*, No. 15-md-02624, 2019 WL 1791420, at *8 (N.D. Cal. Apr. 24, 2019) (approving a 30%

7

1    benchmark); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420, 2018 WL 3064391,

2    at *1 (N.D. Cal. May 16, 2018) (approving a 30% benchmark); *In re: Cathode Ray Tube (CRT)*

3    *Antitrust Litig.*, No. C-07-5944, 2016 WL 183285, at *2 (N.D. Cal. Jan. 14, 2016) (approving a

4    30% benchmark).

5                   **a.  Class Counsel achieved exceptional results for the class.**

6          Class Counsel achieved exceptional results in this case following nearly 2 years of

7    litigation. Class Counsel expended significant effort and resources to ensure that Plaintiffs' and

8    Class Members' interests were best served. Through their efforts and dedication, Settlement

9    Class Members will receive money from the Settlement without having to make a claim, and

10   they will likely receive between $20 and $50 per Covered Device.  (ECF No. 155-1, B(4); *see*

11   *also* ECF 163, p.11).  Specifically, the cash payment will be either $20 for each Covered Device

12   or, if necessary, a pro rata portion of the Net Settlement Fund.  If, following the deadline for

13   Settlement Class Members to provide payment information, it appears that the Net Settlement

14   Fund minus the sum of all Class Payments will exceed $50,000, then each Settlement Class

15   Member who has made a payment selection by the Response Deadline and for whom valid,

16   current payment information can be confirmed, will receive an equal, total payment of up to a

17   maximum of $50 for each Covered Device.  (ECF No. 155-1, B(4)).

18         This framework ensures that all consumers who purchased a First Generation, Series 1,

19   Series 2, or Series 3 Apple Watch, experienced problems associated with battery swell, and

20   informed Apple of these issues will receive substantial relief.  The payment is appropriate in light

21   of the preliminary results from Plaintiffs' choice-based conjoint survey and the costs for service

22   related to symptoms associated with the alleged battery swell issue.  Through Class Counsel's

23   efforts over years of contentious litigation, they have achieved an exceptional result that helps to

24   make whole those consumers who experienced a manifestation of the alleged defect.

25         Class Counsel's results are comparable to other product defect class actions, including

26   cases against Apple. *See, e.g., In re Apple iPhone 4 Prod. Liab. Litig.*, No. 5:10-MD-2188 RMW,

27

8

2012 WL 3283432, at *1 (N.D. Cal. Aug. 10, 2012) (providing class members cash payments of $15); *Grace v. Apple, Inc.*, No. 5:17-cv-00551-LHK (N.D. Cal. 2021), Dkt. No. 456 at 6 (initial payments of $3); *In re Magsafe Apple Power Adapter Litig.*, 5:09-CV-01911-EJD (N.D. Cal.), Dkt. Nos. 238, 247 (paying $35 to $79 to class members who received replacement power adapters); *iPod Nano Cases*, Case No. BC342056 (Los Angeles Super. Ct.) (paying between $15 to $25 for Apple iPod Nano owners); *see also Horvath v. LG Electronics MobileComm U.S.A.*, Inc., No. 3:11-cv-01576, Dkt. No. 101 (S.D. Cal. Jan. 14, 2014) (approving settlement of $19 per claimant in class action alleging smartphone defect).

As the history of the litigation demonstrates, Class Counsel's experience and the result delivered also support granting the requested fee. *See Norris v. Mazzola*, No. 15-CV-04962-JSC, 2017 WL 6493091, at *13 (N.D. Cal. Dec. 19, 2017) (noting that the skill required in extensive motion practice and discovery as well as the quality of work performed by highly experienced counsel supported the fee award). The "prosecution and management of a complex national class action requires unique legal skills and abilities." *In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (citation omitted). "[T]he stated goal in percentage fee-award cases [is] ensuring that competent counsel continue to be willing to undertake risky, complex and novel litigation." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (internal quotation marks and citations omitted); *see Zepada v. PayPal, Inc.*, No. C 10-1668 SBA, 2017 WL 1113293, at *20 (N.D. Cal. Mar. 24, 2017) (class counsel's expertise allowed for a result that "would have been unlikely if entrusted to counsel of lesser experience or capability" given the "substantive and procedural complexities" and the "contentious nature" of the case).

