CUNNINGHAM BOUNDS, LLC
Steven L. Nicholas (Admitted *Pro Hac Vice*)
sln@cunninghambounds.com
Lucy E. Tufts (Admitted *Pro Hac Vice*)
let@cunninghambounds.com
1601 Dauphin Street
Mobile, AL 36604
Telephone: (251) 471-6191

KILBORN LAW, LLC
Benjamin H. Kilborn, Jr. (Admitted *Pro Hac Vice*)
benk@kilbornlaw.com
P.O. Box 2164
Fairhope, AL 36533
Telephone: (251) 929-4620

MORGAN & MORGAN
COMPLEX LITIGATION GROUP
Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913

*Attorneys for Plaintiff Class*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS SMITH, CHERYL SMITH, KAREN SMITHSON, FRANK ORTEGA, ALBERTO CORNEA, MICHELLE ROGERS, DEBORAH CLASS, AMBER JONES, ALEXIS KEISER, LOORN SALEE, THOMAS PEAR, and TANNAISHA SMALLWOOD, individually and on behalf of all other similarly situated individuals,<br><br>                Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>                Defendant. | No. 4:21-cv-09527-HSG<br><br>Plaintiff Class's Notice of Motion, Motion for Final Approval of Class Action Settlement, and Memorandum of Points and Authorities in Support<br><br><u>CLASS ACTION</u><br><br>Dept.: Courtroom 2<br>Judge: Hon. Haywood S. Gilliam, Jr.<br><br>Date: April 10, 2025<br>Time: 2:00 p.m.<br><br>Third Amended Complaint Filed: October 31, 2023 |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................iv

MEMORANDUM OF POINTS AND AUTHORITIES.........................................1

I.       INTRODUCTION.................................................................................1

II.      CASE HISTORY AND BACKGROUND...........................................2

    A.  Plaintiffs' Allegations and Early Case Activities.................................2

    B.  Motions to Dismiss.................................................................2

    C.  Discovery.................................................................................3

    D.  Settlement Negotiations...........................................................3

III.     THE PROPOSED SETTLEMENT......................................................4

    A.   The Proposed Settlement Class...............................................4

    B.  Benefits to the Members of the Settlement Class ....................4

IV.      SETTLEMENT ADMINISTRATION AND CLASS RESPONSE...........5

    A.  Settlement Administration........................................................5

    B.  Class Notice............................................................................5

    C.  Settlement Class Members' Response......................................7

V.       ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS ...............7

VI.      CY PRES RECIPIENT.........................................................................8

VII.     LEGAL STANDARD ..........................................................................9

VIII.    ARGUMENT .......................................................................................10

    A.  The Court should confirm certificaiton of the Settlement Class ...........10

        1.   The Settlement Class meets the requirements of Rule 23(a) ......10

        2.   The Settlement Class meets the requirements of Rule 23(b)(3). ...............12

    B.  The Notice Plan provides the best notice practicable............................13

    C.  The Court should approve the Settlement because it is fair, adequate, and

        reasonable ...................................................................................14

1.   The Settlement is the result of good faith, arm's length negotiations before an experienced mediator. ..........................................................................14

2.   The Settlement falls within the range of possible approval. ......................15

   a.  There are risks with respect to Plaintiffs' case and further litigation will be lengthy and complex..........................................................15

   b.  Maintaining class action status through trial is risky...................17

   c.  The amount offered in settlement is fair, reasonable, and adequate ...............................................................................17

   d.  The extent of discovery completed supports final approval ..........20

   e.  Class Counsel believe strongly in the strength of this settlement..21

   f.  Settlement Class Members have been overwhelmingly positive about the Settlement ....................................................................21

   g.  No government entity has objected to the Settlement ...................21

3.   The Settlement treats Settlement Class Members equitably. ......................21

4.   The fee and expense award sought by Class Counsel is fair and reasonable ...............................................................................................22

V.     CONCLUSION ...................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allen v. Hyland's, Inc.*, No. 12-cv-1150, 2015 WL 7075758 (C.D. Cal. 2015).....................16

*Altamirano v. Shaw Indus., Inc.*, No. 13-CV-00939-HSG, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015)...........................................................................................................22

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)............................................................10

*Briseño v. Henderson*, 998 F.3d 1014, 1026-27 (9th Cir. 2021)..............................................15

*Canesco v. Ford Motor Co.*, 570 F.Supp.3d 872 (S.D. Cal 2021) ...........................................18

*Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) .............9, 13

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ...................................9

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)........................................................................11

*Farar v. Bayer AG*, No. 14-cv-4601, 2019 WL 6362387 (N.D. Cal. 2019) ...........................16

*Fitzhenry-Russell v. Keurig Dr. Pepper, Inc.*, No. 5:17-cv-00564 (N.D. Cal. 2019) .............18

*Free Range Content, Inc. v. Google, LLC*, 2019 WL 1299504, at *2-3 (N.D. Cal. 2019) .....18

*G. F. v. Contra Costa Cnty.*, No. 13-cv-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) .................................................................................................14, 22

*Hamilton v. TBC Corp.*, 821 F. App'x 720, 723 (9th Cir. 2020) ............................................16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).......................7, 9, 11, 14, 21

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011)...............15

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 536661, at *5 (N.D. Cal. Feb. 11, 2019) ......................................................11

*In re Intuitive Surgical Sec. Litig.*, No. 5:13-cv-01920-EJD, 2016 WL 7425926, at *7 (N.D. Cal. Dec. 22, 2016).........................................................................................12

*In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420, 2020 WL 7264559, at *15 (N.D. Cal. Dec. 10, 2020)........................................................................................15

*In re: MacBook Keyboard Litigation*, No. 5:18-CV-02813-EJD, 2021 WL 1250378, at *5 (N.D. Cal. Apr. 5, 2021)......................................................................................19

*In re Netflix Privacy Litig.*, No. 5:11-CV-00379, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ...............................................................................................................17

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015) .......................22

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) .............................................9

*In re: Sony VAIO Computer Notebook Trackpad Litigation*, No. 3:09-cv-02109 (S.D. Cal. Aug. 7, 2017) ................................................................................................................18

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prod. Liab. Litig.*, No. 2672, 2016 WL 4010049, at *10 (N.D. Cal. July 26, 2016) .............................10

*J.L. v. Cuccinelli*, No. 18-CV-04914-NC, 2019 WL 6911973, at *3 (N.D. Cal. Dec. 18, 2019) ...............................................................................................7

*Keilholtz v. Lennox Hearth Prod. Inc.*, 268 F.R.D. 330, 337 (N.D. Cal. 2010) .....................11

