1

2

3        UNITED STATES DISTRICT COURT

4        NORTHERN DISTRICT OF CALIFORNIA

5

6    CHRIS SMITH, et al.,                    Case No.  21-cv-09527-HSG

7                 Plaintiffs,                **ORDER GRANTING MOTION FOR
                                             FINAL APPROVAL AND MOTION**
8         v.                                 **FOR ATTORNEYS' FEES**

9    APPLE, INC.,                            Re: Dkt. Nos. 168, 169

10                Defendant.

11

12        Before the Court are Plaintiffs' unopposed motions for final approval of class action

13   settlement and for attorneys' fees, costs, and incentive awards.  Dkt. Nos. 168, 169.  The Court

14   held a final fairness hearing on April 10, 2025, and now GRANTS both motions.

15   **I.    BACKGROUND**

16        **A.    Factual Allegations and Procedural Background**

17        This is a putative class action brought on behalf of purchasers of Apple Watches

18   ("Plaintiffs").  *See* Dkt. No. 136 ("TAC") ¶ 1.  Plaintiffs allege that First Generation, Series 1

19   through Series 6, and Series SE Apple Watches contain "an undisclosed and unreasonably

20   dangerous safety hazard."  *Id.* ¶ 2.  More specifically, Plaintiffs allege that sudden swelling of the

21   watch batteries can cause the screen to detach, shatter, or crack, "exposing its razor-sharp edges

22   and leading to operational failure of the Watch and/or personal injuries . . . ."  *Id.*  Plaintiffs

23   contend that Apple ("Defendant") failed to allocate sufficient space within the watch to prevent

24   the screen issue, "[d]espite knowing that the battery inside the Watch can suddenly swell."  *Id.*

25   Plaintiffs further allege that the watches have injured Plaintiffs and putative class members,

26   creating a "substantial and material risk of serious injury, including lacerations, cuts, abrasions,

27   and other injuries."  *Id.* ¶¶ 5–6.

28

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1   Plaintiffs filed their initial complaint in December 2021, Dkt. No. 1, and an amended

2   complaint in March 2022. Dkt. No. 31. Defendant then filed a motion to dismiss the amended

3   complaint, which this Court granted in part and denied in part. Dkt. No. 80. Plaintiffs filed a

4   second amended complaint in March 2023, and Defendant again moved to dismiss. *See* Dkt. Nos.

5   84, 100. The Court granted Plaintiffs' request to file a Third Amended Complaint and mooted the

6   second motion to dismiss. Dkt. No. 134.

7   The operative complaint asserts the following causes of action against Defendant:

8   violations of the California Unlawful Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

9   ("UCL"); violations of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et*

10  *seq.* ("CLRA"); fraud by omission under various state laws; violations of the Song-Berly

11  Consumer Warranty Act, Cal. Civ. Code § 1790 *et seq.*; and violations of consumer protection and

12  unfair competition laws in New York, Texas, and Florida. *See* FAC ¶¶ 295–396.

13  In November 2023, the parties participated in a full-day mediation with mediator Randy

14  Wulff. *See* Dkt. No. 155-2 ¶ 8. The parties ultimately entered into a settlement agreement. *See*

15  Dkt. No. 155-1. In August 2024, Plaintiffs filed their motion for preliminary approval. Dkt. No.

16  155. The Court held a hearing on the motion and took it under submission in October 2024. Dkt.

17  No. 159. The Court subsequently directed the parties to submit additional evidence including: 1) a

18  sufficiently detailed estimate of the potential class recovery at trial; and 2) the actual terms of the

19  opt-out provision that triggers Defendant's ability to reject the settlement agreement. *See* Dkt. 160

20  at 1–2. The parties submitted timely responses. *See* Dkt. Nos. 161, 162. The Court then granted

21  the motion for preliminary approval on October 25, 2024. Dkt. No. 164.