Class Counsel have been Plaintiffs' counsel of record for the entirety of this litigation. *See, e.g.*, Compl., ECF No. 1; *see also* Tufts Decl. ¶ 4. Since the inception of this litigation, Class Counsel have brought their extensive skills and experience to bear by: performing thorough investigations prior to the initial filing; briefing and arguing multiple motions to dismiss;

obtaining relevant and vital information in discovery, which required diligent advocacy through at least 20 discovery dispute letters and 16 meet-and-confer conversations with Apple; briefing and arguing multiple discovery issues before Judge Beeler; reviewing 1.4 million pages of Apple's produced documents; regularly appearing before this Court for case management conferences and motions practice; obtaining and working closely with knowledgeable and experienced experts; negotiating the Settlement; and overseeing administration of the Settlement. *See generally* Tufts Decl. ¶¶ 5-13; see also ECF 155-5. Further, Class Counsel will continue to remain actively involved in this litigation through final approval of the Settlement. It is through Class Counsel's work in this litigation that the Settlement was able to be obtained for Plaintiffs' and Class Members' benefit. Accordingly, it is reasonable and justified to grant them attorneys' fees in recognition of their efforts.

### b. Class Counsel bore the considerable risks of this litigation and handled it on a contingency basis.

Over the course of the past 3 years, Class Counsel have borne the risk of this litigation. They took on each of the named Plaintiffs as contingency fee clients. Tufts Decl. ¶ 16. "When counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment . . . justifies a significant fee award." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015). Through this arrangement, Class Counsel covered all costs of litigation over a three-year period and have foregone other cases during that period to manage the burdens of litigating this case. Tufts Decl. ¶ 16. *See Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1328 (W.D. Wash. 2009) (approving 1.82 fee multiplier in part because "the demanding nature of this action precluded Class Counsel from accepting other potentially profitable work."). The potential that Class Counsel would receive nothing supports approval of their requested fee. *See WPPSS*, 19 F.3d at 1299 ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.").

Success in this case was far from a sure thing at the outset. Tufts Decl., ¶ 17. The risks were magnified given the fate of similar cases alleging the same defect in the Apple Watch that Plaintiffs alleged in this case. In *Sciacca v. Apple, Inc.*, a district court granted Apple's Motion to Dismiss the Amended Complaint on behalf of a putative class for failure to adequately allege the defect under Rule 9(b)'s heightened pleading standard, failure to plead an actionable misrepresentation or omission, and failure to adequately plead Apple's knowledge of the defect (among other things). 362 F. Supp. 3d 787 (N.D. Cal. 2019). In *Priano-Keyser*, a federal district court granted Apple's Motion to Dismiss another putative class action complaint for similar reasons. 2019 WL 7288941 (D. N.J. 2019). Based on these similarities, Plaintiffs took on a substantial risk that this litigation could end with the same result – either dismissal at the pleadings stage or denial of class certification after years of effort and expense.

More generally, consumer fraud class actions tend to be riskier than most other types of class actions. *Kakani v. Oracle Corp.*, No. 06-06493-WHA, 2007 WL 4570190, at *4 (N.D. Cal. Dec. 21, 2007). For example, consumer plaintiffs suing device manufacturers often have been unable to maintain a class action on a developed record. *See, e.g., Haag v. Hyundai Motor Am.*, 2019 WL 1029002, at *4 (W.D.N.Y. Mar. 5, 2019) (finding common issues did not predominate in a putative product defect class action, as "there is no basis for the Court to infer that a reasonable consumer—let alone an entire class of consumers—would have demanded a lower purchase or lease price").