*Keller v. Elec. Arts, Inc.*, No. 4:09-cv-1967, 2015 WL 5005057, at *5 (N.D. Cal. Aug. 18, 2015) ...............................................................................................................13

*Kim v. Space Pencil, Inc.*, No. C 11-03796, 2012 WL 5948951, at *5 (N.D. Cal. Nov. 28, 2012) ...............................................................................................................15

*Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 834 (N.D. Cal. 2017) ...........................7, 17, 21

*LaGarde v. Support.com, Inc.*, No. C 12-0609, 2013 WL 1283325, at *7 (N.D. Cal. Mar. 26, 2013) ................................................................................................................21

*Mergens v. Sloan Valve Co.*, 2017 WL 9486153, at *6 (C.D. Cal. Sept. 18, 2017) ..............12

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ........21

*Nguyen v. Nissan North Am. Inc.*, 932 F.3d 811 (9th Cir. 2019) ...........................................18

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. Of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) ....................................................................................................15

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810-13 (1985)............................................14

*Priano-Keyser v. Apple, Inc.*, 2019 WL 7288941 (D. N.J. 2019) .........................................16

*Rieckborn v. Velti PLC*, No. 13-cv-03889, 2015 WL 468329, at *3 (N.D. Cal. Feb. 3, 2015) ................................................................................................9

*Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022)...................................................11

*Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010)....................................................11

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) .......................................... 17

*Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787 (N.D. Cal. 2019) ................................................. 16

*Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016) .......................................................................................................................... 22

*Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) ......................................................... 12

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011) ...................................... 11

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 452 (2016) .................................................. 13

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ........................................ 9

*Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) ................................................................................................... 14

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) ...... 10, 11, 13

**Statutes**

California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 ................................... 2

California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 ...................................... 2

Class Action Fairness Act, 28 U.S.C. § 1715 ........................................................................... 2

Magnuson Moss Warranty Act, 15 U.S.C. § 2301, *et seq* ...................................................... 2

Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791 ............................................. 2

**Rules**

Fed. R. Civ. P. 23(a) ....................................................................................................... 10, 11, 12

Fed. R. Civ. P. 23(b)(3) .................................................................................................. 10, 12, 13

Fed. R. Civ. P. 23(c)(2)(B). ..................................................................................................... 13

Fed. R. Civ. P. 23(e). .......................................................................................................... 9, 15

**NOTICE OF MOTION AND MOTION**

**PLEASE TAKE NOTICE** that on April 10, 2025 at 2:00 p.m., before the Honorable Haywood S. Gilliam, Jr. of the United States District Court for the Northern District of California, the Plaintiff Class will and does hereby move the Court, pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and (e), for entry of the proposed Final Approval Order and Judgment (Ex. 4) granting final approval of the proposed settlement of this class action.

This Motion is based on this Notice of Motion, the incorporated memorandum of points and authorities, the accompanying Declaration of Lucy Tufts (Ex. 2, "Tufts Decl."), the record in this action, the argument of counsel, and any other matters the Court may consider.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiffs respectfully request that the Court grant final approval of their proposed $20,000,000 non-reversionary cash settlement with Apple Inc., which compensates consumers who reported symptoms potentially associated with battery swell while owning a First Generation, Series 1, Series 2, or Series 3 Apple Watch.  The settlement is fair, reasonable, and adequate – and is a good recovery when balanced against the risks and delays of protracted litigation as well as the potential for no recovery at all.

Direct notice to the class was successful, reaching 97.05% of the 541,552 class members. No member of the Settlement Class filed an objection.  Only 19 members of the Settlement Class timely opted out, which represents 0.00003% of the Class.  Over 99.9% of the members of the Settlement Class chose to remain and receive the benefits of the settlement, favoring final approval and distribution of payments.

Based on an informed evaluation of the facts and governing legal principles, and given the decidedly positive response by Settlement Class Members to this Settlement, Plaintiffs respectfully request that the Court grant final approval.

## II.    <u>CASE HISTORY AND BACKGROUND</u>

The parties vigorously litigated this case for two years before agreeing to a settlement in principle.

### A.    **Plaintiffs' Allegations and Early Case Activities**

In December 2021, Plaintiffs filed this class action against Apple asserting claims arising out of an alleged defect in the Apple Watch.  (ECF 1).  Plaintiffs alleged violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"); violations of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq. ("CLRA"); fraudulent omissions; violations of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791 *et seq.*; breaches of implied warranties; and violations of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*  On March 28, 2022, Plaintiffs filed their First Amended Complaint, which named additional Plaintiffs and alleged additional state law claims. (ECF 31).

### B.    **Motions to Dismiss**

On April 27, 2022, Apple moved to dismiss the First Amended Class Action Complaint.  (ECF 41).  On February 17, 2023, the Court granted in part and denied in part the motion to dismiss with leave to amend. (ECF 80).  The Court declined to dismiss Plaintiffs' fraudulent omission claims, holding that Plaintiffs had adequately alleged pre-sale knowledge of the alleged defect.  *Id.*  Plaintiffs adequately pled their claims under the consumer protection statutes of Michigan, New York, and Texas.  *Id.*  The Court dismissed Plaintiffs' claims for equitable relief, most of their Song-Beverly Act claims, and their claims under the Magnuson-Moss Warranty Act, all with leave to amend.  *Id.*  The Court dismissed Plaintiffs' breach of implied warranty claims without leave to amend.  *Id.*

On March 17, 2023, Plaintiffs filed their Second Amended Consolidated Class Action Complaint ("SAC") (ECF No. 84).  On May 1, 2023, Apple moved to dismiss, arguing that Plaintiffs improperly added new Plaintiffs and claims and that the claims for equitable relief should be dismissed.  (ECF 100).

On October 30, 2023, the Court granted Plaintiffs' request to file a Third Amended

1   Complaint and mooted Apple's Motion To Dismiss the Second Amended Complaint. (ECF 134).

2   **C.    Discovery**

3   Settlement negotiations were informed by extensive discovery.  Apple was initially

4   served with Plaintiffs' discovery in March 2022.  On May 17, 2022, this Court denied Apple's

5   request to stay discovery.  (ECF 44).  Plaintiffs propounded eight sets of document requests and

6   one set of interrogatories to Apple and served seven subpoenas duces tecum on non-party

7   resellers and repair providers. Tufts Decl., ¶ 5.