22  Plaintiffs now seek final approval of the class action settlement, and Class Counsel seeks

23  attorneys' fees, costs, and incentive awards for the named Plaintiffs. *See* Dkt. Nos. 168, 169. The

24  Court held a final fairness hearing on April 10, 2025. *See* Dkt. No. 172. At the hearing, the Court

25  directed Class Counsel to file declarations in support of the requested service awards summarizing

26  the hours that the Lead Plaintiff and other named Plaintiffs spent on the case and the tasks they

27  completed. *See id.* Counsel timely filed the declarations, but they did not include any accounting

28

2

of Plaintiffs' hours.  *See* Dkt. Nos. 173, 174.  At the Court's direction, *see* Dkt. No. 175, counsel provided this information in two additional declarations.  *See* Dkt. Nos. 176, 177.

### B.   Settlement Agreement

The key terms of the Settlement Agreement are as follows:

Class Definition:  The Settlement Class is defined as "[a]ll natural persons who reside in the United States, who own or owned any model First Generation, Series 1, Series 2 or Series 3 Apple Watch (i.e. "Covered Devices") for personal and/or household use, and who are reflected in Apple's records as having reported Covered Issues in the United States," between April 24, 2015, and February 6, 2024.  Dkt. No. 169-1 ("Settlement Agreement," or "SA") at 1 ¶ 24.  "Covered Issue(s)" are defined as "issues reported to Apple regarding the Covered Watches reflected in Apple's records as having reported symptoms potentially associated with battery swell."  *Id.*

Settlement Benefits:  Defendant will make a $20,000,000 non-reversionary payment.  SA at 1 ¶ 27.  This gross settlement fund will cover Court-approved attorneys' fees and costs, settlement administration fees, incentive payments to the Lead Plaintiff and the other named Plaintiffs, and payments to class members.  *Id.* at § B.2.  Class members who make a payment selection by the response deadline, or whose valid, current payment information is confirmed by the Settlement Administrator, will receive either $20 for each Covered Device or, if necessary, a pro rata portion of the settlement fund less than $20.  *Id.* at § B.4.  If there is more than $50,000 remaining in the settlement fund after all costs have been allocated, class members may receive up to $50 per Covered Device.  *See id.*  The parties propose that any remaining funds would go to the Rose Foundation's Consumer Products Fund as the *cy pres* recipient.  SA § B.9.[1]

Release:  The Named Plaintiffs and the Settlement Class release and discharge Defendant

---

[1] Where a class action settlement contains a *cy pres* award provision, the "cy pres award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent Class Members, and must not benefit a group too remote from the plaintiff class."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (internal quotations omitted).  The proposed *cy pres* recipient here shares the interests of the settlement Class Members in promoting truth in advertising and preventing consumer fraud in the context of required warnings and disclosures. *See* Dkt. No. 169 at 14.  Accordingly, the Court finds that identifying the Rose Foundation's Consumer Products Fund as the recipient of any eventual *cy pres* distribution satisfies the Ninth Circuit's requirements.

3

and its subsidiaries from:

> "any and all damages, suits, claims, debts, demands, assessments, obligations, liabilities, attorneys' fees, costs, expenses, rights of action and causes of action, of any kind or character whatsoever, whether based on contract (express, implied, or otherwise), statute, or any other theory of recovery, and whether for compensatory or punitive damages, and whether known or unknown, suspected or unsuspected, occurring before the Effective Date of the Settlement (the "Released Matters") arising out of or related to the claims made in this Lawsuit. This release will include claims relating to the Released Matters of which the Releasing Parties are presently unaware or which the Releasing Parties do not presently suspect to exist which, if known to the Releasing Parties, would materially affect the Releasing Parties' release of the Apple Released Parties."

SA § H.1. Notice to class members will include the following language:

> "Unless you exclude yourself with an opt-out request (see Question ___), you cannot sue, continue to sue, or be part of any other lawsuit against Apple arising out of or related to the claims in this case. The "Releases" section in the Settlement Agreement describes the legal claims that you give up if you remain a Settlement Class Member. The Settlement Agreement can be viewed at www.watchsettlement.com."