Class Counsel likewise took on risk in undertaking this representation and challenging Apple, committing their time, money, and energy to the prosecution of a multi-year consumer products case against one of the world's most successful companies. *See Fischel v. Equitable Life Assur. Soc'y of the United States*, 307 F.3d 997, 1009 (9th Cir. 2002) (holding that "risk should be assessed when an attorney . . . elects to pursue the claim on the client's behalf."). Plaintiffs would have had to overcome credible defenses, including Apple's arguments that the failure rate was low, the Watches significantly differed over the product generations, and that

Apple lacked sufficient knowledge to create a duty to disclose. *See, e.g., In re Seagate Tech. LLC*, 326 F.R.D. 223, 245 (N.D. Cal. 2018) (evidence of defendant's knowledge from later in class period did not show requisite knowledge for class members who purchased earlier in the period). Class Counsel achieved an excellent result against a capable and determined team of Morrison & Foerster attorneys who, unlike Class Counsel, were not operating on a contingency. *See Andrews v. Plains All Am. Pipeline L.P.*, 2022 WL 4453864, at *3 (C.D. Cal. Sept. 20, 2022) ("[E]specially when considering that Defendants were represented by a prominent litigation firm, Class Counsel's ability to get the case this far along evinces their high quality of work."); *Wing v. Asarco Inc.*, 114 F.3d 986, 988–89 (9th Cir. 1997) (approving a 2.0 fee multiplier in part because of "the quality of the [defendant's] opposition").

Seeing this case through to verdict would have required countless additional attorney hours and expense. Especially given the risks—as well as the fact that the aging watches may become obsolete—the Settlement is a clear win for consumers. *See, e.g., Skeen v. BMW of N. Am., LLC*, 2016 WL 4033969, at *9 (D.N.J. July 26, 2016) (noting that "the warranty on Ms. Williams's vehicle . . . has already expired even under the extended terms of the settlement."). Class members have the opportunity now to share in the fund and obtain "a significant, easy-to-obtain benefit"—cash recoveries—through automatic payment. *See In re Haier Freezer Consumer Litig.*, No. 5:11-CV-02911-EJD, 2013 WL 2237890, at *4 (N.D. Cal. 2013).

The risk of little or no recovery, together with the complexity of the case and likelihood of significant additional expense and delay, weigh in favor of granting the requested fee.

### c. Class Counsel accepted significant burdens to pursue this litigation.

Class Counsel, who are experienced class action attorneys, understood the complexities of this litigation, as their claims would require targeted discovery requests, extensive document review, substantial expert consultation, and successful legal argument to not only prove their claims but to overcome Apple's arguments and defenses. For example, Apple filed two separate

motions to dismiss. (ECF Nos. 41 and 100). Class Counsel issued 8 sets of discovery and reviewed 1.4 million pages of Apple's produced documents over a period of nearly two years. Tufts Decl. ¶¶ 5-9. Further, Class Counsel participated in extensive testing of Plaintiffs' watches. *Id.* ¶ 10. While this occurred, Class Counsel analyzed Apple's productions and noticed the deposition of a 30(b)(6) representative of Apple before the parties ultimately agreed to negotiate a potential settlement. *Id.* ¶ 12. Class Counsel helped to select a mediator, prepared for mediation, attended mediation, and ultimately reached the proposed Settlement. *Id.* ¶ 13. In total, Class Counsel spent over 5,800 hours actively litigating this case, including a team of 10 attorneys across three law firms. *See id.* ¶ 14. Throughout every phase of litigation, Class Counsel performed significant research and analysis, expended thousands of hours of effort, and brought their substantial experience to bear on behalf of Plaintiffs and Settlement Class Members.

Discovery in this case was particularly laborious and time intensive. Apple's document production contained over a million pages of highly technical documents that necessitated an intensive document review in close coordination with a team of experts, who, based on objections made by Apple, did not even have permission to view the documents until late in the discovery process. *See* Tufts Decl. ¶ 6, 9 (explaining that Class Counsel reviewed all documents produced by Apple); *see also* ECF No. 126-3 (examples of documents produced by Apple).