8   The parties conducted extensive discovery negotiations, including a number of meet and

9   confer sessions, regarding topics including but not limited to a Stipulated Protective Order and

10  ESI Protocol; the scope of individual discovery requests; the time period applicable to discovery

11  requests; production of specific documents in native form; appropriate search terms and

12  custodians for ESI searches; methods for producing representative samples in lieu of total

13  document populations for customer complaint records; timing and volume of rolling productions;

14  and prioritization of discovery requests. Tufts Decl. ¶ 6.  Remaining disputed issues were

15  addressed in a joint letter filed with the Court on April 11, 2023.  *Id.*

16  Apple produced about 1.4 million pages of documents. Tufts Decl. ¶ 7.  Plaintiffs' counsel

17  reviewed, analyzed, summarized, and built a chronology of all these documents, which informed

18  expert analysis and settlement discussions.  *Id.*   Each Plaintiff responded to at least 16

19  interrogatories, 35 document requests, a request for inspection of their Apple Watch, and

20  produced documents.  *Id.* The parties also engaged in discovery motion practice before

21  Magistrate Judge Beeler. (ECF Nos. 65, 68, 71, 85, 92, and 98).

22  **D.    Settlement Negotiations**

23  On November 1, 2023, the parties had a full day mediation with Randall Wulff in Napa.

24  The parties discussed the facts and law as well as the strengths and weaknesses of their respective

25  positions.  At the conclusion, the Parties reached a tentative agreement.  Tufts Decl. ¶ 8.  Follow

26  up discussions ensued for several weeks and on February 6, 2024, the parties signed a term sheet.

27  A final settlement was executed on August 12, 2024.  *Id.*

1  **III.    THE PROPOSED SETTLEMENT**

2      **A.    The Proposed Settlement Class**

3          The Settlement contemplates relief for the following proposed Settlement Class:

4  "All natural persons who reside in the United States, who own or owned any model First

5  Generation, Series 1, Series 2 or Series 3 Apple Watch for personal and/or household use, and

6  who are reflected in Apple's records as having reported the Covered Issues in the United States."

7  (Ex. 1, ¶ 24).  "Covered Issue(s)" means "issues reported to Apple regarding the Covered

8  Watches reflected in Apple's records as having reported symptoms potentially associated with

9  battery swell."  (Ex. 1, ¶ 5).

10     **B.    Benefits to the Settlement Class Members**

11         The Settlement benefits squarely address the issues raised in the litigation and provide

12  significant relief to the Settlement Class Members.  The Settlement Agreement anticipated that

13  the cash payment would be either $20 for each Covered Device or, if necessary, a pro rata portion

14  of the Net Settlement Fund.  (Exh. 1, Section B(4)).  Currently, the Settlement Administrator has

15  valid contact information for 525,559 members of the Settlement Class (97.05%) and only 19

16  individuals excluded themselves.  While the final distribution to Settlement Class Members will

17  be affected by the Court's decisions with respect to attorneys' fees, expenses, and service awards,

18  as well as the final cost of administration of the settlement, Plaintiffs reasonably expect each

19  Settlement Class Member to receive approximately $25.00 per eligible Watch.  The payment is

20  appropriate given that consumers who did not have AppleCare+ (Apple's available service plan)

21  paid $79 for service related to Apple Watch battery issues.   It is also consistent with the

22  preliminary results of Plaintiffs' choice-based conjoint survey.[1]  (ECF 161, pp. 3-4).

23

24  [1] Overall, the preliminary results from Plaintiffs' choice-based conjoint survey (which we expect
    Apple would challenge) reflected that consumers would have required a discount of
25  approximately $156 per unit to accept the alleged defect ("Required Discount").  The Required
    Discount in the conjoint survey reflects a scenario in which consumers were asked to assume that
26  the defect was certain to occur.  A final damage number would incorporate a  discount to account
    for  the actual probability of occurrence, so the actual damage model would be far less than $156
27  per class member.

The Settlement Agreement also anticipated that if, following the deadline for Settlement Class Members to update or confirm payment information and elect a payment method, it appears that the Net Settlement Fund minus the sum of all Class Payments will exceed $50,000, then each Settlement Class Member who has confirmed or updated payment information and made a payment selection by the Response Deadline, as well as any Settlement Class Members for whom valid, current payment information can be confirmed by the Settlement Administrator, will receive an equal, total payment of up to a maximum of $50 for each Covered Device.  (Exh. 1, Section B(4)).  Only then will any remaining funds be paid to *cy pres* recipient The Rose Foundation's Consumer Products Fund.  At this time, the parties anticipate that nearly all net settlement funds after attorneys' fees, expenses, service awards, and costs of administration will be distributed to Settlement Class Members.  Under no circumstances will the settlement funds revert to Apple.

## IV.   SETTLEMENT ADMINISTRATION AND CLASS RESPONSE

### A.  Settlement Administration

The Court approved the Parties' selection of Angeion Group ("Angeion") as the Settlement Administrator. (ECF 163).  Because the deadline for Settlement Class Members to select their preferred payment method and update or confirm their payment information has not passed, the total costs of settlement administration are not yet final. (Ex. 3, Decl. of Steven Weisbrot, "Weisbrot Decl.," ¶ 26).  Accordingly, Plaintiffs will file a supplement shortly after the submission deadline detailing the final costs of settlement administration.

### B.  Class Notice

On October 25, 2024, the Court approved the proposed notice plan (with a few modifications).  (ECF 163, pp. 12-14).  On January 8, 2025, Angeion, the Settlement Administrator, posted copies of the Settlement Agreement, the Plaintiffs' Motion for Preliminary Approval, the Third Amended Class Action Complaint, the Order Granting the Motion for Preliminary Approval, and the Joint Submission of Stipulated Schedule to the settlement website. (Weisbrot Decl, ¶ 18).  Angeion also posted information on how to object or request exclusion,

how Class payments would be distributed, contact information for Class Counsel and Angeion, as well as a form for Settlement Class Members to select their preferred payment method and update or confirm their payment information. *Id.*   A copy of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards was posted to the settlement website on January 10, 2025. *Id.*.

In compliance with the Preliminary Approval Order, Angeion began sending notice of the settlement to the Class starting January 8, 2025 (by email) and January 10, 2025 (by mail). *Id.* ¶¶ 12, 14.  Of the 541,552 Class Members, 525,542 Class Members – 97.05% of the Class – have received direct notice by email or by postcard, in the forms approved by this Court.  *Id.* ¶ 10.  Apple did not have contact information for 24 Settlement Class Members and another 15,962 Settlement Class Members ultimately could not be reached by either email or via mail. *Id.* ¶¶ 10.