SA, Ex. C, at 33.

Incentive Award:  Class counsel may apply for an incentive award for the lead Named Plaintiff of no more than $5,000, and for awards for the ten remaining Named Plaintiffs of up to $2,000 each.  SA § G.1.

Attorneys' Fees and Costs:  The Settlement Agreement does not provide for an agreed-upon amount of attorney's fees and costs. SA § G.2.  Plaintiffs' motion for preliminary approval stated that Plaintiffs' counsel would request up to $5,000,000 in attorneys' fees.  Dkt. No. 155 at 14.[2]

Opt-Out Procedure:  Class members must object to the Settlement Agreement or opt out (via regular mail or the settlement website) within 60 days after the date that the mailing date of the email and postcard notice.  SA § G.2; 1 ¶ 24.  In addition, Defendant may reject the settlement if "the number of Settlement Class members who elect to exclude themselves from the Settlement Class exceeds the threshold agreed to by the Parties and confidentially submitted to the Court *in*

---

[2] For ease of reference, the Court refers to the PDF pages rather than the document's internal pagination unless otherwise noted.

1    *camera*." *Id.* § E.6.

2    **II.    FINAL SETTLEMENT APPROVAL**

3        **A.    Class Certification**

4          Final approval of a class action settlement requires, as a threshold matter, an assessment of

5    whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b).

6    *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–1022 (9th Cir. 1998).  Because no facts that

7    would affect these requirements have changed since the Court preliminarily certified the class on

8    October 25, 2024, this order incorporates by reference the Court's prior analysis under Rules 23(a)

9    and (b) as set forth in the order granting preliminary approval.  *See* Dkt. No. 163 at 4–6.

10        **B.    The Settlement**

11          "The claims, issues, or defenses of a certified class . . . may be settled . . . only with the

12    court's approval."  Fed. R. Civ. P. 23(e).  The Court may finally approve a class settlement "only

13    after a hearing and only on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P.

14    23(e)(2).  Where the parties reach a class action settlement prior to class certification, the Ninth

15    Circuit has cautioned that such settlement agreements "must withstand an even higher level of

16    scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under

17    Rule 23(e) before securing the court's approval as fair."  *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944

18    F.3d 1035, 1049 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d

19    935, 946 (9th Cir. 2011)).  "This more exacting review is warranted to ensure that class

20    representatives and their counsel do not secure a disproportionate benefit at the expense of the

21    unnamed plaintiffs who class counsel had a duty to represent."  *Id*. (internal quotations marks and

22    citations omitted).

23          The Ninth Circuit has identified several "subtle signs" the Court should consider in

24    determining whether "class counsel have allowed pursuit of their own self-interests . . . to infect

25    the negotiations."  *Roes*, 944 F.3d at 1043 (citations omitted).  These include: "(1) when counsel

26    receive[s] a disproportionate distribution of the settlement; (2) when the parties negotiate a clear-

27    sailing arrangement, under which the defendant agrees not to challenge a request for an agreed-

28    upon attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns

United States District Court
Northern District of California

5

unawarded fees to the defendant, rather than the class." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607–08 (9th Cir. 2021) (citation omitted).

To assess whether a proposed settlement comports with Rule 23(e), the Court may also consider some or all of the following factors:

> (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*McKinney-Drobnis*, 16 F.4th at 609 (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)) (emphasis omitted).  In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.  As discussed below, the Court finds that class members received adequate notice, and that the proposed settlement is fair, adequate, and reasonable.