Plaintiffs' efforts to obtain these documents spanned years of hotly contested discovery disputes and meet-and-confer discussions. Tufts Decl. ¶ 7. The parties exchanged over 20 letters about Apple's responses to Plaintiffs' discovery requests and related matters. *Id*. These letters were supplemented with numerous emails, draft protective orders, and ESI protocols. *Id*. The parties also conducted 16 meet-and-confers by phone or videoconference. *Id*. The topics that the parties negotiated included, but were not limited to, a Stipulated Protective Order and ESI Protocol; the scope of individual discovery requests; the time period applicable to discovery requests; production of specific documents in native form; appropriate search terms and custodians for ESI searches; methods for producing representative samples in lieu of total

document populations for customer complaint records; timing and volume of rolling productions; and prioritization of discovery requests. Tufts Decl. ¶ 8. Issues that could not be resolved became the subject of discovery motion practice before Judge Beeler. (ECF Nos. 65, 68, 71, 85, 92, and 98).

As part of these negotiations, and the resolution of the parties' remaining disputes by Judge Beeler, Apple ultimately produced about 1.4 million pages of documents. Tufts Decl. ¶ 9. Plaintiffs' counsel reviewed, analyzed, summarized, and built a chronology of all these documents, which informed expert analysis and settlement discussions. *Id.* Contemporaneously, Class Counsel also facilitated the response of each Plaintiff to at least 16 interrogatories, 35 document requests, and a request for inspection of their Apple Watch.

Class Counsel were unable to piggyback on investigations or enforcement actions of governmental officials, instead securing the relief through their efforts alone. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (court justified use of a multiplier based in part on finding that "counsel faced substantial risk in prosecuting this action" and "did not have the benefit of fruits from underlying government actions"). Class Counsel retained multiple experts, including a mechanical engineer, a forensic engineer, a warnings expert, and a team of experts on damages. Tufts Decl. ¶ 10. Each offered unique and technical insights that were necessary to advance Plaintiffs' case. For example, Plaintiffs' engineering experts performed preliminary analysis and exemplar testing, which informed Plaintiffs' theory of the case and document review. *Id.* They also participated in joint inspections of the named Plaintiffs' watches, which included detailed high-resolution photographs, chemical analysis, measurement of precise device dimensions with profilometers, disassembly of the devices, sharp edge tests, and individual CT scans of each battery, among other things. *Id.* Plaintiffs' experts in economics assisted Class Counsel as they negotiated a method for obtaining unbiased representative samples of Apple's consumer complaint records, helping to ensure that the records received had external validity that enabled generalization to the population as a whole. *Id.* Additionally, Plaintiffs'

damages experts performed portions of a survey-based conjoint analysis that informed settlement negotiations. *Id.*

In sum, Apple's highly technical and voluminous document production, especially after months of discovery disputes, required Plaintiffs to consult with multiple experts to identify deficiencies in Apple's production, craft narrowly targeted follow-up discovery requests, understand the technical nature of the documents, and effectively prosecute their case. *Id.* Plaintiffs bore the risk of these time- and resource-intensive tasks and diligently pursued their claims to achieve excellent results on behalf of Plaintiffs and Settlement Class Members.

Each of these factors—the risks associated with litigation; the costs, duration, and dedication to the litigation; and the exceptional results ultimately obtained—weigh in favor of granting Class Counsel's request at the 25% benchmark, which is generally acceptable. These factors illustrate that Class Counsel's request is reasonable and their fees are justified, particularly considering the duration of litigation, the total hours expended, and the costs associated with prosecuting this case to ultimately obtain a meaningful result for Settlement Class Members.

### ii. Class Counsel's requested fees are reasonable under a lodestar cross-check.

Even if the Court chooses to employ the lodestar method—or cross-checks the requested fee against Class Counsel's lodestar—Class Counsel's requested fees remain reasonable. Class Counsel's lodestar totals $5,545,004.80 (Tufts Decl., ¶14) — higher than the requested $5,000,000 fee. Class Counsel spent a total of 5,893.10 hours actively litigating this case, which includes 16 timekeepers, including attorneys and paralegals, across all three of Class Counsel's firms: Cunningham Bounds, LLC, Morgan & Morgan Complex Litigation Group, and Kilborn Law, LLC. *Id.* at , ¶¶ 14, 15 (broken down by biller and describing categories of work).