Apple had email addresses for 529,723 Settlement Class Members and mailing addresses for an additional 11,805 Settlement Class Members. *Id.* ¶¶ 12, 14.  Angeion initially sent email notice to all Settlement Class Members with email addresses and postcard notices to Settlement Class Members who either did not have an email address or had an invalid email address. *Id.* The email campaign successfully reached 514,241 Settlement Class Members (97.08%), with 15,482 emails returned as undeliverable. *Id.* ¶ 13. Angeion also remailed postcard notices to Settlement Class Members whose postcards were returned with a forwarding address or to Settlement Class Members where an address search identified a new address. *Id.* ¶ 16. In total, 525,542 Settlement Class Members, or 97.05% of the Settlement Class, received direct notice of the Settlement. *Id.* ¶ 10.  None of the Settlement Class Members objected and only 19 (0.00003%) requested exclusion. *Id.* ¶¶ 23-24.   The total cost of notice to the Settlement Class to was $57,282.60. *Id.* ¶ 25. The total cost of settlement administration remains outstanding.  *Id.* ¶ 26.

On August 22, 2024, Angeion provided timely Class Action Fairness Act ("CAFA") notice pursuant to 28 U.S.C. § 1715 to the Attorneys General of all states and territories and the Attorney General of the United States. *Id.* ¶ 6; *id.*, Ex. 3A (copy of CAFA Notice).

### C.  Settlement Class Members' Response

The reaction of the Class has been overwhelmingly positive and weighs in favor of approval.

Based on the dissemination of this Notice Plan, and following establishment of the Settlement Website, Angeion has received a total of 18,122 Payment Election Form submissions as of March 18, 2025.  *Id.* ¶ 21.  Based on the total 541,552 Settlement Class Members, this represents a 3.35% submission rate. *See id.* ¶.  However, this Payment Election Form merely allows a Settlement Class Member to select a preferred payment method.  Because the Settlement Administrator was also able to confirm valid, current contact information for 97.05% of the Settlement Class Members, 525,542 members of the Settlement Class will receive an equal share of the class payments regardless of whether they have submitted a Payment Election Form.

The deadline for Settlement Class Members to submit a written request for exclusion from the Settlement or to object to the Settlement was February 24, 2025. (ECF 167).  Nineteen individuals, representing 0.00003% of the Class, opted out after a comprehensive notice campaign.  No Settlement Class Member has filed an objection.

That over 99.9% of the Class stayed and accepted the Settlement provides an "objective positive commentary as to its fairness" and weighs in favor of approval.  *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 834 (N.D. Cal. 2017) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)).  Moreover, that no settlement Class Member has objected "raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members" and weighs in favor of final approval. *Id.* at 833–34; *see also J.L. v. Cuccinelli*, No. 18-CV-04914-NC, 2019 WL 6911973, at *3 (N.D. Cal. Dec. 18, 2019) (no objection to the settlement weighs in favor of final approval). The Settlement Class Members' overall reaction to the Settlement supports approval.

## V.  **ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**

Class Counsel have sought an attorneys' fee award of $5,000,000, reimbursement of litigation expenses of $433,417.83, and service awards of $5,000 to the lead Plaintiff Chris Smith

and $2,000 for the remaining eleven named Plaintiffs (totaling $27,000). (ECF 168). As Class Counsel explains more fully in their motion, the requested attorneys' fees are reasonable and justified under either a percentage of the recovery method or a lodestar cross-check, and the requested costs are reasonable. *Id.* Class Counsel's requested attorneys' fees represent 25% of the total Settlement Fund, equal to the benchmark in this District. (ECF 168, pp. 6-7).

Since the filing of that motion, Class Counsel have continued to communicate with potential Settlement Class Members, with Angeion, and with Apple regarding the Settlement and settlement administration. Further, Class Counsel prepared this Motion and worked closely with Angeion regarding the preparation of a declaration fully describing all steps taken to provide notice to Settlement Class Members and administer the Settlement. While the expenditure of this additional time was both reasonable and justified, Class Counsel do not seek additional fees associated with it. For the reasons stated in their previous motion (ECF 168), Class Counsel ask that the Court grant the requested attorneys' fees of $5,000,000, costs in the amount of $433,417.83, and service awards totaling $27,000, and incorporate these into its final approval of the Settlement.

## VI. ***CY PRES* RECIPIENT**

Based upon the response rate by Settlement Class Members as of the date of this Motion (and the rate of submissions by Settlement Class Members), the finalized costs of settlement administration, and Class Counsel's requested attorneys' fees and expenses and class representative service awards (if approved by the Court), a small portion of Net Settlement Funds may remain. The Parties have jointly proposed The Rose Foundation's Consumer Products Fund as the *cy pres* recipient. (ECF 155-1, B9). The Rose Foundation's Consumer Products Fund's work is closely related to the issues raised by this lawsuit and furthers the objectives of this Settlement Agreement because it was created to "help consumers understand product labeling, marketing, advertising and product performance claims; the potential personal and environmental health impacts of product ingredients; and to promote truth-in-advertising and truth-in-labeling with required warnings and disclosures." (https://rosefdn.org/consumer-products-fund).

Neither Plaintiffs nor Class Counsel nor Apple has any pre-existing relationship with the Consumer Products Fund. Tufts Decl., ¶ 15. Plaintiffs now ask, in the event any Net Settlement Funds remain following distribution to Settlement Class Members, that the Court confirm The Rose Foundation's Consumer Products Fund as the *cy pres* recipient and order that the remainder of Net Settlement Funds be distributed to it.

## VII.  <u>LEGAL STANDARD</u>

In the Ninth Circuit, there is a "strong judicial policy that favors settlements" of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). Recognizing that "[p]arties represented by competent counsel" are "positioned . . . to produce a settlement that fairly reflects each party's expected outcome in [the] litigation," courts favor approval of settlements. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Federal Rule of Civil Procedure 23(e) governs approval of class action settlements. At the final approval stage, the district court must determine whether the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (internal citations and quotations omitted); *see also* Fed. Civ. P. 23(e)(2). In the Ninth Circuit, courts are guided by eight factors to aid in this determination:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the Settlement.

*Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004). However, a court need not weigh every factor, and "different factors may predominate in different factual contexts." *Rieckborn v. Velti PLC*, No. 13-cv-03889, 2015 WL 468329, at *3 (N.D. Cal. Feb. 3, 2015) (citation omitted).

Most of these factors were addressed in Plaintiffs' Motion for Preliminary Approval and are incorporated by reference. (ECF 155). The Court found those factors weighed in favor of preliminary approval and nothing has changed. (ECF 163). The factor the Court did not consider at preliminary approval – reaction of the Class – also weighs in favor of granting final approval of the Settlement, *supra*, Section IV(C). These factors are also discussed *infra* at pp. 16-24.