### i. Adequacy of Notice

The Court finds that the notice plan previously approved by the Court was implemented and complies with Rule 23(c)(2)(B).  *See* Dkt. No. 163 at 12–14.  Angeion, the Settlement Administrator, posted copies of the Settlement Agreement, Plaintiffs' Motion for Preliminary Approval, the Third Amended Class Action Complaint, the Order Granting the Motion for Preliminary Approval, and the Joint Submission of Stipulated Schedule to the settlement website. *See* Dkt. No. 169-3 ("Weisbrot Decl.") ¶ 18.  Angeion sent email notice to the Class Members for whom Defendant provided email address information, and postcard notice to those who did not have an email address or whose email address was invalid.  *Id.* ¶¶ 12, 14.  For Class Members whose postcards were returned, Angeion sent additional postcard notices to any forwarding address provided or to an updated address if such information could be found.  *Id.* at 16.  Angeion also received 1,285 calls totaling 4,614 minutes to the toll-free Settlement telephone number.  *Id.* ¶ 20.  As of March 19, 2025, 525,542 Class Members, or 97.05% of the Class have received direct notice by email or by postcard, in the forms approved by the Court.  *Id.* ¶ 10.  Also as of March

19, 2025, Angeion received no objections to the settlement, and only nineteen Class Members requested exclusion.  *Id.* ¶¶ 23–24.

### ii.    Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

In evaluating the motion for preliminary approval, the Court considered all three signs of collusion that the Ninth Circuit has identified.  *See* Dkt. No. 163 at 7–11; *see also McKinney-Drobnis*, 16 F.4th at 607–608.  Nothing in the record changes the Court's preliminary conclusion regarding these factors.  The proposed settlement is non-reversionary; there is no clear sailing agreement; the majority of the monetary settlement will be distributed to the class; and the Court still carefully scrutinizes the request for attorneys' fees and costs to ensure class members' interests are protected under the settlement.  *See* Section II.A.  The Court further finds that other factors discussed in *McKinney-Drobnis* also indicate that the proposed settlement is fair, adequate, and reasonable.

### a.    Strength of Plaintiffs' Case, Litigation Risk, and Risk of Maintaining Class Action Status

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case.  *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).  Difficulties and risks in litigating weigh in favor of approving a class settlement.  *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).  "Generally, 'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'"  *Ching v. Siemens Indus., Inc.*, Case No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (citation omitted).

The Court finds that the amount offered in settlement is reasonable in light of the complexity of this litigation and the substantial risk that Plaintiffs would face in litigating the case given the nature of the asserted claims.  Were this case to proceed, Plaintiffs anticipate significant risks to recovery.  *See* Dkt. No. 169 at 22–25.  Plaintiffs emphasize that had the parties not reached a settlement, Defendant likely would have filed another motion to dismiss, and Plaintiffs note that

two cases involving the same Apple Watch issue as the defect alleged in this case were dismissed at the pleading stage. *See id.* at 22. Plaintiffs similarly anticipate that Defendant would have vigorously opposed class certification. *See id.* Further, even if a class were certified, Plaintiffs faced exposure at summary judgment or trial to Defendant's argument that no actionable defect exists in the Covered Watches. *See id.* In short, despite having confidence in their claims, Plaintiffs acknowledge facing uncertainty in establishing liability. *Id.* at 23. In reaching a settlement, Plaintiffs have ensured a favorable recovery for the class and avoided these risks. *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement). Accordingly, this factor also weighs in favor of approving the settlement. *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

### b. Settlement Amount

The Court previously concluded that the amount of the settlement was within the range of possible approval. *See* Dkt. No. 163 at 11. Its opinion has not changed. Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the settlement amount falls "within the range of reasonableness" in light of the risks and costs of litigation. *See Villanueva v. Morpho Detection, Inc.*, Case No. 13-cv-05390-HSG, 2016 WL 1070523, at *4 (N.D. Cal. Mar. 18, 2016) (citing cases).