### a. Class Counsel's hours are reasonable.

Class Counsel's 5,893.10 total hours expended were reasonable and justified. Each attorney working on this case engaged in work that was reasonably necessary to further the

litigation and to serve Plaintiffs' and Class Members' interests. Tufts Decl. ¶¶ 14-15.  Courts engaging in a lodestar cross-check need not calculate with mathematical precision or "bean count" and instead "may rely on summaries submitted by the attorneys and need not review actual billing records." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) (citation omitted) (performing lodestar cross-check based on attorney's sworn declaration). Given Class Counsel's detailed explanations of the work attorneys engaged in during this litigation, and in light of the favorable results obtained, Class Counsel's explanation of fees is sufficient and illustrate a reasonable expenditure of total time. *See id.*

Class Counsel's knowledge, experience, and strategy played a pivotal role in interfacing with the named Plaintiffs and other potential clients, researching the alleged defect, analyzing relevant case law and arguments, drafting motions and responses, working closely with experts, drafting discovery requests, reviewing and analyzing produced documents, and ultimately in furthering the litigation and reaching the settlement.

In this case, Plaintiff propounded 71 document requests and Apple produced thousands of documents, totaling over 1.4 million pages.  Tufts Decl., ¶ 15.  Class Counsel reviewed these documents very closely, which required a significant amount of time to be devoted to that monumental task. Following review, Class Counsel carefully analyzed these documents to determine their value to the litigation. Given the technical nature of Plaintiffs' claims—and, by extension, the extremely technical nature of many of these documents—Class Counsel often reviewed them closely with experts to better understand their meaning and value in proving Plaintiffs' claims, or in disproving or attacking Apple's defenses. *Id.* Thus, that time was reasonable, justified, and necessary for prosecuting Plaintiffs' claims and serving Class Members' interests. *See In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d at 525 (denying an objection that class counsel spent excessive hours litigating the case, noting that significant discovery, including "a great deal of document review," requires a substantial expenditure of time).

**b. Class Counsel's billing rates are reasonable.**

Class Counsel's billing rates are equally reasonable. "Generally, when determining a reasonable hourly [billing] rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). "The rates prevailing in [the Northern District of California] for 'similar services by lawyers of reasonably comparable skill, experience, and reputation' thus furnish the proper measure of the reasonableness of the rates billed by [Class Counsel]." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

The reasonable rates in this district for Mr. Nicholas and Ms. Tufts of Cunningham Bounds are $1,300 and $1,000, respectively, based on their relative experience. Anderson Decl. ¶ 4 (Ex. B). The same rates in this district are applicable to Mr. Ram and Ms. Appel of Morgan & Morgan Complex Litigation Group, respectively. Anderson Decl., ¶ 5. The reasonable rate in this district for Mr. Kilborn of Kilborn Law, LLC is $1,300. Anderson Decl., ¶ 6. The billing rates used for the remaining timekeepers from Class Counsel's respective law firms are the reasonable rates in this district. Anderson Decl., ¶ 7.

In general, other courts in this District and the Ninth Circuit have found similar rates to be reasonable. *See, e.g., Fleming v. Impax Lab'ys Inc.*, No. 16-CV-06557-HSG, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (approving partner rates up to $1,325; counsel rates up to $1,150; and associate rates up to $520); *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (approving partner rates up to $1,250, associate rates up to $650, and paralegal rates up to $350); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 2672, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving partner rates up to $1,600, associate rates up to $790, and paralegal rates up to $490).