## VIII.  ARGUMENT

### A.  The Court should confirm certification of the Settlement Class.

Certification of a settlement class is a "two-step process." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prod. Liab. Litig.*, No. 2672, 2016 WL 4010049, at *10 (N.D. Cal. July 26, 2016) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)). First, the court must determine that the Settlement class satisfies the four requirements of Rule 23(a). *Id.* The court then must examine whether a "class action may be maintained under [Rule 23(b)]." *Id.* (citing *Amchem Prods.*, 521 U.S. at 613). Unlike other class actions, however, when presented with a class action settlement, the court need not consider manageability concerns. *Amchem Prods.*, 521 U.S. at 620. The Court has already held that certification for settlement purposes was appropriate at preliminary approval. (ECF 163). For the same reasons, the Court should confirm certification of the Settlement Class.

### 1.  The Settlement Class meets the requirements of Rule 23(a).

The Settlement Class as defined is sufficiently numerous so as to make joinder impracticable. Fed. R. Civ. P. 23(a)(1). After Apple provided the Class List to the Settlement Administrator, Angeion removed duplicative records, which resulted in a total of 541,552 unique Settlement Class Members. Weisbrot Decl. ¶¶ 7-10. Thus, the total Settlement Class, including the categories of Settlement Class Members, satisfies Rule 23(a)'s numerosity requirement.

The proposed Settlement Class satisfies the commonality requirement of Rule 23(a), which requires that class members' situations "share a common issue of law or fact, and [be] sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). The common issues that

their claims share include, but are not limited to: (i) whether the Apple Watch was defective; (ii) whether the alleged defect caused the Apple Watch to fail or otherwise suffer damage; and (iii) whether Apple had knowledge of the alleged defect and, if so, failed to disclose the alleged defect. These questions are capable of class-wide resolution and would "resolve an issue that is central to the validity of each one of the claims in one stroke." *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 536661, at *5 (N.D. Cal. Feb. 11, 2019) (citation omitted). Therefore, commonality is satisfied.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class," and "assure[s] that the interest of the named representative[s] align[] with the interests of the class," *Wolin*, 617 F.3d at 1175 (citation omitted). This requirement, like commonality, is "permissive and requires only that the representative's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010), *abrogated on other grounds by Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022) (citation and internal quotation marks omitted); *see also Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011) (noting that typicality is "satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability"), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).

Here, Plaintiffs' claims arise from the same course of conduct. Because all Settlement Class Members purchased a First Generation, Series 1, Series 2, or Series 3 Apple Watch and allegedly experienced a Covered Issue, all "the named plaintiffs have the same or similar [alleged] injury as the unnamed [Settlement Class Members]." *Keilholtz v. Lennox Hearth Prod. Inc.*, 268 F.R.D. 330, 337 (N.D. Cal. 2010). Accordingly, Plaintiffs' experiences are typical of the Settlement Class Members' experiences, and their alleged injuries are similar. *See id*. at 338. Further, Plaintiffs are adequate class representatives with no conflict of interest and are represented by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020; Tufts Dec. ¶ 9.

As Rule 23(a)(4) requires, Plaintiffs and their counsel will "fairly and adequately protect the interests of the class." Courts ask two questions here: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). "To establish adequacy, class representatives generally need only to be familiar with the basis for the suit and their responsibilities as lead plaintiffs such that they can uphold their obligations to other class members." *In re Intuitive Surgical Sec. Litig.*, No. 5:13-cv-01920-EJD, 2016 WL 7425926, at *7 (N.D. Cal. Dec. 22, 2016) (quotations and citation omitted).

Plaintiffs agreed to serve in a representative capacity, communicated with their attorneys, fulfilled their discovery obligations, and acted in the best interests of the Settlement Class. Tufts Decl., ¶ 9. *See Mergens v. Sloan Valve Co.*, 2017 WL 9486153, at *6 (C.D. Cal. Sept. 18, 2017) (adequacy requirement met where plaintiff had no interests antagonistic to the class).

Class Counsel have demonstrated their adequacy. The attorneys working on this case are experienced in prosecuting consumer class actions and other complex cases. Tufts Decl., ¶¶ 1-4; Ram Decl., ¶¶ 1-13 (ECF 155-3); Kilborn Decl., ¶¶ 1-4 (ECF 155-4). They have dedicated ample time and resources to investigating, pleading, and pursuing these claims and will continue to devote the resources necessary to prosecute the litigation to judgment. Tufts Decl. ¶ 10; (ECF 168).

## 2.   The Settlement Class meets the requirements of Rule 23(b)(3).

The Settlement Class meets the requirements of Rule 23(b)(3) because: (1) common questions predominate over any questions affecting only individual members here; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This Court has already found that the Settlement Class meets this requirement, and there are no new developments that would change this determination. (ECF 163, pp. 5-6).

First, the common questions in this case depend on whether Apple is liable for the alleged

battery swell defect, and are exactly the kind of predominant common issues that make class certification appropriate. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 452 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)."). Second, there are over 540,000 Settlement Class Members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress in a complex case against Apple. Thus, this Settlement is the most practical outcome for individuals with modest claims to recover without bearing expenses or other risks of extensive litigation. *See Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.") (citations omitted). Thus, certification of the Settlement Class is appropriate in support of final approval.

### B.  The Notice Plan has provided the best notice practicable.

For a settlement class, the Court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice should "generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Angeion estimates that Notice reached approximately 97.05% of Settlement Class Members. Weisbrot Decl. ¶ 10; *see also supra* Section IV.B. (explaining all Notice efforts). This illustrates the wide, successful reach of the Notice Plan and aligns with those in other court approved notice programs. *See, e.g., Keller v. Elec. Arts, Inc.*, No. 4:09-cv-1967, 2015 WL 5005057, at *5 (N.D. Cal. Aug. 18, 2015) (granting final approval and stating notice process with "almost 95%" reach rate provided "due and adequate notice to the Class"). Accordingly, Plaintiffs ask the Court to find: (1) the Notice Plan was reasonably calculated to give actual notice to Settlement Class Members of their rights to receive benefits from the Settlement, or otherwise how to exclude themselves from or object to the Settlement; and (2) the Notice Plan satisfied due

1    process requirements and any other applicable requirements under federal law. *Hanlon*, 150 F.3d

2    at 1024 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810-13 (1985)).