Here, Plaintiffs estimate that each Settlement Class Member will receive approximate $25 per Covered Device, without the burden of having to make a claim. *See* Dkt. No. 169 at 24, 26. Plaintiffs contend that this amount is appropriate based on both "cost of repair" and "impairment in value" damages analyses. First, the cost of repair for customers without Apple's service plan who experienced issues related to their Apple Watch batteries would have been $79. *Id.* at 26. But Plaintiffs point out that any amount actually spent on service costs would be offset because some consumers received a free replacement watch instead of paying for service. *See id.* Second, using a choice-based conjoint analysis of class-wide impairment in value damages, Plaintiffs determined that consumers would have required a discount of $156 per unit to accept the alleged defect. *Id.* at 25. However, any final impairment damages amount would be substantially less than $156 per class member after adjusting for the actual probability of occurrence of the alleged

1    defect. *Id.* at 25–26. Based on these damage models, the Court agrees that the estimated

2    settlement amount of approximately $25 per Covered Device is appropriate, particularly as "[i]t is

3    well-settled law that a cash settlement amounting to only a fraction of the potential recovery does

4    not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

5    454, 459 (9th Cir. 2000) (citation omitted).

6    ### c.  Extent of Discovery Completed and Stage of Proceedings

7    The Court finds that Class Counsel had sufficient information to make an informed

8    decision about the merits of the case. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459. The

9    parties settled after conducting significant discovery and investigation into Plaintiffs' claims. *See*

10   Dkt. No. 169 at 9. Plaintiffs' counsel reviewed approximately 1.4 million pages of documents

11   produced by Defendant and extensive analysis by experts. *See* Dkt. No. 169-2 ("Tufts Decl.") ¶ 7.

12   Thus, the Court is persuaded that Class Counsel entered the settlement discussions with a

13   substantial understanding of the factual and legal issues, so as to allow them to assess the

14   likelihood of success on the merits. This factor weighs in favor of approval.

15   ### d.  Reaction of Class Members

16   The reaction of the Class Members supports final approval. "[T]he absence of a large

17   number of objections to a proposed class action settlement raises a strong presumption that the

18   terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural*

19   *Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (citations omitted);

20   *see also In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number

21   of opt-outs and objections in comparison to class size is typically a factor that supports settlement

22   approval.") (citation omitted).

23   As discussed above, the settlement terms were publicized through a notice process that the

24   Court has deemed adequate. Only nineteen members requested exclusion from the settlement, and

25   no Class Members objected. *See* Weisbrot Decl. ¶¶ 23–24.; *see also Martin v. AmeriPride Servs.,*

26   *Inc.*, Case No. 08cv440–MMA (JMA), 2011 WL 2313604, at *7 (S.D. Cal. June 9, 2011) ("The

27   absence of any objector strongly supports the fairness, reasonableness, and adequacy of the

28   settlement.") (citations omitted). The Court finds that the positive reaction of the settlement class

1  supports approval of the settlement.

2                                          * * *

3       After considering and weighing the above factors, the Court finds that the Settlement

4  Agreement is fair, adequate, and reasonable, and that the Settlement Class Members received

5  adequate notice.  Accordingly, Plaintiffs' motion for final approval of the class action settlement is

6  **GRANTED**.

7  **III.    MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS**

8       In its unopposed motion, Class Counsel ask the Court to approve an award of $5,000,000

9  in attorneys' fees and $433,417.83 in litigation expenses.  *See* Dkt. No. 168 at 7.  Class Counsel

10  additionally requests incentive awards in the amount of $5,000 for Lead Plaintiff Chris Smith and

11  $2,000 for each of the remaining eleven named Plaintiffs, totaling $27,000.  *Id.* at 28.

12       **A.    Attorneys' Fees and Costs**

13            **i.    Legal Standard**

14       Class counsel is entitled to an award of reasonable attorneys' fees and reimbursement of

15  litigation expenses from the common fund they created for the benefit of a class.  *See* Fed. R. Civ.

16  P. 23(h); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003).  The purpose of the "common

17  fund" doctrine is to avoid unjust enrichment by requiring "those who benefit from the creation of

18  the fund [to] share the wealth with the lawyers whose skill and effort helped create it."  *In re*

19  *Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) (citation omitted).