More specifically, another court in this district recently approved billing rates that are similar to the rates that Class Counsel requests here:

1
2
3
4
5

> The Court finds that the hours claimed were reasonably incurred and that the rates charged are reasonable and commensurate with those charged by attorneys with similar experience in the market. Of the 27,761 hours, 94% were reportedly expended by Class Counsel. Joint Decl. ¶ 72. Girard Sharp billed at the following rates: $875–$1,195 per hour for partners; $385–$850 per hour for associates; and $200–$250 per hour for legal assistants. *Id.* ¶ 75. Co-Lead Counsel, Chimicles Schwartz Kriner & Donaldson-Smith, billed at the following rates: $750–$1,000 per hour for partners; $260–$750 per hour for associates; $400–$425 per hour for contract attorneys; and $200–$325 per hour for paralegals. *Id.*

6   *See In re MacBook Keyboard Litig.*, 2023 WL 3688452, *15 (N.D. Cal. 2023).

7
8   Similar rates having been recently approved in this district in a similar case against the same defendant, Class Counsel's requested billing rates are reasonable.

9
10   **c. Class Counsel's requested fees represent a negative multiplier.**

11   To calculate the multiplier, the court "divides the total fees sought by the lodestar."
12   *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6,
13   2013). "The purpose of [a] multiplier is to account for the risk Class Counsel assumes when they
14   take on contingent-fee cases," as is the case here. *Id.* (citation omitted). A positive or negative
15   multiplier may be applied to adjust the lodestar upward or downward to "reflect[] a host of
16   reasonableness factors, including the quality of representation, the benefit obtained for the class,
17   the complexity and novelty of the issues presented, and the risk of nonpayment." *In re Bluetooth*,
18   654 F.3d at 941-42 (internal quotation marks and citation omitted); *see also Ketchum v. Moses*,
19   17 P.3d 735, 741 (Cal. 2001). "Multipliers of 1 to 4 are commonly found to be appropriate in
20   complex class action cases." *Hopkins*, 2013 WL 496358, at *4; *see also In re Facebook Biometric*
21   *Info. Priv. Litig.*, No. 21-15553, 2022 WL 822923, at *1 (9th Cir. Mar. 17, 2022) (affirming a
22   higher 4.71 multiplier).

23   Class Counsel calculated a reasonable lodestar for this case totaling $5,545,004.80. This
24   results in a 0.90 multiplier compared to Class Counsel's requested fee. "A negative multiplier
25   'strongly suggests the reasonableness of [a] negotiated fee.'" *Moreno v. Cap. Bldg. Maint. &*
26   *Cleaning Servs., Inc.*, No. 19-CV-07087-DMR, 2021 WL 4133860, at *6 (N.D. Cal. Sept. 10,

27

2021) (quoting *Rosado v. Ebay Inc.*, No. 12-CV-04005-EJD, 2016 WL 3401987, at *8 (N.D. Cal. June 21, 2016)). This multiplier is reasonable given (1) the complex, technical subject matter at issue, which required Class Counsel to thoroughly research the subject Watches and understand the technical causes of the Defect; (2) the qualified representation Class Counsel provided throughout the litigation; (3) the exceptional results obtained, resulting in a settlement that will provide significant monetary relief to those consumers actually impacted by the Defect's manifestation, ranging from $20 to $50 per Settlement Class Member without having to make a claim; and (4) the substantial risks Class Counsel took on in representing Plaintiffs on a contingency fee basis, thereby risking potential nonpayment. As noted, these risks were particularly magnified given Apple's earlier success in dismissing similar allegations in two other cases alleging the same defect. *See Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787 (N.D. Cal. 2019); *Priano-Keyser v. Apple, Inc.*, 2019 WL 7288941 (D. N.J. 2019).