3        Angeion's efforts throughout the Notice period effectuated the Notice Plan, as ordered

4    by this Court in its Preliminary Approval Order, and were designed to ensure the widest possible

5    reach and provide the most practicable notice of the Settlement to Settlement Class Members.

6    Angeion's efforts as Settlement Administrator, and the Notice as effectuated, support final

7    approval.

8        **C. The Court should approve the Settlement because it is fair, reasonable, and**

9            **adequate.**

10       The Settlement represents a fair, reasonable, and adequate resolution to this litigation,

11   providing meaningful relief to the Settlement Class Members. The relevant considerations weigh

12   in favor of finally approving the Settlement.

13           **1. The Settlement is the result of good faith, arm's length negotiations**

14               **before an experienced mediator.**

15       The Parties reached the Settlement following a day-long mediation session and extensive

16   discussions thereafter overseen by Randall Wulff, an experienced mediator capable of analyzing

17   the strengths and weaknesses of the parties' cases. Tufts Decl. ¶ 8. Mr. Wulff offered a

18   reasonable, unbiased analysis of each party's arguments, claims, and defenses, helping the Parties

19   to recognize the validity (and shortcomings) of their positions.  Mr. Wulff ensured that the

20   Parties' negotiations were conducted in good faith and at arm's length. After an approximately

21   10-hour mediation session and numerous discussions thereafter, the Parties reached an agreement

22   to settle. *Id.*  "[T]he assistance of an experienced mediator in the settlement process confirms that

23   the settlement is non-collusive."  *See G. F. v. Contra Costa Cnty.*, No. 13-cv-03667-MEJ, 2015

24   WL 4606078, at *13 (N.D. Cal. July 30, 2015) (citation omitted); *Villegas v. J.P. Morgan Chase*

25   *& Co.*, No. CV 09-00261, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (noting that private

26   mediation "tends to support the conclusion that the settlement process was not collusive").

27       Also, none of the typical indicia of collusion—such as (i) plaintiff's counsel receiving a

1   disproportionate distribution of the settlement, (ii) the inclusion of a "clear sailing provision, or

2   (iii) the settlement agreement providing for reversion—exist here. *Briseño v. Henderson*, 998

3   F.3d 1014, 1026-27 (9th Cir. 2021); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935,

4   946-47 (9th Cir. 2011).  Class Counsel seek a 25% fee award, which is equal to the benchmark

5   in this District.  There is also no "clear sailing" provision because any fees awarded will be paid

6   from the common fund, not separately by Apple, and the Settlement Agreement does not include

7   any provision wherein Apple agrees not to oppose the attorneys' fees request. *See, e.g., In re*

8   *Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420, 2020 WL 7264559, at *15 (N.D. Cal.

9   Dec. 10, 2020). There is no reversionary component of the Settlement.  The lack of any indicia

10  of collusion and the Parties reaching Settlement through the aid of an experienced mediator

11  substantially favor final approval.

12         **2.   The Settlement falls within the range of possible approval.**

13         It is axiomatic that "the very essence of a settlement is compromise, 'a yielding of

14  absolutes and an abandoning of highest hopes.'" *Officers for Just. v. Civ. Serv. Comm'n of City*

15  *& Cnty. Of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982). The Settlement provides substantial

16  monetary relief to the Class considering: (1) the costs, risks, expenses, and delays of trial and

17  appeal; (2) the effectiveness of the proposed distribution plan; and (3) the fair and explained

18  terms of the substantial gross Settlement fund that will sufficiently pay for all of the settlement

19  costs, including any award of attorneys' fees and expenses and award of class representative

20  service awards, as approved by the Court. Fed. R. Civ. P. 23(e)(2)(C).

21         **a.   There are risks with respect to Plaintiffs' case and further**

22              **litigation will be lengthy and complex.**

23         The Settlement provides substantial relief to the Class in the face of the inherent

24  uncertainties of litigation. "The substantial and immediate relief provided to the Class under the

25  Settlement weighs heavily in favor of its approval compared to the inherent risk of continued

26  litigation, trial, and appeal, as well as the financial wherewithal of the defendant." *Kim v. Space*

27  *Pencil, Inc.*, No. C 11-03796, 2012 WL 5948951, at *5 (N.D. Cal. Nov. 28, 2012).

This case presents significant risks to recovery. On the merits, Apple disputes all Plaintiffs' claims. Since inception, Apple has denied that its popular Apple Watch contained any alleged defect. *See generally* Motion to Dismiss, ECF 41. Additionally, Apple would likely argue that class treatment is not appropriate under the circumstances and would point to what it claims are individualized issues. *See, e.g., id.* at p. 2, fn.3 (arguing that each model encompasses multiple design variations).

Apple's deadline to respond to Plaintiffs' Third Amended Complaint was stayed after the Parties reached a tentative agreement at mediation. (ECF 138). Had the Parties not reached a settlement, Plaintiffs anticipate that Apple would have filed another Motion to Dismiss. Similar cases alleging the same defect in the Apple Watch that Plaintiffs alleged in this case were dismissed at the pleadings stage. In *Sciacca v. Apple, Inc.*, a district court granted Apple's Motion to Dismiss the Amended Complaint on behalf of a putative class for failure to adequately allege the defect under Rule 9(b)'s heightened pleading standard, failure to plead an actionable misrepresentation or omission, and failure to adequately plead Apple's knowledge of the defect (among other things). 362 F. Supp. 3d 787 (N.D. Cal. 2019). In *Priano-Keyser*, a federal district court granted Apple's Motion to Dismiss another putative class action complaint for similar reasons. 2019 WL 7288941 (D. N.J. 2019).

There is also meaningful risk that a factfinder could agree with Apple on the merits at trial. Indeed, consumer class action trials are inherently risky. Seemingly meritorious class actions have recently gone to trial in California, with judgments returned for defendants. *See e.g., Farar v. Bayer AG*, No. 14-cv-4601, 2019 WL 6362387 (N.D. Cal. 2019) (reading of the verdict); *Allen v. Hyland's, Inc.*, No. 12-cv-1150, 2015 WL 7075758 (C.D. Cal. 2015) (verdict form)).

Similarly, summary judgment is also not without risk, where Apple could potentially analogize to the Ninth Circuit's dismissal in *Hamilton v. TBC Corp.*, 821 F. App'x 720, 723 (9th Cir. 2020). There, the Ninth Circuit held that plaintiffs were not able to pinpoint and prove a defect to support their claims. Proving an actionable defect can be difficult even in strong cases. *Id.* Therefore, in the face of additional months, if not years, of litigation, Plaintiffs must weigh

1   the very real risk that the Court—or a jury—could be unconvinced that a legitimate defect exists

2   in the Watches.