20  The district court has discretion over the amount of attorney fees to award.  *Vizcaino v. Microsoft*

21  *Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

22       The "touchstone" for the court's reasonableness analysis is "'the benefit to the class—class

23  counsel can only reap rewards if they have delivered results for class members.'"  *In re California*

24  *Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 679 (9th Cir. 2025) (quoting *Lowery v.*

25  *Rhapsody Int'l, Inc.*, 75 F.4th 985, 998 (9th Cir. 2023)).  The court must independently calculate

26  the benefit to the class, and may not approve fees "that appear excessive of settlement value."  *In*

27  *re California Pizza Kitchen*, 129 F.4th at 679.

28       Under California law, the "percentage of fund method" is proper to determine reasonable

United States District Court
Northern District of California

attorneys' fees in class actions. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 506 (2016). In common fund cases, 25% of the total pool is the "benchmark" for a reasonable fee award. *See, e.g.*, *In re Bluetooth*, 654 F.3d at 942. However, even where the benchmark is requested, the award "must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. These circumstances include: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiff; and (5) awards made in similar cases. *See id.* at 1048–50.

In addition, "trial courts have discretion to conduct a lodestar cross-check on a percentage fee." *Laffitte*, 1 Cal. 5th at 506. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citing *Staton*, 327 F.3d at 965). Class Counsel is also entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citations omitted).

### ii.    Discussion

Class Counsel here seek an award of $5,000,000 in attorneys' fees and $433,417.83 in litigation expenses. *See* Dkt. No. 168 at 7. Class Counsel argue that their requested fees are appropriate under the "percentage of the fund" method, in that they represent the 25% benchmark that is generally accepted by courts in the Ninth Circuit for common fund cases. *Id.* at 13. However, even though Class Counsel requests the benchmark amount and Defendant does not object, the Court may not simply issue a "[r]ubber-stamp approval" of the request. *Vizcaino*, 290 F.3d at 1052 (internal quotation marks and citation omitted). After analyzing the relevant factors and considering the overall circumstances of the case, the Court finds that Class Counsel's request is reasonable.

The first and most critical factor in assessing an attorneys' fee request is "the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *see also Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 988 (9th Cir. 2023) ("The touchstone for determining the reasonableness

United States District Court
Northern District of California

of attorneys' fees in a class action is the benefit to the class."). As discussed, Class Counsel obtained a significant recovery for the class by securing a $20,000,000 non-reversionary settlement fund. Further, Class Members will receive cash payments without having to make a claim. The Court agrees that this is a good result that confers benefits on the class. The fact that no Class Members have objected and only nineteen Class Members opted out buttresses this conclusion.

This recovery also must be considered in light of the significant risks that Plaintiffs would face in further litigation. The risk that further litigation might result in Plaintiffs not recovering at all is a significant factor in the award of fees. *See Vizcaino*, 290 F.3d at 1048. Counsel here acknowledged that there is a substantial risk that Defendant could succeed in reducing or eliminating recoverable damages by asserting credible defenses, including that Defendant lacked a duty to disclose any defect or that the Watch failure rate was low. *See* Dkt. No. 168 at 17–18. Given these challenges, this factor weighs in favor of awarding substantial fees. *See Vizcaino*, 290 F.3d at 1048.

Class Counsel also litigated this case skillfully and professionally. The risk that counsel took in litigating this case on a contingency basis for the last few years weighs in favor of a substantial attorneys' fee award. *See Vizcaino*, 290 F.3d at 1050. Counsel spent considerable time on this case without any certainty that they would be compensated. *See* Dkt. No. 168-1 ("Tufts Decl. II") at ¶¶ 16–17. Counsel conducted an extensive investigation, engaged in voluminous and highly technical fact and expert discovery, and defended against two motions to dismiss. *See id.* ¶¶ 8–10.

The reasonableness of an award of the benchmark 25% of the settlement fund is also confirmed by a lodestar cross-check. As a final check on the reasonableness of fees, the Court may compare the requested fees with counsel's bills under the lodestar analysis. *See, e.g.*, *Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."). The Court must "exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434 (citation omitted).