From the inception of this litigation, Class Counsel faced the risk of non-payment, but they nevertheless persisted, and through their efforts, they were able to overcome Apple's first motion to dismiss and to ultimately reach a settlement that provided meaningful relief to consumers who experienced and reported a manifestation of the defect. These circumstances illustrate the reasonableness of a 0.90 multiplier here. Not only does this multiplier fall below the typical range of reasonableness, but similar—and much higher—multipliers have previously been found to be appropriate in this district. *See, e.g., In re Wells Fargo & Co. S'holder Litig.*, 445 F. Supp. 3d at 532 (finding a 2.7 multiplier reasonable); *Rodman v. Safeway Inc.*, No. 11-cv-03003, 2018 WL 4030558, at *6 (N.D. Cal. Aug. 23, 2018) (finding a 1.7472 multiplier reasonable); *Bellinghausen*, 306 F.R.D. at 265 (finding a 1.49 multiplier reasonable); *Galeener v. Source Refrigeration & HVAC, Inc.*, No. 3:13-cv-04960, 2015 WL 12977077, at *2 (N.D. Cal. Aug. 21, 2015) (finding a 2.67 multiplier reasonable).[4]

---

[4] Far higher multipliers have also been approved. *See, e.g., Steiner v. Am. Broad. Co., Inc.*, 248 F. App'x 780, 783 (9th Cir. 2007) (affirming a 6.85 multiplier). Other courts have found multipliers exceeding the generally appropriate 1 to 4 range, ranging as high as 9.3. *See, e.g., In re Xcel Energy, Inc., Sec., Derivative & "'ERISA"*

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE AWARDS
CASE NO. 4:21-cv-09527-HSG

1    There is no reason to reduce Class Counsel's requested fees, as they are already

2  formulated to be reasonable and appropriate in light of the time and effort expended and the

3  results obtained. Given the complexity of this case, the duration of the litigation, the expenditure

4  of time and effort in service to Plaintiffs and Class Members, and the significant and exceptional

5  results obtained for consumers, Class Counsel's requested fees are reasonable and should be

6  granted.

### 3.  Class Counsel's expenses are reasonable.

8    Class Counsel are also entitled to reimbursement of reasonable litigation costs and

9  expenses. Fed. R. Civ. P. 23(h); *see also Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D.

10 588 (N.D. Cal. 2020) ("Class Counsel is entitled to recover those out-of-pocket expenses that

11 would normally be charged to a fee-paying client") (internal quotation marks and citation

12 omitted). "Reasonable costs and expenses incurred by an attorney who creates or preserves a

13 common fund are reimbursed proportionately by those class members who benefit[.]" *In re*

14 *Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (citing *Mills v. Elec.*

15 *Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)); *see also Floyd v. First Data Merch. Servs. LLC*,

16 No. 5:20-CV-02162-EJD, 2022 WL 6173122, at *6 (N.D. Cal. Oct. 7, 2022) ("Class counsel is

17 entitled to reimbursement of reasonable out-of-pocket expenses."). "The prevailing view is that

18 expenses are awarded in addition to the fee percentage." *Williams v. SuperShuttle Int'l, Inc.*, No.

19 12-CV-06493-WHO, 2015 WL 685994, at *2 (N.D. Cal. Feb. 12, 2015) (citations omitted).

20 Reasonable reimbursable litigation expenses include those incurred for document production and

21 database maintenance, experts and consultants, travel, mailing and postage expenses. *See Media*

22 *Vision*, 913 F. Supp. 1362 at 1366; *Thornberry v. Delta Air Lines*, 676 F.2d 1240, 1244 (9th Cir.

23 1982), *remanded on other grounds*, 461 U.S. 952 (1983).

24    Class Counsel has incurred costs and expenses totaling $433,417.83, which were

25

26 *Litig.*, 364 F. Supp. 2d 980, 998-99 (D. Minn. 2005) (approving a 4.7 multiplier); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (approving a "modest multiplier of 4.65"); *Di Giacomo v. Plains*

27 *All Am. Pipeline*, Nos. 99-4137 & 99-4212, 2001 WL 34633373, at *10-11 (S.D. Fla. Dec. 19, 2001) (approving a 5.3 multiplier).

20

expended in prosecuting this case. These include all costs that would typically be billed to paying clients. Tufts Decl. ¶ 18.  These costs include: expert fees ($377,978.67); mediation expenses ($12,849.88); court fees ($951); travel ($22,052.23); copies and postage fees ($4,030.02); research and investigation ($14,070.03); and fees related to third party subpoenas ($1,486).  *Id.* Because expenses were reasonably incurred in the prosecution of this Action, Class Counsel respectfully requests that the Court fully reimburse these reasonably incurred expenses.