3        Accordingly, while Plaintiffs vigorously dispute Apple's contentions on the merits, the

4   risks of litigation weigh in favor of settlement. *See Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823,

5   832 (N.D. Cal. 2017) (approving settlement where "[c]ase law suggests that plaintiff would have

6   faced challenges in continuing to litigate" and "unless the settlement is clearly inadequate, its

7   acceptance and approval are preferable to lengthy and expensive litigation with uncertain

8   results").

9            **b.  Maintaining class action status through trial is risky.**

10       The risk of maintaining class action status through trial supports final approval. Tufts

11  Decl. ¶ 13. A class has not been certified in this case, and Apple will oppose certification if the

12  case proceeds. *See In re Netflix Privacy Litig.*, No. 5:11-CV-00379, 2013 WL 1120801, at *6

13  (N.D. Cal. Mar. 18, 2013).   Indeed, Apple would likely argue that individual questions

14  predominate over common questions with regard to exposure, reliance, materiality, causation,

15  and injury. Although Plaintiffs assert that certification for litigation is appropriate here, the risk

16  remains that the Court could refuse to certify a class. In that event, putative class members would

17  receive nothing. And even if the Court did certify a litigation class, Plaintiffs would still face

18  potential review on appeal, and would need to prove their claims at trial, which carries serious

19  expense and further delay—potentially delaying recovery for years. Likewise, Plaintiffs would

20  continue to face the risk that a "district court may decertify a class at any time." *Rodriguez v. W.*

21  *Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). The Settlement allows Plaintiffs and Settlement

22  Class Members to avoid these risks, additional expenses, and delays in favor of immediate

23  recovery.

24            **c.  The amount offered in settlement is fair, reasonable, and**

25                **adequate.**

26

27

Plaintiffs and their counsel secured for the Settlement Class a gross Settlement Fund of $20,000,000, which is reasonable in relation to potential damages that may be awarded at trial for the Settlement Class.

As discussed above, after mediation with Mr. Wulff and analysis of the facts and risks, the Plaintiffs concluded that it was appropriate to define a Settlement Class of First Generation, Series 1, Series 2 and Series 3 Apple Watch owners nationwide who allegedly experienced a manifestation of the defect and who contacted Apple regarding the Covered Issues. Thus, the recovery under this Settlement is different than recovery at trial. But settling on these bases avoids the more significant risks associated with seeking and maintaining litigation certification and then trying claims for a class that might include consumers who never experienced any alleged battery swelling issues and enjoyed full use of their Watch.

The funds received per class member that will be distributed as part of this settlement (approximately $25.00 per device) are consistent with other class action settlements approved by California district courts. *See* ECF 155-6 (chart of comparable settlements); *see also Free Range Content, Inc. v. Google, LLC*, 2019 WL 1299504, at *2-3 (N.D. Cal. 2019) (approving settlement which paid as low as $10 per class member); Order Granting Motion for Final Approval of Class Action Settlement, *In re: Sony VAIO Computer Notebook Trackpad Litigation*, No. 3:09-cv-02109 (S.D. Cal. Aug. 7, 2017), Dkt. No. 378 at 4 (approving settlement paying $5 to class members whose laptops did not manifest the defect); *see also* Order Granting Preliminary Approval of Class Action Settlement, *Fitzhenry-Russell v. Keurig Dr. Pepper, Inc.*, No. 5:17-cv-00564 (N.D. Cal. Jan. 10, 2019), Dkt. No. 335 at 3 (approving settlement which paid class members $2 to $5.20 without proof of purchase or $40 with proof of purchase).

Damages under each of the alleged causes of action in this case would likely be measured by either an impairment in value analysis or the cost of repair. *Canesco v. Ford Motor Co.,* 570 F.Supp.3d 872 (S.D. Cal 2021). These metrics would define the lost benefit of the bargain attributed to the defect alleged in the operative complaint. *Nguyen v. Nissan North Am. Inc.*, 932 F.3d 811 (9th Cir. 2019) (benefit of the bargain model appropriate for CLRA, breach of

warranty and Song Beverly class claims).  In its ruling on a prior motion to dismiss, the Court dismissed Plaintiffs' claims to the extent they sought equitable relief – calling the viability of injunctive relief into question.  (ECF 80).   Plaintiffs also sought punitive damages, which require a higher standard of proof.  Given the uncertainty of obtaining both injunctive relief and punitive damages, Plaintiffs' assessment does not include these types of relief.   Instead, Plaintiffs focus on the relief most likely to be obtained had this case been certified and proceeded to trial.

For impairment in value damages, Plaintiffs intended to use a choice-based conjoint analysis ("CBC") to calculate class-wide damages.  Plaintiffs' experts conducted an initial choice-based conjoint survey targeting the decline in willingness-to-pay associated with the point-of-purchase disclosure of the alleged Apple Watch defect described in Plaintiffs' Complaint.  A conjoint analysis calculates the reduction in market value due to the discrepancy between what a consumer thought they were buying and what they actually received – i.e., it looks at how much of a discount a consumer would have demanded if they had known a feature they were promised was defective.  A CBC analysis is based on a survey in which consumers are asked to pick between products, each of which is comprised of a bundle of features. Through a series of these choices, respondents indirectly reveal the value they attribute to an individual feature (without knowing what feature was being tested).  Conjoint analyses are a "well-recognized economic method used to study and quantify consumer preferences." *In re: MacBook Keyboard Litigation*, No. 5:18-CV-02813-EJD, 2021 WL 1250378, at *5 (N.D. Cal. Apr. 5, 2021).

Overall, the preliminary results from Plaintiffs' choice-based conjoint survey (which Apple would challenge) reflected that consumers would have required a discount of approximately $156 per unit to accept the alleged defect ("Required Discount").  The Required Discount in the conjoint survey reflects a scenario in which consumers were asked to assume that the defect was certain to occur.  A final damage number would incorporate a  discount to account

1  for the actual probability of occurrence, so the actual damage model would be far less than $156

2  per class member.

3      Plaintiffs examined service costs as well. Consumers who do not have AppleCare+ pay

4  $79 for service related to Apple Watch battery issues.

5  (https://support.apple.com/watch/repair).[2] If all 541,552 consumers who reported symptoms

6  potentially associated with battery swell to Apple paid $79 for battery service to repair the

7  watch, the total amount that those consumers paid was approximately $42,782,608.00. Some

8  consumers received a free replacement watch through Apple's one-year warranty program or its

9  screen replacement programs – so the amount spent on service costs is less than this estimate.