1     Class Counsel represent that they expended 5,893.10 hours on this case, resulting in a

2     lodestar of $5,545,004.80 in fees.  *See* Tufts Decl. II ¶ 14.  Counsel's hourly rates range from

3     $1000 to $1,300 for senior attorneys, $450 to $850 for associates, $350 to $381 for law clerks, and

4     $225 for paralegals.  *See id.*  This is in line with prevailing rates in this district in similar cases for

5     personnel of comparable experience, skill, and reputation.  *See, e.g.*, *Hefler v. Wells Fargo & Co.*,

6     Case No. 16-cv-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (finding rates

7     ranging from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates, and $245

8     to $350 for paralegals to be reasonable); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., &*

9     *Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17,

10    2017) (finding rates ranging from $275 to $1,600 for partners, $150 to $790 for associates, and

11    $80 to $490 for paralegals to be reasonable).  Further, the requested amount represents a 0.9

12    negative multiplier to Class Counsel's anticipated lodestar, *i.e.*, less than the fees actually incurred.

13    *See* Dkt. No. 168 at 24–25.  And in other class actions, courts have approved higher multipliers

14    ranging from 1.0 to 4.0.  *See Vizcaino*, 290 F.3d at 1051 n.6 (finding a range of 0.6 to 19.6 in a

15    survey of 24 cases, with 83% in the 1.0 to 4.0 range and 54% in the 1.5 to 3.0 range).  Overall, the

16    lodestar cross-check supports the reasonableness of the fee Class Counsel requests.

17    An attorney who has created a common fund for the benefit of the class is also entitled to

18    reimbursement of reasonable litigation costs from that fund.  *See Harris*, 24 F.3d 16 at 19.  Here,

19    Class Counsel request $433,417.83 in costs.  Dkt. No. 168 at 7.  To support their request, counsel

20    summarized the major categories of expenses and associated costs for each, which include expert

21    fees ($377,978.67); mediation expenses ($12,849.88); court fees ($951); travel ($22,052.23);

22    copies and postage fees ($4,030.02); research and investigation ($14,070.03); and fees related to

23    third party subpoenas ($1,486).  *See* Tufts Decl. II ¶ 18.  The Court finds that counsel's requested

24    expenses are reasonable, including the largest claimed cost for expert fees given the extensive

25    technical analysis and testing that the experts performed.  *See id.* ¶ 10.  The Court thus **GRANTS**

26    the request as to litigation costs.

27                                    * * *

28    The Court accordingly **GRANTS** the request for attorneys' fees and costs, and awards to

1    Class Counsel $5,000,000.00 in attorneys' fees and $433,417.83 in costs.

2        **B.    Service Awards**

3        Lastly, Class Counsel request an incentive award of $5,000 for Lead Plaintiff Chris Smith

4    and $2,000 for each remaining named Plaintiff.  Dkt. No. 168 at 28.  While awards are

5    discretionary, "[i]t is well-established in this circuit that named plaintiffs in a class action are

6    eligible for reasonable incentive payments, also known as service awards."  *Harris v. Vector Mktg.*

7    *Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *6 (N.D. Cal. Feb. 6, 2012) (citation omitted).

8    Service awards are designed to "compensate class representatives for work done on behalf of the

9    class, to make up for financial or reputational risk undertaken in bringing the action, and,

10   sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez*, 563

11   F.3d at 958–59.  To evaluate the reasonableness of a proposed service award, courts look to

12   factors such as the representative's service to the class, investment of time, and reputational harm.

13   *See Staton*, 327 F.3d at 977.  Another important consideration is the proportionality between the

14   incentive award and the range of class members' settlement awards.  *See, e.g., Burden v.*

15   *SelectQuote Ins. Servs.*, No. C 10-5966 LB, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013)

16   (declining to award a $10,000 incentive award where the requested award was nearly three times

17   the largest amount paid to any class member).