### B. The Court should grant Plaintiffs' requested service awards.

Service awards are "fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). They "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958-59.  Put simply, they function as "payments to class representatives for their service to the class in bringing the lawsuit." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). "It is well-established in [the Ninth Circuit] that named plaintiffs in a class action are eligible for reasonable incentive payments." *Wren v. RGIS Inventory Specialists*, No. 06-cv-05778, 2011 WL 1230826, at *31 (N.D. Cal. Apr. 1, 2011), supplemented, No. 06-cv-05778, 2011 WL 1838562 (N.D. Cal. May 13, 2011). Courts may consider various factors in evaluating whether to grant a requested service award:

> 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (other citation omitted). Incentive awards of $5,000 [are] presumptively reasonable." *Rollins*, 2022 WL 20184568, at * 9 (granting $10,000 incentive awards to two named plaintiffs).

The requested service awards are consistent with Ninth Circuit practice: "[A] $5,000 payment is presumptively reasonable," and awards "typically range from $2,000 to $10,000."

1  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (collecting cases);

2  *see, e.g., In re Zoom Video Commc'ns, Inc. Priv. Litig.*, 2022 WL 1593389, at *12 (N.D. Cal.

3  Apr. 21, 2022) (approving $5,000 awards); *In re Toys R Us-Del., Inc. FACTA Litig.*, 295 F.R.D.

4  438, 470–72 (C.D. Cal. 2014) (awarding three plaintiffs $5,000 each, "consistent with the amount

5  courts typically award as incentive payments.").

6       The proposed awards for the named Plaintiffs are proportional to the range of settlement

7  awards for individual class members in this case and should be approved as reasonable. Class

8  Counsel requests service awards in the amount of $5,000 for the lead Plaintiff and $2,000 for the

9  remaining named Plaintiffs—totaling $27,000. Apple does not oppose this request for service

10  awards. *See* 155-1§ G.1. Pursuant to the Settlement, these awards, if granted, will be paid out

11  of the Settlement's common fund, in whatever amount the Court determines is reasonable and

12  appropriate. *Id.* These requested service awards are fair, reasonable, and adequate. Each of the

13  named Plaintiffs played a vital role in litigating this case, as they reviewed pleadings and other

14  filings, remained informed during all stages of the litigation, responded to discovery, searched

15  for and produced documents, and played an active role in approving the Settlement terms. Tufts

16  Decl. ¶ 19. Throughout this Action, they all worked to ensure the interests of putative Class

17  Members were protected and, when considering the Settlement, ensured that Settlement Class

18  Members obtained meaningful relief. *Id.*

19  **III.    CONCLUSION**

20       For the reasons stated above, Plaintiffs respectfully request that the Court (1) approve

21  Class Counsel's request for attorneys' fees in the amount of $5,000,000 and costs of $433,417.83;

22  and (2) approve service awards to the Class Representatives in the amount of $5,000 for the lead

23  Plaintiff and $2,000 for the other named Plaintiffs (totaling $27,000).

24

25

26

27

Dated:  January 10, 2025

CUNNINGHAM BOUNDS, LLC

*/s Lucy E. Tufts*

By:    LUCY E. TUFTS

STEVEN L. NICHOLAS (*pro hac vice*)
sln@cunninghambounds.com
LUCY E. TUFTS (*pro hac vice*)
let@cunninghambounds.com
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street
Mobile, Alabama 36604
Telephone: (251) 471-6191
Facsimile: (251) 479-1031

MICHAEL F. RAM (SBN 104805)
mram@forthepeople.com
MARIE N. APPEL (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, California 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6293

BENJAMIN H. KILBORN, JR. (*pro hac vice*)
benk@kilbornlaw.com
KILBORN LAW, LLC
P.O. Box 2164
Fairhope, Alabama 36533
Telephone: (251) 929-4620

*Attorneys for Plaintiffs*