10      Because continued litigation carried considerable risk of a lesser recovery or none at all,

11  the discount Plaintiffs accepted to resolve the case now was more than reasonable. Apple

12  vigorously denies liability and argues that its Watches are not defective, and further that changes

13  in various generations of the Apple Watch would defeat an attempt to show a common defect

14  across different generations of Watches. Plaintiffs would have to maintain class certification

15  through judgment and appeal and overcome numerous defenses including Apple's arguments

16  that it lacked sufficient presale knowledge to create a duty to disclose the alleged defect, that it

17  owes no damage because it provided adequate repairs, and that most purchasers did not

18  experience the alleged defect.

19      The $20,000,000 proposed settlement provides Settlement Class Members the

20  opportunity to achieve a certain recovery without the burden of having to make a claim. It also

21  ensures they will be compensated now, as opposed to waiting years for an uncertain recovery.

22  The settlement payment significantly offsets the repair costs.

23          **d. The extent of discovery completed supports final approval.**

24      Settlement negotiations were informed by extensive discovery, as described in Section

25  II(C). Class Counsel have conducted sufficient discovery, including from Apple and through

26

27  [2] Customers who purchased AppleCare+ received the same battery service without additional
   cost. https://support.apple.com/watch/repair

1   work with experts, to permit Class Counsel, the Class Representatives, and the Court to

2   intelligently and fairly evaluate the fairness and adequacy of the Settlement. Tufts Decl., ¶ 6.

3   This favors final approval.

4   **e.  Class Counsel believe strongly in the strength of this settlement.**

5   Class Counsel, who are experienced in consumer class action litigation, believe the

6   Settlement represents an outstanding recovery for the Settlement Class given the risks of

7   continuing the litigation. *Id.* at ¶ 12. "Great weight is accorded to the recommendation of counsel,

8   who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural*

9   *Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

10   **f.  Settlement Class Members have been overwhelmingly positive**

11   **about the Settlement.**

12   This factor is addressed at Section IV(C).  In short, 19 individuals, representing 0.00003%

13   of the Class, opted out after a comprehensive notice campaign.  No Settlement Class Member

14   has filed an objection.  That over 99.9% of the Class stayed and accepted the Settlement provides

15   an "objective positive commentary as to its fairness" and weighs in favor of approval.  *Knapp*,

16   283 F.Supp.3d at 834 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)).

17   **g.  No government entity has objected to the Settlement.**

18   The Settlement Administrator sent CAFA notice on August 22, 2024, to the Attorneys

19   General of all states and territories and to the Attorney General of the United States. Weisbrot

20   Decl. ¶ 6.  No governmental entity has up to this point filed any objection to the Settlement. This

21   further supports final approval of the Settlement. *See LaGarde v. Support.com, Inc.*, No. C 12-

22   0609, 2013 WL 1283325, at *7 (N.D. Cal. Mar. 26, 2013) (noting that CAFA presumes that,

23   once put on notice, state or federal officials will raise any concerns that they may have during

24   the normal course of the class action settlement procedures").

25   **3.  The Settlement treats Settlement Class Members equitably.**

26   The Court should examine whether the Settlement provides preferential treatment to any

27   class member. This analysis turns on whether there is any disparity among what Class Members

are poised to receive and, if so, whether the Settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct." *Altamirano v. Shaw Indus., Inc.*, No. 13-CV-00939-HSG, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015); *G.F. v. Contra Costa Cty.*, No. 13-CV-03667-MEJ, 2015 WL 4606078, at *14 (N.D. Cal. July 30, 2015) (analyzing whether settlement "appears uniform").

Here, all members of the proposed Settlement Class are entitled to the same benefits. The Settlement Agreement authorizes a Service Award for each Named Plaintiff in recognition of the services they performed on behalf of the class. The Service Awards requested are not "unreasonably large and thus unfair." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015). Rather, the awards contemplated here are lower than or equal to "typical incentive awards in the Ninth Circuit, where $5,000 is presumptively reasonable." *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016); *see also Online DVD-Rental*, 779 F.3d at 947-48 (affirming awards of $5,000 to each of nine class representatives). The amount requested is appropriate given the time, effort, and risk of each Named Plaintiff's participation in this Action. Tufts Dec. ¶ 7.

### 4. The fee and expense award sought by Class Counsel is fair and reasonable.

Class Counsel moved separately for $5,000,000 in attorneys' fees and $433,417.83 in expenses. (ECF 168); *see also* Section V. As explained more fully in that motion and above, Class Counsel's requested attorneys' fees and expenses are fair, reasonable, and justified. Class Counsel's requested attorneys' fees represent a 25% request, and their total lodestar as of January 10, 2025 represented a .90 multiplier. (ECF 168, pp. 24-26). Since that date, Class Counsel have expended additional time overseeing the administration of this Settlement, communicating with potential Settlement Class Members, drafting this Motion, and will spend additional time preparing for the Final Approval Hearing. Class Counsel will also continue to expend time following the Final Fairness Hearing, including continuing to oversee administration of the Settlement, filing a supplement regarding the final Settlement Class data, and overseeing

distributions to the Settlement Class. Tufts Decl., ¶ 16.  Class Counsel do not intend to include any time expended on these further efforts in their calculated lodestar, which, if included, would further reduce the multiplier.  *Id.* This highlights the inherent fairness and reasonableness of the requested fee and expense award.

**IX.**  **CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that the Court: (1) finally approve the Settlement; (2) confirm its conditional certification of the Settlement Class; (3) confirm its appointment of Class Counsel and Plaintiffs as Class Representatives; (4) retain jurisdiction over this matter to resolve issues related to interpretation, administration, implementation, and enforcement of the Settlement; and (5) enter final judgment dismissing the Action.

Dated: March 19, 2025                            CUNNINGHAM BOUNDS, LLC

*/s Lucy E. Tufts*
LUCY E. TUFTS

STEVEN L. NICHOLAS (Admitted *Pro Hac Vice*)
sln@cunninghambounds.com
LUCY E. TUFTS (Admitted *Pro Hac Vice*)
let@cunninghambounds.com
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street
Mobile, Alabama 36604
Telephone: (251) 471-6191
Facsimile: (251) 479-1031

MICHAEL F. RAM (SBN 104805)
mram@forthepeople.com
MARIE N. APPEL (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, California 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6293

BENJAMIN H. KILBORN, JR.
(Admitted *Pro Hac Vice*)
benk@kilbornlaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

KILBORN LAW, LLC
P.O. Box 2164
Fairhope, Alabama 36533
Telephone: (251) 929-4620

*Attorneys for Plaintiff Class*