18       Here, the Court finds that Class Counsel's requests are reasonable because they are

19   commensurate with Plaintiffs' service to the class and investment of time.  Class Counsel

20   describes that each of the named Plaintiffs contributed significantly to the case by reviewing

21   pleadings and other filings, remaining informed during all stages of the litigation, responding to

22   discovery, searching for and producing documents, and playing an active role in approving

23   settlement terms.  Tuft Decl. II at ¶ 19.  In his declarations, Lead Plaintiff Smith reports that he

24   spent approximately 40 total hours researching issues related to his Apple Watch screen, meeting

25   with Class Counsel throughout the litigation, and reviewing and approving several sets of

26   documents, including all filings and four sets of discovery responses.  *See* Dkt. Nos. 174 ¶¶ 4–25;

27   177 ¶ 2.  The remaining named Plaintiffs (residents of several states) spent approximately 8 hours

28   on average reviewing filings, reviewing and approving responses to multiple sets of discovery

United States District Court
Northern District of California

1  requests, and exchanging communications with counsel on several occasions during the litigation.
2  *See* Dkt. Nos. 173 ¶¶ 3–16; 176 ¶ 2.  Further, no Class Members objected to the proposed service
3  awards, which tends to suggest that the class is satisfied that their representatives did confer a
4  benefit.  Finally, the Court finds that the relationship between the size of the awards and class
5  recovery is not so disproportionate as to be unreasonable.  *Cf. Crump v. Hyatt Corp.*, No. 20-CV-
6  00295-HSG, 2023 WL 1997770 (N.D. Cal. Feb. 14, 2023) (holding that where the lead plaintiff
7  invested 35 hours on the case and requested a recovery 400 times greater than the average class
8  member's recovery, a $10,000 service award was unsupportable).  Accordingly, the Court
9  **GRANTS** the requested service award of $5,000 for Lead Plaintiff Chris Smith and $2,000 for
10  each remaining named Plaintiff, for a total of $27,000.

## IV.  CONCLUSION

12      In sum, the Court **GRANTS** the motion for final approval of class action settlement, Dkt.
13  No. 169, and **GRANTS** the motion for attorneys' fees and incentive award, Dkt. No. 168.  The
14  Court awards attorneys' fees in the amount of $5,000,000 and litigation expenses in the amount of
15  $433,417.83.  The Court further awards $5,000 as an incentive award to Lead Plaintiff Chris
16  Smith and $2,000 to each of the remaining named Plaintiffs.

17      The parties and settlement administrator are directed to implement this Final Order and the
18  settlement agreement in accordance with the terms of the settlement agreement.  The parties are
19  further directed to file a short stipulated proposed final judgment of two pages or less within 21
20  days from the date of this order.  The judgment need not, and should not, repeat the analysis in this
21  order.

22      Class counsel shall file a Post-Distribution Accounting within 21 days after the settlement
23  checks become stale (or, if no checks are issued, all funds have been paid to class members, *cy*
24  *pres* beneficiaries, and others pursuant to the Settlement Agreement).  In addition to the
25  information contained in the Northern District of California's Procedural Guidance for Class
26  Action Settlements, available at https://cand.uscourts.gov/forms/procedural-guidance-for-class-
27  action-settlements/, the Post-Distribution Accounting shall discuss any significant or recurring
28  concerns communicated by class members to the settlement administrator or counsel since final

United States District Court
Northern District of California

approval, any other issues in settlement administration since final approval, and how any concerns or issues were resolved.  Counsel are directed to summarize this information in an easy-to-read chart that allows for quick comparisons with other cases.  The parties shall post the Post-Distribution Accounting, including the easy-to-read chart, on the settlement website.  The Court may hold a hearing following submission of the parties' Post-Distribution Accounting.

The Court will withhold 10% of the attorney's fees granted in this Order until the Post-Distribution Accounting has been filed.  Class counsel shall file a proposed order releasing the remainder of the fees when they file their Post-Distribution Accounting.

**IT IS SO ORDERED.**

Dated:   5/1/2025

HAYWOOD S. GILLIAM, JR.
United States District Judge